# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: Procter & Gamble Aerosol | : | Case No. 2:22-md-3025 |
| Products Marketing and Sales | : | |
| Practices Litigation | : | Judge Michael H. Watson |
| | : | |
| | : | Magistrate Judge Chelsey Vascura |
| | : | |

**This document relates to: <u>ALL CASES</u>**

## <u>PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, APPROVAL OF THE PLAN OF NOTICE AND FORMS OF NOTICE AND SETTING DATES AND PROCEDURES FOR FINAL FAIRNESS HEARING</u>

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e), Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey LaBella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrel Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus and Sondra Trent, move the Court for the entry of an order: (1) preliminarily approving the proposed Class Action Settlement Agreement and Release, including all exhibits thereto (the "Agreement" or "Settlement"); (2) preliminarily certifying a proposed nationwide Settlement Class for settlement purposes only (the "Settlement Class") and appointing Plaintiffs and their Counsel as the representatives of and counsel for the Class; (3) approving the notice plan and forms of notice to the Class proposed by the Settlement; and (4) setting dates and procedures for opt-outs, objections, and a final fairness hearing (the "Motion").[1]

---

[1] Capitalized terms have the same meaning as in the Class Action Settlement Agreement and Release.

This Motion is supported by an accompanying memorandum and the exhibits attached thereto.

Prior to the filing of this Motion, Plaintiffs' counsel conferred with counsel for Defendant The Procter & Gamble Company ("Defendant" or "P&G") pursuant to Local Rule 7.3(b) regarding the filing of this Motion and the relief they seek, and Defendant stated its non-opposition to this Motion.

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey LaBella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrel Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus and Sondra Trent, (collectively "Plaintiffs" or "Settlement Class Representatives") submit this memorandum in support of the motion for preliminary approval of the proposed class action settlement reached with Defendant P&G, the terms of which are set forth in the Class Action Settlement Agreement and Release, attached hereto as **Exhibit 1**.

As demonstrated below, the Settlement, which has the support of the majority of cases pending in this MDL, easily satisfies the relatively low threshold required for preliminary approval. *See e.g.*, *Robinson v. Ford Motor Co.*, Nos. 1:04-cv-844, 1:04-cv-845, 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005) (at preliminary approval stage, court ensures that the "settlement is neither illegal nor collusive") (citation omitted); *In re Telectronics Pacing Sys., Inc.*,

137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001) (preliminary approval is appropriate where there were non-collusive negotiations and the settlement does not exhibit "obvious deficiencies") (citation omitted). The parties reached the Settlement after significant arm's-length negotiations with the assistance of a highly-respected mediator. The Settlement provides substantial monetary recovery and injunctive relief, while avoiding the additional expense and uncertainty of continued and lengthy litigation.

Accordingly, Plaintiffs respectfully request the entry of an Order: (1) preliminarily approving the proposed Agreement, including the exhibits attached thereto; (2) preliminarily certifying a proposed nationwide Class[2] for settlement purposes only, and appointing Plaintiffs and their Counsel as the Settlement Class Representatives and Counsel for the Class; (3) approving the notice plan and forms of notice to the Class; and (4) setting dates and procedures for opt-outs, objections, and a final fairness hearing.

## II.     BACKGROUND

### A.       Factual Background

Plaintiffs brought this lawsuit on behalf of themselves and a putative class of consumers who purchased Defendant's aerosol antiperspirant, deodorant, body spray products and dry shampoo, and dry conditioner products (collectively the "P&G Aerosol Products") that are alleged to contain benzene, a known human carcinogen. The P&G Aerosol Products include the following brands: Secret, Old Spice, Pantene, Waterl<ess, Aussie, Herbal Essences, and Hair Food. In particular, Plaintiffs purchased the following products: Waterless Dry Conditioner Weightless Smooth; Waterless Dry Conditioner Instant Moisture; Waterless Dry Shampoo No Residue; Pantene Sultry Blonde All in One Luxury Mist; Pantene Smooth Talker Dry Conditioning Oil;

---

[2] The Class or Settlement Class means all persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021.

Pantene Mist Behaving Dry Conditioning Mist; Pantene Gold Series Instant Nourishing Spray; Pantene Dry Shampoo No Water Refresh; Pantene Dry Shampoo Sheer Volume; Pantene Never Tell Dry Shampoo; Herbal Essences Blue Ginger Refresh Dry Shampoo; Herbal Essences White Grapefruit & Mint Dry Shampoo; Herbal Essences White Strawberry & Sweet Mint Dry Shampoo; Herbal Essences Cucumber & Green Tea Dry Shampoo; Aussie Smooth Vibes Dry Conditioner; Aussie Petal Soft Dry Conditioner; Aussie Sleekend Warrior Dry Conditioner; Aussie After Hours Dry Shampoo Texture Spray; Aussie Tousle Hustle Dry Shampoo; Aussie Bounce Back Dry Shampoo; Aussie Clean Color Protect Dry Shampoo; Aussie Clean Texture Dry Shampoo; Aussie Clean Volume Dry Shampoo; Old Spice Fiji Dry Shampoo; Old Spice Pure Sport Dry Shampoo; Old Spice Below Deck Powder Spray, Unscented; Old Spice Below Deck Powder Spray, Fresh Air; Old Spice Pure Sport Antiperspirant; Old Spice Sweat Defense Dry Spray, Stronger Swagger; Old Spice Sweat Defense Dry Spray, Ultimate Captain; Secret 24 Hour Aerosol Antiperspirant, Powder Fresh; Secret Protecting Powder Dry Spray, Outlast; Secret Cool Light & Airy Smooth Feel Antiperspirant, Rose; Secret Cool Light & Airy Smooth Feel Antiperspirant, Light Essential; and Secret Cool Light & Airy Smooth Feel Antiperspirant, Waterlily.

Information provided in informal discovery indicates that P&G first became aware of the benzene contamination in some of the P&G Products through the filing of Valisure's Citizen Petition with the Food & Drug Administration (the "FDA") on November 3, 2021, wherein Valisure reported that it had tested numerous lots of body spray products from various manufacturers and discovered that some P&G aerosol antiperspirant products contained benzene. Valisure asked the FDA to, among other things, recall all batches of P&G's Body Products that contained benzene.

Immediately thereafter, P&G initiated an investigation concluding that the benzene

identified in some product samples stemmed from the isobutane used as a propellant in those aerosol product lines.

### B.    Procedural Background

On November 19, 2021, Plaintiffs Velasques, Ortega and Lopez filed the first case in this District regarding the alleged contamination of the P&G Aerosol Products for bodily-use. *See generally* Compl., ECF No. 1. On December 23, 2021, Plaintiff Beth Blake filed the first case in this District regarding the P&G Aerosol Products for hair-use, captioned *Blake v. The Procter & Gamble Company*, No. 21-cv-00794. The first case arising out of the presence of benzene in the P&G Aerosol Products, captioned *Bryski, et al v. Procter & Gamble*, Case No. 21-cv-62285, was filed in the Southern District of Florida on November 4, 2021. On December 13, 2021, Defendant filed a Motion for Transfer of Action for Centralized Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation (the "Panel") listing eleven (11) actions for transfer.

On November 23, 2021, P&G announced a nationwide voluntary recall of some of the P&G Aerosol Products for bodily-use due to the presence of benzene, and instructed consumers in possession of such P&G Aerosol Products to stop using the products.[3] In its announcement, P&G indicated it would offer reimbursement to consumers who purchased certain P&G Aerosol Products and established a process for claimants to obtain a refund (the "Recall Program"). On December 17, 2021, P&G also announced a nationwide voluntary recall of some of the P&G Aerosol Products for use on hair due to the presence of benzene detected in some products and included those products in the Recall Program. The Recall Program was terminated by P&G in April 2022.

On March 31, 2022, a hearing was held before the Panel in New Orleans to determine

---

[3] https://wwwfda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.

which court the cases would be transferred to for consolidated pretrial proceedings. On April 7, 2022, the Panel issued a Consent of Transferee Order which transferred and consolidated the cases involving P&G Aerosol Products to the Southern District of Ohio and assigned them to this Court. There are twenty-seven (27) cases now pending before this Court (the "Action").

### C. **Negotiations of the Proposed Settlement**

Prior to the hearing before the Panel on the motion for transfer and centralization of the cases in one Court, counsel for P&G, and Counsel for certain Plaintiffs - Gary M. Klinger, Kevin Laukaitis, Steven Bloch, Mark S. Reich, Rick Paul, Terence R. Coates, Paul Doolittle, Bryan F. Aylstock, R. Jason Richards, Kiley Grumbacher, Jonathan Jagher, and Richard S. Wayne (collectively "Plaintiffs' Mediation Counsel" and Defendant's Counsel, are referred to as "Parties' Mediation Counsel") engaged in early settlement discussions. In connection with those discussions, Plaintiffs' Mediation Counsel reached out to certain attorneys representing plaintiffs in other pending cases against P&G, including those pending in the Southern District of Florida ("Non-settling Plaintiffs' Counsel"), to participate in a potential mediation. However, the Non-settling Plaintiffs' Counsel refused to participate in any settlement discussions claiming it was too early to settle and that a leadership structure must be appointed before any settlement discussions could take place. Notably, Non-Settling Plaintiffs' Counsel supported transfer and centralization of the related actions to the U.S. District Court for the Southern District of Florida.

Plaintiffs' Mediation Counsel also reached out to other plaintiffs' counsel who reviewed the relevant mediation documents and proposed settlement terms and after consultation with their clients agreed to the terms of the Settlement now proposed for Preliminary Approval. (collectively, the undersigned plaintiff's attorneys are referred to as "Plaintiffs' Counsel" or "Settlement Class Counsel").

In March 2022, the Parties' Mediation Counsel agreed to jointly retain Robert Meyer, a nationally recognized mediator, to serve as the mediator in an attempt to reach a nationwide resolution.[4] Prior to the mediation session, Plaintiffs' Mediation Counsel provided P&G with a comprehensive list of documents and data they requested be produced by P&G prior to the mediation (the "Disclosure Requests") so they could adequately evaluate and proposed settlement. The Parties then negotiated a confidentiality agreement, which was executed by the Parties' Mediation Counsel on March 14, 2022, and the data and information was produced by P&G in response to the Disclosure Requests in advance of the scheduled mediation.

The data and information P&G produced to Plaintiffs' Mediation Counsel in advance of the mediation included nationwide sales data and testing information as to the P&G Aerosol Products. Defendant's production included information regarding P&G's notice of benzene contamination; communications between P&G and its affiliates concerning benzene contamination; information regarding studies and analysis performed by P&G with respect to the benzene contamination; P&G's communications with the FDA regarding the contamination; information about P&G's Aerosol manufacturers and raw material suppliers; and information on P&G's Recall and refund program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications. Additionally, in advance of the mediation, Plaintiffs retained Colin B. Weir, Vice President of Economics and Technology, Inc., a highly-regarded firm that specializes in conducting economic, statistical, regulatory and other analysis—to conduct a conjoint analysis, which included a test survey from which price premium percentages were derived. The information and documents produced by P&G, Plaintiffs' Mediation Counsel's

---

[4] https://www.jamsadr.com/meyer/ (last visited on May 23, 2022).

independent investigation, and the results of Mr. Weir's conjoint analysis, provided Plaintiffs' Mediation Counsel with more than sufficient information to proceed with mediation and negotiate a potential settlement.

In advance of the formal mediation session, Defendant's Counsel and Plaintiffs' Mediation Counsel prepared separate mediation statements for the mediator where the Parties discussed the facts, evaluated the strengths and weaknesses of their claims both on the merits and as to class certification, and also addressed damages. A full day mediation was held on March 28, 2022, with Robert Meyer, during which the Parties' Mediation Counsel discussed and evaluated the claims, damages, allegations and defenses; however, a final agreement was not reached. Over the weeks that followed, the Parties continued to engage in arms-length negotiations involving the mediator after the conclusion of the formal mediation. However, after an additional month of negotiations the Parties reached an impasse. In an effort to resolve the deadlock Mr. Meyer made a mediator's proposal that was agreed to by P&G and Plaintiffs' Counsel on May 2, 2022. Then on May 2, 2022, the Parties entered into a Memorandum of Settlement, and, on May 3, 2022, just before the Court's Case Management Conference No. 1, notification of the Settlement was filed with the Court (ECF No. 13). *See* Declaration of Gary M. Klinger in Support of Plaintiff\s' Motion for Preliminary Approval, attached hereto as **Exhibit 2** summarizing the negotiations leading to the proposed Settlement.

On July 1, 2022, the Parties entered into a Stipulation of Settlement. A copy of the proposed Stipulation of Settlement and the information and documents produced by P&G to Plaintiffs' Mediation Counsel have been provided to Counsel for the Non-Settling Plaintiffs. Plaintiffs' Mediation Counsel have also provided answers to questions about the Agreement raised by Counsel for the Non-Settling Plaintiffs and offered to schedule a telephone call to address any

questions Non-Settling Plaintiffs had with the proposed Agreement. Counsel for the Non-Settling Plaintiffs did not take Plaintiffs' Mediation Counsel up on their offer to have a call to discuss the Agreement and have not indicated whether they will support or oppose the Agreement. The Settlement, if approved by the Court, will result in the settlement of the Actions and related claims on a class-wide basis and resolve the claims of thousands of individuals. Notably, the Agreement has the support of at least fourteen (14) of the twenty-six (26) cases assigned to this Court.[5] In other words, the majority of the cases filed in this MDL support the Agreement.

## III.     THE TERMS OF THE SETTLEMENT

The Settlement resolves all claims of Plaintiffs and the Class against P&G alleged in the Actions. The details are contained in the Class Action Settlement Agreement and Release. *See generally* **Exhibit 1**.

The Settlement is supported by the verification of the critical facts through the exchange of information and data, Plaintiffs' Settlement Counsels' investigation, and by the conjoint analysis undertaken by Plaintiffs' expert. Because the Settlement offers Settlement Class Members cash payment on recalled products, or a voucher toward the purchase of a replacement product, and requires P&G to conduct a testing protocol to prevent benzene contamination in its P&G Aerosol Products in the future – all without the need, cost and risk of litigation over P&G's defenses to Plaintiffs' claims – the Settlement represents a fair, reasonable and adequate compromise warranting preliminary approval and conditional class certification for purposes of settlement and notice. *Messineo v. Ocwen Loan Serv., LLC*, No. 15-cv-02076, 2017 WL 733219, at *9 (N.D. Cal. Feb. 24, 2017) (noting it is "a rare class action settlement which provides complete

---

[5] A twenty-seventh case was filed on June 17, 2022. *See Mikhail v. The Procter & Gamble Co.*, No. 2:22-cv-03602 (E.D.N.Y.). On June 28, the Panel entered a conditional transfer order assigning that case to this MDL. *See* MDL No. 3025, Dkt. 77 (J.P.M.L. June 28, 2022)

relief for all alleged harms."). Moreover, P&G does not oppose this motion and has agreed to cooperate in the settlement process. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's cooperation "is an appropriate factor for a court to consider in approving a settlement.").

Below is a summary of the key elements of the Settlement:

### A.     The Proposed Class

The proposed Settlement Class comprises all consumers who purchased the P&G Aerosol Products at issue in these Actions, and is defined as:

> All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015 and ending December 31, 2021 (the "Class Period"). The following individuals are excluded from the Settlement Class; officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

*See* Settlement at ¶ 1.41.

### B.     Relief Provisions

The Settlement provides for a cash payment or vouchers (whatever Settlement Class Members choose) to Settlement Class Members with and without Proof of Purchase of the P&G Aerosol Products. The Settlement also provides for significant injunctive relief, including material and product testing, product sampling and testing protocols in the supply chain, and sale restrictions. ***There is no limit on monetary relief for claims of Settlement Class Members who have Proofs of Purchase***, and the Settlement's maximum value of relief for Settlement Class Members with No Proofs of Purchase is $8,000,000.

1.      **Monetary and Voucher Relief.**

a.   ***With Proof of Purchase***

Settlement Class Members with a valid Proof of Purchase, as described in Paragraph 1.31 of the Agreement, have the option to select either a cash payment or voucher, whichever they prefer, for each Proof of Purchase provided. If the Settlement Class Member chooses a cash payment, the Settlement Class Member will receive a payment of $3.50 for each unit with a valid Proof of Purchase. This cash refund is approximately 70 percent of the average manufacturer's suggested retail price of $5.02. If the Settlement Class Member chooses to receive a voucher, the Settlement Class Member will receive a voucher redeemable for one product of the same brand reflected on the Proof of Purchase not to exceed the following prices: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice or Secret antiperspirant or deodorant products; $7 for Herbal Essences; $9 for Pantene or Waterless; and $10 for Hair Food. The voucher will be fully transferable, expires 180 days after issuance, and may be used in combination with other promotions. ***There is no limit on the number of separate claims that Settlement Class Members with a Proof of Purchase may file.***

b.   ***Without Proof of Purchase***

Settlement Class Members without Proof of Purchase, but who submit a timely and valid claim form, attesting under penalty of perjury that they purchased during the Class Period one or more P&G Aerosol Products shall have the option to elect either No Proof of Purchase Payment or No Proof of Purchase Voucher. A Settlement Class Member without Proof of Purchase may elect to receive a No Proof of Purchase Payment of $3.50 for each unit purchased.  The total number of No Proof of Purchase Payments claimed by Settlement Class Members may not exceed three (3) total payments (or $10.50) per household. In the alternative, a Settlement Class Member

without Proof of Purchase may elect to receive a No Proof of Purchase Voucher. Each voucher will be redeemable for one P&G Aerosol Product of the same brand indicated on the Claim Form, which will be fully transferable, expires 180 days after issuance, and may be used in combination with other promotions. The value of the voucher is not to exceed the following prices: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice or Secret antiperspirant or deodorant products; $7 for Herbal Essences; $9 for Pantene or Waterless; and $10 for Hair Food. The total number of No Proof of Purchase Vouchers claimed by Settlement Class Members may not exceed three (3) vouchers per household. Settlement Class Members without Proof of Purchase who received three (3) vouchers under the Recall Program can still file a claim for one (1) additional No Proof of Purchase Payment or No Proof of Purchase Voucher.

**Injunctive/Non-Monetary Relief.**

The Settlement also provides significant injunctive/non-monetary relief which is designed to establish corrective and preventive measures to further address the benzene contamination at issue in this Action. Specifically, the Settlement provides the following injunctive/non-monetary relief:

a. <u>Non-Sale of Recalled Products</u>: P&G shall not in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of the P&G Aerosol Products subject to the Recall Program.

b. <u>Isobutane Raw Material Supply</u>: P&G shall undertake the following corrective and preventive actions prior to manufacturing any additional units of the P&G Products:

i. <u>Raw Material Specification</u>: P&G shall adopt a new specification applicable to any supplier of isobutane raw material for use in the P&G Aerosol Products that requires such raw material to contain not more than 1 part per million (ppm) benzene. Such

specification shall be subject to review by Settlement Class Counsel and shall remain in effect for two (2) years from the date of execution of this Agreement.

ii. <u>Testing by Raw Material Supplier</u>: P&G shall direct its contract manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in the P&G Aerosol Products, the raw material supplier test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from shipping such raw material to P&G's contract manufacturer if the test result indicates the presence of benzene at 1 ppm or more. This requirement shall remain in effect for two (2) years from the date of execution of this Agreement.

iii. <u>Testing of Raw Material by Contract Manufacturer</u>: P&G shall require that, upon receipt of any shipment of isobutane raw material intended for use in the P&G Aerosol Products, P&G's contract manufacturer test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from use of such raw material if the test result indicates the presence of benzene at 1 ppm or more. This requirement shall remain in effect for two (2) years from the date of execution of this Agreement.

iv. <u>Maintenance of Testing Records</u>. P&G shall require its contract manufacturer to preserve, or P&G shall direct its contract manufacturer to require its isobutane raw material suppliers to preserve, certificates of analysis for any tests conducted pursuant to Paragraphs 5(b)(ii)-(iii) for at least two (2) years and will provide Plaintiffs' Counsel, upon request, with confirmation that it complied with the testing required under this Agreement.

c. <u>Finished Product Testing</u>: P&G shall undertake the following corrective and preventive actions following the manufacturing of any P&G Aerosol Products:

i. <u>Sampling of Batches</u>. P&G shall engage an independent, ISO-certified and FDA-registered laboratory to test at least one finished unit from each batch of the

P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more. The Parties agree that such testing shall be conducted using gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation. This requirement shall remain in effect until at least July 1, 2022.

ii.     Subsequent Sampling of Batches. From July 1, 2022 until August 1, 2022, P&G shall instruct the independent laboratory to test at least one finished unit from at least 50% of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more. From August 1, 2022 until September 1, 2022, P&G shall instruct the independent laboratory engaged to test at least one finished unit from at least 25% of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more.

d.     On-Site Inspections. P&G shall conduct on-site quality inspections of its contract manufacturer's facilities used to manufacture the P&G Aerosol Products at least annually. The inspections shall include a review of the contract manufacturer's compliance with the FDA's Current Good Manufacturing Practice Regulations. This requirement shall remain in effect for two (2) years from the date of execution of this Agreement.

## 2.     Notice and Settlement Administration

The Parties have agreed, subject to the Court's approval, to the appointment of Kroll, Inc. to act as the Settlement Administrator and to provide notice to the proposed Class. Agreement at ¶ 1.40. The costs of distributing notice and for Settlement administration are to be paid separately by P&G, outside of, and in addition to, the cash refund and voucher programs being offered to the Settlement Class Members. *Id.* at ¶ 2.4(a).

### 3. Class Representatives Service Awards.

Under the terms of the Settlement, Plaintiffs have reserved the right to seek class representation service awards (the "Service Awards") for each Plaintiff listed in the Agreement, in an amount of $250.00 (for a maximum total class representative award of $8,750). Agreement at ¶ 3.3(a). The Service Awards would be paid separately by P&G from the relief being offered to the Class Members and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs. *Id.*

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Rudi v. Wexner*, Case No. 2:20-cv-3068, Judge Watson, Ohio S.D. May 16, 2020, ECF No. 46 at PageID 1306 *citing Hadix v. Johnson*, 322 F. 3d 895, 897 (6th Cir. 2003). The Settlement Class Representative Service Awards are intended to recognize the time and effort expended by Plaintiffs on behalf of the Class in assisting Plaintiffs' Counsel with the prosecution of this case and negotiating the relief the Settlement provides to the Settlement Class Members, as well as the exposure and risk the Plaintiffs incurred by participating and taking a leadership role in this litigation. *Id.* at ¶ 59; *see also, e.g., Walters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394, 2012 WL 2923542, at *14 (N.D. Ala. July 17, 2012) ("[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.") *quoting Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). *Accord* 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 6:28 at 197 (10th ed. 2013) ("[T]here is near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000 - $20,000."). The Settlement is not conditioned upon any Settlement Class Representative Service

Award being approved by the Court. Agreement at ¶ 3.3(b).

        **4.**      **Attorneys' Fees and Costs.**

      The Settlement also provides that Plaintiffs' Counsel may apply to the Court for an attorney fee and cost award not to exceed $2,400,000. Agreement at ¶3.4(a). The attorneys' fees and costs provision was separately and independently negotiated by the Parties only after the Class relief was agreed upon, with the assistance of the mediator, in an arm's-length negotiation. The amount of attorneys' fees and costs agreed to by the Parties was also the subject of the mediator's proposal. Attorneys' fees and costs that are awarded in these Actions will be paid by P&G separate and apart from, and in addition to, the relief being offered to the Settlement Class Members. Similar fee awards have been approved by this Court. *Rudi v. Wexner*, Case No. 2:20-cv-3068, Judge Watson, Ohio S.D. 2020, ECF No. 46 at PageID 1302 (award of 21% of the projected settlement value approved by this Court in a shareholder derivative case: "[s]ociety's stake in rewarding attorneys who produce demonstrable benefits support an award of [attorneys' fees].") *Id.* at PageID 1303. The Settlement in this matter is not conditioned upon any attorneys' fees and costs award being approved by the Court.

**IV.**    **ARGUMENT**

    **A.**    **Class Certification**

      Before evaluating the fairness, adequacy and reasonableness of the Settlement, the Court must "make a preliminary determination" as to whether the proposed Settlement "satisfies the criteria [for class certification] set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litig. § 21.632 at 321 (4th ed. 2004). A proposed settlement class must satisfy the requirements of Rule 23 including numerosity, commonality, typicality, and

adequacy of representation. *See UAW v. General Motors Corp.*, 497 F.3d 615, 625-626 (6th Cir. 2007).

As outlined below, the implicit and explicit requirements of Rule 23 are satisfied, and this Court should conditionally certify this action as a class action for purposes of effectuating the Settlement.

### 1. The Implicit Requirements of Rule 23 Are Met.

#### a. The Proposed Class is Identifiable.

A properly defined class exists if: (i) the definition specifies a particular group at a particular time frame and location who were harmed in a particular way; and (ii) the definition is such that the Court can ascertain its membership in some objective manner. *Edwards v. McCormick,* 196 F.R.D. 490-491 (S.D. Ohio 2000); *Bentley v. Honeywell Int'l, Inc.*, F.R.D. 471, 477 (S.D. Ohio 2004). Here, the Class includes a very specific group of people – all purchasers of the P&G Aerosol Products.

#### b. Plaintiffs Are Members of the Class.

The second implicit requirement of Rule 23 is that "the named representative must be a member of the class." *Bentley*, 223 F.R.D. at 477. To satisfy this prerequisite, the class representative must have proper standing. That is, the class representative must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent. Plaintiffs clearly satisfy this requirement. Plaintiffs have the same interest and have suffered the same injury as every other Settlement Class member, as purchasers of the P&G Aerosol Products. Accordingly, they are qualified to represent the members of the Settlement Class. As demonstrated, the implicit requirements of Rule 23(a) are met.

## 2.     The Explicit Requirements of Rule 23(a) Are Satisfied.

Before evaluating the fairness, adequacy and reasonableness of the Settlement, the Court must "make a preliminary determination" as to whether the proposed Settlement "satisfies the criteria [for class certification] set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 at 321 (2004). A proposed settlement class must satisfy the requirement of Rule 23, including numerosity, commonality, typicality, and adequacy of representation. *See UAW v. General Motors Corp.*, 497 F.3d at 625-26. For the following reasons, this Court should conditionally certify this action as a class action for the purposes of effectuating the settlement.

### a.     Numerosity is Satisfied.

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There is no precise number at which joinder becomes impracticable and where a class action is the only viable alternative. *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Indeed, the "impracticability of the joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.), *cert denied*, 429 U.S. 870 (1976). Furthermore, where a class is being certified for settlement only, the Rule 23(a) requirements may be relaxed such that "a district court need not inquire whether the case, if tried, would prevent intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rather, the dominant concern in the context of settlement is whether "a proposed class has sufficient unity so that absent members can fairly be bound by the decisions of class representatives." *Id*. Here, the

Class is comprised of thousands of consumers across the country who purchased the P&G Aerosol Products.

For these reasons, Plaintiffs submit that numerosity has been established.

### b.     Commonality is Satisfied.

Rule 23(a)(2) requires that there be "questions of fact or law common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires "a common issue the resolution of which will advance the litigation." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542-43 (6th Cir. 2012) (finding that commonality and typicality requirements were satisfied where a single practice or course of conduct by defendant gives rise to the claims of plaintiffs and the class). "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013), *citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In the operative complaints, Plaintiffs have identified several common factual and legal questions, including but not limited to:

    a.   Whether the P&G Aerosol Products contain benzene;

    b.   Whether Defendant knew or should have known that the P&G Aerosol Products contain benzene;

    c.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the P&G Aerosol Products;

    d.   Whether Defendant's misconduct set forth in the complaints demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its P&G Aerosol Products;

e. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its P&G Aerosol Products;

f. Whether Defendant's false and misleading statements and omissions concerning its P&G Aerosol Products was likely to deceive the public;

g. Whether Defendant violated the state consumer protection statutes alleged in the complaints;

h. Whether Defendant breached its express and/or implied warranties;

i. Whether Defendant was unjustly enriched; and

j. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

Because these common issues can be resolved for all members of the proposed Settlement Class in a single adjudication, through common class wide proof, the Rule 23(a)(2) commonality requirement is satisfied.

### c. Typicality.

Rule 23(a)(3) requires the claims of the class representatives to be typical of the claims of the class. This "typicality" requirement is satisfied when the representatives' claims are based on the same legal theory, or when the wrongdoing is alleged to have violated the same legal interest of all class members. *In re Revco Sec. Litig.*, 142 F.R.D. 659, 666 (N.D. Ohio 1992). In addition, the class representative must have claims and interests similar to those of the whole class. *See Senter*, 532 F.2d at 525. This requirement "is intended to assure that the representatives' claims are similar enough to those of the class that the representative will adequately represent the class." *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) *citing General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982), *vacated on other grounds*, 5 F.3d 154 (6th Cir. 1993). Differing degrees

of injury among class members do not defeat typicality as long as the basic injury each class member asserts is the same. Likewise, even if different defenses apply to some Class members, typicality may be found. *Wess v. Storey*, No. 2:08-cv-623, 2011 U.S. Dist. LEXIS 41050, at *21 (S.D. Ohio Apr. 14, 2011) *citing, Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir. 1997). Typicality exists when a class member shows that his "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon*, 370 F.3d at 572.

Here, the typicality requirement is satisfied. Plaintiffs' claims arise from the same events, practices, and conduct that give rise to the claims of all other members of the Settlement Class. Plaintiffs and the members of the proposed Settlement Class purchased the P&G Aerosol Products, their claims concern the same alleged conduct by P&G, are typical of the claims of other Settlement Class Members, and are based on the same legal theories. Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

### d.      Plaintiffs Will Fairly and Adequately Represent the Class.

Rule 23(a)(4) requires the lead plaintiff or class representative to fairly and adequately protect the Class's interests. Rule 23(a)(4). The Sixth Circuit applies two criteria to determine whether a representative of a class will be adequate: (1) the representative must have common interests with unnamed members of the class (common interests); and (2) it must appear that the representative will vigorously prosecute the interests of the Class through qualified counsel (vigorous prosecution). *Kinder v. Nw. Bank*, 278 F.R.D. 176, 184 (W.D. Mich. 2011); *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Plaintiffs satisfy both criteria of the adequacy test of Rule 23(a)(4). Like the rest of the Class, Plaintiffs purchased the P&G Aerosol Products. Thus, Plaintiffs' interests are not

antagonistic to those of the Class. *See In re Corrugated Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

As for the second prong of Rule 23(a)(4) requiring adequacy of counsel, courts have also held that counsel should be experienced in handling litigation of the type involved in the case. Plaintiffs' Settlement Counsel intend to propose a leadership structure for the administration of the Settlement. The proposed structure will consist of a diverse leadership structure of attorneys with significant experience handling complex consumer litigation.

Since there is no conflict among Plaintiffs and Settlement Class members, and Plaintiffs' Counsel are qualified, experienced and able to pursue this litigation, the adequacy requirements have been satisfied.

### 3.       The Requirements of Rule 23(b)(3) Are Satisfied.

This action may be certified as a damages class pursuant to Rule 23(b)(3). Rule 23(b)(3) authorizes certification where common questions of law or fact predominate over individual questions and the class action is superior to other available means of adjudication. *American Medical Sys.*, 75 F.3d at 1084; *Jordan v. Glob. Nat. Res., Inc.*, 102 F.R.D. 45, 51 (S.D. Ohio 1984). Both requirements are satisfied here.

#### a.       Common Questions of Law or Fact Predominate.

Here, the commonality requirement is easily met; the common issues identified above (*supra* at 19-20) predominate over individual issues. The evidence necessary to prove liability for Plaintiffs' claims is the same as it would be for each member of the Settlement Class. For example, the question of whether P&G failed to disclose the presence of benzene in the P&G Products, in

violation of applicable law, is not only common to the Settlement Class, but is the predominate consideration in deciding whether P&G is liable to the Plaintiffs and Settlement Class Members. *See, e.g., Demsheck v. Ginn Dev. Co., LLC*, No. 3:09-CV-335-J-25TEM, 2013 WL 12177811, at *3 (M.D. Fla. Sept. 30, 2013) (common questions predominated because the "crux of all class members' claims" was an allegation that the defendant treated them identically in failing to provide them with a property report before they signed a real estate purchase contract). And that question is susceptible to resolution through common, generalized proof – namely, by looking at the labeling and marketing of the P&G Aerosol Products. In other words, the evidence Plaintiffs would offer to establish liability would be the same evidence that every member of the proposed Settlement Class would also have to offer at their own individual trials.

### b. A Class Action is Superior to Other Available Methods.

Rule 23(b)(3) also requires as a prerequisite for maintaining a class action that the class action vehicle must be superior to other methods of adjudication, such as joinder. The Court must consider four factors to ensure that superiority is met: (i) the interests of members of the Class in individually controlling the prosecution of separate actions; (ii) whether other litigation has already commenced; (iii) the desirability or undesirability of concentrating claims in one forum; and, (iv) difficulties likely to be encountered in managing a class action. Rule 23(b)(3).

Courts find the superiority requirement met where: (i) many of the class members likely have suffered only small losses, making it improbable that they can afford to proceed with their claims as individuals; (ii) use of the class action vehicle will achieve judicial economy and prevent inconsistent judgments; (iii) there are no other actions against defendant involving the same claims; and (iv) the Court foresees no particular difficulties in adjudicating the Class action. *See Kinder*, 278 F.R.D. at 185 ("Class action is a superior means of adjudicating claims when

certifying a class 'would achieve economies of time, effort and expense and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'") *citing Amchem*, 521 U.S. at 615 *quoting* Advisory Committee Notes; *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625-626 (6th Cir. 2005).

Here, use of the class action device is superior to other available procedural methods for adjudicating the claims at issue in this case. The damages or other financial detriment suffered by the Plaintiffs and other Settlement Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against P&G. Thus, members of the Settlement Class would have little interest in pursuing their own separate actions given that "this matter involves relatively small individual claims compared to the cost of litigating complexing legal issues against a relatively large corporate entity like [P&G]." *Navelski*, 2017 WL 1132569, at *18; *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). And, although the membership of the Settlement Class may be readily identifiable, the joinder of even a fraction of Settlement Class Members is impracticable.

At the same time, the use of the class action mechanism is the only practical way of resolving the claims of the thousands of class members, while at the same time avoiding the potential for repetitive litigation and inconsistent adjudications if the claims were pursued individually. Individual litigation against P&G could result in inconsistent judgments. Under these circumstances, use of the class mechanism is the superior alternative for resolving this dispute as it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla.

1979). After all, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

Accordingly, use of the class action mechanism here is the superior method for resolving this controversy, and because all other requirements for class certification under Rule 23 are met, the proposed Class should be conditionally certified for purposes of settlement only.

## V.   **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

### A.   **Standards for Approval of Class Settlements.**

Approval of a class action settlement involves a two-step process: (1) entry of a "preliminary approval" order and (2) entry of a "final approval" order after notice of the settlement has been provided to the class and a hearing has been held to consider the fairness of the proposed settlement. *See, e.g., Manual for Complex Litigation*, Fourth, §13.14.

At the preliminary approval stage, the Court is required only to determine if the proposed settlement could potentially be given final approval. *See, e.g., Robinson*, 2005 WL 5253339 at *3; *Telectronics*, 137 F. Supp. 2d at 1015-16 ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.") *quoting* Manual for Complex Litig. § 30.44 (2d ed.1985). Once the Court grants preliminary approval, notice will be provided to Settlement Class Members and the Court will hold a final fairness hearing to assess the merits of the Settlement and hear any objections. *See Brent v.*

*Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011)

*citing Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983). After the final fairness hearing,

the Court makes a final determination whether the settlement agreement is "fair, reasonable, and

adequate." *Id.*

Neither formal notice nor an evidentiary hearing is required at the preliminary approval

stage. Rather, preliminary approval of a proposed settlement is based upon the Court's "familiarity

with the issues and evidence of the case as well as the arms-length nature of the negotiations prior

to the settlement," ensuring that the "settlement is neither illegal nor collusive." *Robinson v. Ford*

*Motor Co.*, Nos. 04-CV-00844; 04-CV-00845, 2005 U.S. Dist. LEXIS 11673 at *10 (S.D. Ohio

June 15, 2005), *citing Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1993); *In re Dun &*

*Bradstreet Credit Svcs. Cust. Litig.*, 130 F.R.D. 366, 369 (S.D. Ohio 1990).

As one federal district court has noted:

> In making a preliminary assessment of the fairness of the proposed settlement
> agreement, the Court's 'intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be limited to the extent
> necessary to reach a reasoned judgment that the agreement is not the product of
> fraud or overreaching by, or collusion between, the negotiating parties, and that the
> settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001) *quoting Officers*

*for Justice v. Civil Serv. Commission of the City & County of San Francisco*, 688 F.2d 615, 625

(9th Cir. 1982). The Court further noted that:

> A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for
> trial on the merits,' for 'it is the very uncertainty of outcome in litigation and
> avoidance of wasteful and expensive litigation that induce consensual settlements.'
> Rather, the Court's duty is to conduct a threshold examination of the overall
> fairness and adequacy of the settlement in light of the likely outcome and the cost
> of continued litigation.

*Id.* (citation and quotation omitted).

As part of its assessment, "the Court may not second guess the settlement terms." *In re*

*Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 379-80*; see also Armstrong,* 616 F.2d at 315

("[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment

of the litigants and their counsel"); *Officers for Justice*, 688 F.2d at 625 ("[t]he proposed settlement

is not to be judged against a hypothetical or speculative measure of what might have been achieved

by the negotiators"). Instead, where, as here, "a settlement is the result of extensive negotiations

by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab.*

*Litig.*, 204 F.R.D. at 380. Therefore, a motion for preliminary approval should be granted so long

as the proposed Settlement falls "within the range of possible approval." *See, e.g., Armstrong*, 616

F.2d at 314.

Here, the Parties and their counsel submit that the proposed Settlement satisfies the

requisite standards applied in connection with Rule 23(e) and respectfully request that the Court

preliminarily approve the proposed Settlement as "within the range of possible approval" and

authorize issuance of notice to the Settlement Class in the manner set forth in the proposed Notice

exhibits and Preliminary Approval Order attached to the Agreement.

### B. The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted in Good Faith Among Experienced Counsel, is Fair, Reasonable, and Adequate, and Warrants Preliminary Approval

A settlement agreement reached through vigorous, arm's-length negotiations among

experienced counsel is generally presumed to be fair. *See In re Inter-Op*, 204 F.R.D. at 350-51

*citing Vukovich*, 720 F.2d at 922-23. "The fact that the plaintiff might have received more if the

case had been fully litigated is no reason not to approve the settlement." *Priddy v. Edelman*, 883

F.2d 438, 447 (6th Cir. 1989).

Here, Plaintiffs are represented by law firms with substantial experience litigating complex

litigation. Defendant's Counsel are also well-respected and experienced litigators. The fact that

counsel for both Plaintiffs and Defendant support the proposed Settlement favors preliminary approval. Indeed, "[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement: 'It is … well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.'" *UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (citations omitted).

Furthermore, counsel for the Parties have extensive experience in complex litigation and are thoroughly familiar with the factual and legal issues of this case and the strengths and weaknesses of the positions of the Parties. In short, nothing in the course of settlement negotiations or the substance of the Settlement itself raises any doubt as to its fairness. And the participation of experienced attorneys throughout the negotiations strongly supports a finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to justify notice to the proposed Settlement Class and the scheduling of a hearing to consider final approval of the proposed Settlement.

## VI.    <u>THE NOTICE PLAN IS APPROPRIATE AND SHOULD BE APPROVED</u>

Notice satisfies the requirements of Rule 23 where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citation omitted). The proposed Long Form Notice summarizes the claims alleged in the case, the procedural history, and the terms of the Settlement. *See* Settlement Agreement, Exhibit B. The proposed Notice Plan establishes a website hosted at www.aerosolspraysettlement.com which shall contain a Long Form Notice, a contact information page, a downloadable and online version of the Claim Form and material filings in the case. The proposed Long Form Notice further advises the Settlement Class Members of information

regarding Plaintiffs' Counsel's application for an award of attorney's fees and costs, including Plaintiffs' request for Settlement Class Representative Service Awards, and sets forth the procedures whereby any Settlement Class Member may submit an objection to or exclude themselves from the Settlement and/or the Attorney Fee and Costs Award. The Long Form Notice further provides the date, time, and place of the Settlement Hearing, as well as contact information for inquiries. Dissemination of the Long-Form Notice will be made to Settlement Class Members who request one through the settlement website or through a toll-free number. *See* Long Form Notice attached to the Settlement Agreement as Exhibit B. This comprehensive notice regime is more than sufficient to satisfy due process. *See In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 08-2260, 2015 WL 11145134 at *5 (W.D. Tenn. Nov. 30, 2015) (finding a similar notice methodology to be substantively adequate); Order, *Booth Family Tr. v. Jeffries*, No. 2:05-cv-0860-EAS-TPK (S.D. Ohio Nov. 01, 2011) (ECF No. 254 at PageID 4410) (same); Order, *In re Big Lots Inc. S'holder Litig.*, No. 2:12-cv-00445-MHW-KAJ (S.D. Ohio Apr. 6, 2018) (ECF No. 120 at PageID 2602) (same).

The proposed Notice advises Settlement Class Members of the essential terms of the Settlement, their rights, including the ability to object to the Settlement and, if they have not previously been afforded the right, to opt-out of the settlement. The Long Form Notice also notifies the Settlement Class of the date, time, and location of the final fairness hearing, thereby satisfying the requirements of Rule 23.1. *See, e.g., Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009) ("notice must 'be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") *quoting UAW*, 497 F.3d at 629. The proposed Class Notice in this case satisfies all requirements of Rule 23, surpasses due process requirements, and provides Settlement Class Members with reasonable

and practical notice.

## THE AGREED UPON ATTORNEYS' FEES AND COSTS ARE REASONABLE

Assuming the Court preliminarily approves the Settlement, Plaintiffs' Counsel's request for attorney's fees and costs will be fully addressed in connection with the briefing on Plaintiffs' motion for attorneys' fees, costs and service awards. In recognition of the efforts and expenditures of Plaintiffs' Counsel and the substantial benefits conferred upon the Settlement Class as a result of the settlement of this matter, P&G has agreed to pay Plaintiffs' Counsel an aggregate Fee and Cost Award of $2,400,000, separate and apart from, and in addition to, the relief provided to Settlement Class Members, subject to Court approval. P&G has also agreed, subject to court approval, that each of the named Plaintiffs can receive a Settlement Class Representative Service Award, not to exceed $250.00, (for a total maximum Service Award of $8,750) which amounts will be paid by P&G. The amount of the agreed-upon Attorney Fee and Costs Request is the product of arm's-length negotiations, which took place after agreement on the material terms of the Settlement had already been reached, and was the subject of the mediator's recommendation. The U.S. Supreme Court has endorsed this type of consensual resolution of attorney's fees as the ideal towards which litigants should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

## VII.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiffs request that the Court establish dates by which the Notices will be published and allow for comments related to the Settlement, and a date for the Settlement Hearing. Plaintiffs' counsel proposes the following schedule:

|  |  |
|---|---|
| Defendants shall establish the website www.aerosolspraysettlement.com dedicated to the Settlement and containing the Long Form Notice, Claim Form, material documents and toll free number | Within thirty (30) days following the entry of the Preliminary Approval Order. |
| All motions seeking final approval of the Settlement shall be filed with the Court's ECF filing system. | No later than forty-nine (49) calendar days prior to the Final Approval Hearing |
| Oppositions to the motions for final approval shall be filed with the Court's ECF filing system | No later than twenty-eight (28) days before the Final Approval Hearing |
| Any replies in further support of the motions for final approval shall be filed with the Court's ECF filing system | No later than fourteen (14) days before the Final Approval Hearing |
| Defendant's Counsel shall file with the Court's ECF filing system a declaration of compliance with Notice Plan. | No later than sixty-three (63) days prior to the Settlement Hearing |
| Any objections or exclusions to the Settlement by Settlement Class Members shall be filed with the Court's ECF filing system. | On later than ninety (90) days after date of the entry of the Preliminary Approval Order |
| Claim Form submission Deadline | Ninety (90) days after the date of entry of the Preliminary Approval Order |
| Final Approval Hearing | At least One Hundred and Sixty-Seven days (167) after the date of entry of the Preliminary Approval Order |

The proposed schedule, similar to those used in numerous class action settlements, affords

due process to the Settlement Class Members with respect to their rights regarding the Settlement.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1)

preliminarily approving the proposed Class Action Settlement Agreement and Release; (2)

preliminarily certifying a proposed nationwide Settlement Class for settlement purposes only, and

appointing Plaintiffs as the representatives of the Class; (3) approving the notice plan and forms

of notice to the Class proposed by the Settlement; and (4) setting dates and procedures for opt-

outs, objections, and a final fairness hearing pursuant to Federal Rule of Civil Procedure 23(e) to

determine whether the proposed Settlement is fair, reasonable and adequate and should be given

final approval; and consider Plaintiffs' Counsel's request for attorneys' fees and costs and request

for special payments to the class representatives.

Dated: July 1, 202

Respectfully submitted,

/s/ *Richard S. Wayne*
Richard S. Wayne (Ohio Bar No. 0022390)
Joseph J. Braun (Ohio Bar No. 0069757)
STRAUSS TROY CO., LPA
150 East 4th Street, 4th Floor
Cincinnati, OH 45202
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
E-mail: rswayne@strausstroy.com
E-Mail: jjbraun@strausstroy.com
*Counsel for Plaintiffs Tyler Baker and Brian*
*Stanfield, Patricia Kelley, Jeremy Wilson,*
*Dante Melendez, and Darrell Stewart*

*Baker et al. v. Procter & Gamble Co.*, Case
No. 1:21-cv-00734
*Kelley et al. v. Procter & Gamble Co.*, Case
No. 1:21-cv-00785

/s/ *Gary M. Klinger*
Gary M. Klinger (Illinois Bar No. 6303726)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III*
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Facsimile: (865) 522-0049
Email: nsuciu@milberg.com

Katrina Carroll
LYNCH CARPENTER, LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Email: katrina@lcllp.com

Jonathan M. Jagher
FREED KANNER LONDON &
MILLEN LLC
923 Fayette St.
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
Email: jjagher@fklmlaw.com
*Counsel for Plaintiffs Norma Bernsee, Abby
Nelson, Shirley Thiele, Lindsey LaBella, and
Eileen Aviles*

*Bernsee et al. v. Procter & Gamble Co.*, Case
No. 2:22-cv-2015
*Aviles et al. v. Procter & Gamble Co.*, Case
No. 2:22-cv-01950

*Subject to Pro Hac Vice admission*

*/s/ Kevin Laukaitis*
Jonathan Shub
Kevin Laukaitis
SHUB LAW FIRM LLC
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Email: klaukaitis@shublawyers.com
        jshub@shublawyers.com

Michael J. Gabrielli

GABRIELLI LEVITT LLP
2426 Eastchester Road, Suite 215
Bronx, NY 10469
Telephone: (718) 708-5322
Email: michael@gabriellilaw.com

*Counsel for Plaintiff Beth Blake*

*Blake v. Procter & Gamble Co.*, Case No.
1:21-cv-00794

/s/ *Steven L. Bloch*
Steven L. Bloch
Ian W. Sloss*
SILVER GOLUB & TEITELL, LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
E-mail: sbloch@sgtlaw.com
E-mail: isloss@sgtlaw.com
*Counsel for Plaintiffs Erik Velasques,*
*Matthew Lopez, Frank Ortega, Erica*
*Esquivel and Joshua Wallace*

James B. Rosenthal
Joshua R. Cohen
Cohen Rosenthal & Kramer LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
Tel. & Fax (216) 815-9500
jbr@crklaw.com
jcohen@crklaw.com
*Velasques et al. v. Procter & Gamble Co.*,
Case No. 1:21-cv-00723
*Esquivel et al. v. Procter & Gamble Co.*, Case
No. 1:21-cv-00762

*\*Subject to Pro Hac Vice admission*

/s/ *Mark S. Reich*
Mark S. Reich
Courtney E. Maccarone
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500

Facsimile: (212) 363-7171
E-mail: mreich@zlk.com
E-mail: cmaccarone@zlk.com
*Counsel for Plaintiffs Tyler Baker and Brian Stanfield*

*Baker et al. v. Procter & Gamble Co.*, Case No. 1:21-cv-00734


/s/ *Rick Paul*
Rick Paul*
Paul LLP
601 Walnut Street, Suite 300
Kansas City, MO 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email: rick@paulllp.com

/s/ *Terence R. Coates*
Terence R. Coates (Ohio Bar No. 0085579)
MARKOVITS STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 665-0204
Facsimile: (513) 665-0219
Email: tcoates@msdlegal.com

*Counsel for Plaintiffs Gregory Pickens and Ryan Rinz*

*Pickens et al. v. Procter & Gamble Co.*, Case No. 1:21-cv-00786

*\*Subject to Pro Hac Vice admission*

/s/ *Paul Doolittle*
Paul Doolittle
POULIN|WILLEY|ANASTOPOULO,LLC
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: pauld@akimlawfirm.com

*Counsel for Angela Hernandez and Lynn Balser Mills*

*Hernandez v. Procter & Gamble Co.*, Case
No 3:22-cv-00080 (D.S.C.)
*Mills v. Procter & Gamble Co.*, Case No
2:22-cv-00044


*/s/ R. Jason Richards*
R. Jason Richards (Fl. Bar #18207)
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
Email: jrichards@awkolaw.com

*/s/Kiley L. Grombacher*
Kiley Grombacher
Bradley Grombacher LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
Email:
kgrombacher@bradleygrombacher.com

*Attorneys for Plaintiffs Nancy Martinez, Evan
Clarke, Lagregory Bonner*

*Martinez et al. v. Procter & Gamble Co.*,
Case No. 2:22-cv-1993


*/s/ Robert C. Schubert*
Robert C. Schubert
Noah M. Schubert
SCHUBERT JONCKHEER & KOLBE LLP
3 Embaracdero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: rschubert @ sjk.law

*Casolari, et al v. Procter & Gamble Co.*, Case
No. 1:22-cv-00235

*/s/ Michael R. Reese*
Michael R. Reese
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272
Email:  mreese@reesellp.com

*Caladay et al v. Procter & Gamble Co.*, Case
No. 3:21-cv-02024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served

via the Court's CM/ECF system on July 1, 2022, and has thus been served automatically on all

counsel of record that have entered an appearance in Case No. 2:22-md-3025.

*/s/ Richard S. Wayne*
Richard S. Wayne (Ohio Bar No. 0022390)

15823285.2