# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE (*"Agreement"*) is entered into by and between Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent (the *"Settlement Class Representatives"*), on behalf of themselves and the Settlement Class (as defined below), on the one hand, and Defendant The Procter & Gamble Company ("P&G"), on the other (together, the *"Parties"*).

### RECITALS

A.      WHEREAS, the Settlement Class Representatives are plaintiffs in fifteen Class Action Complaints filed against P&G related to the sale of certain of P&G's aerosol products (the *"Actions"*), which have been consolidated, along with other lawsuits filed against P&G related to the sale of certain of P&G's aerosol products, in *In re P&G Aerosol Products Marketing and Sales Practices Litigation,* No. 2:22-md-03025 (S.D. Ohio) (the *"MDL"*), and some of the Settlement Class Representatives submitted a Notice of Violation to P&G under California's Proposition 65 related to the sale of certain of P&G's aserosol products;

B.      WHEREAS, the fifteen Class Action Complaints collectively assert claims for breach of express, implied, and common-law warranties; fraud, fraudulent concealment, fraudulent misrepresentation, and/or fraud by omission; negligent misrepresentation; unjust enrichment; negligent failure to warn; strict liability failure to warn; negligent design defect; strict liability design defect; strict liability manufacturing defect; violation of the Magnuson-Moss Warranty Act; and violations of the consumer fraud acts of several states, putatively on behalf of nationwide classes, multi-state classes, and/or single-state subclasses, arising out of the sale of certain of P&G's aerosol products;

C.      WHEREAS, the Parties and their counsel conducted arms-length settlement negotiations, including a full-day Zoom mediation session on March 28, 2022, mediated by Robert Meyer, and extensive and hard-fought negotiations facilitated by Mr. Meyer in the weeks following the mediation session, after which, on or about May 3, 2022, the Parties reached an agreement in principle to settle on the terms and conditions embodied in this Agreement;

D.      WHEREAS, the Settlement Class Representatives and P&G separately have conducted an investigation of the facts and have analyzed the relevant legal issues in regard to the claims and defenses asserted in the Actions; the Settlement Class Representatives and their counsel believe that the claims asserted in the Actions have merit; and P&G denies that it has engaged in any wrongdoing and denies all claims asserted in the Actions and in the MDL;

E.      WHEREAS, the Parties also have considered the uncertainties of further litigation and the benefits to be obtained by settlement and have considered the costs, risks, and delays associated

with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either the Settlement Class Representatives or P&G;

F.      WHEREAS, the Parties have concluded that continued litigation could be protracted and expensive and that it is desirable that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to limit further expense, inconvenience, and uncertainty;

G.      WHEREAS, the Parties now desire to resolve all claims of the Settlement Class Representatives and the Settlement Class against P&G that are asserted or that could have been asserted in the Actions or in any other case in the MDL related to the P&G Aerosol Products (as defined below);

H.      WHEREAS, the Parties wish to enter into a compromise and settlement to avoid the uncertainty and expense of litigation and to achieve a fair and reasonable resolution of the Actions and the other cases included in the MDL;

I.      WHEREAS, the Parties intend for this Agreement to supersede all other agreements between the Parties that may exist;

J.      WHEREAS, it is now the intention of the Parties and the objective of this Agreement to avoid the costs of further litigation and trial and to settle and dispose of, fully and completely and forever, any and all claims and causes of action in the Actions and in the MDL.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the Settlement Class Representatives, the Settlement Class, and P&G, themselves and through their undersigned counsel, agree to settle the Actions, subject to Court approval, under the following terms and conditions.

1.      **DEFINITIONS.** Unless otherwise indicated above, the following shall be defined terms for purposes of this Agreement. Some of the definitions in this Section use terms that are defined later in the Section. All defined terms are italicized and listed in alphabetical order:

1.1.      As used herein, the term *"Actions"* means the fifteen class actions filed against P&G by the Settlement Class Representatives related to the sale of certain of P&G's aerosol products, which are currently titled as follows: *Aviles v. Procter & Gamble Co.*, No. 2:22-cv-01950 (S.D. Ohio); *Baker v. Procter & Gamble Co.*, No. 1:21-cv-00734 (S.D. Ohio); *Bernsee v. Procter & Gamble Co.*, No. 2:22-cv-2015 (S.D. Ohio); *Blake v. Procter & Gamble Co.*, No. 1:21-cv-00794 (S.D. Ohio); *Casolari et al v. Procter & Gamble Co.*, No. 1:22-cv-235 (S.D. Ohio); *Dethrow v. Procter & Gamble Co.*, No. 2:22-cv-1997 (S.D. Ohio); *Esquivel v. Procter & Gamble Co.*, No. 1:21-cv-00762 (S.D. Ohio); *Hernandez v. Procter & Gamble Co.*, No. 2:22-cv-1994 (S.D. Ohio); *Kelley v. Procter & Gamble Co.*, No. 1:21-cv-00785 (S.D. Ohio); *LaBella v. Procter & Gamble Co.*, 2:22-cv-01992 (S.D. Ohio); *Martinez v. Procter & Gamble Co.*, No. 2:22-cv-1993 (S.D. Ohio); *Mills v. Procter & Gamble Co.*, No. 2:22-cv-00044 (S.D. Ohio); *Pickens v. Procter & Gamble Co.*, No. 1:21-cv-00786 (S.D. Ohio); *Velasques v. Procter & Gamble Co.*, No. 1:21-cv-

00723 (S.D. Ohio); *Canaday et al v. The Procter & Gamble Company*, No. 3:21-cv-02024 (S.D. Cal).

**1.2.** As used herein, the term *"Agreement"* means this Class Action Settlement Agreement and Release, including all amendments and exhibits hereto.

**1.3.** As used herein, the term *"Claim Form"* means the form that Settlement Class Members must submit to obtain the monetary payment or voucher available through this Settlement, in the form of Exhibit D hereto. The Claim Form shall require each Settlement Class Member to provide the following information in the following order: (1) the Settlement Class Member's name, mailing address, and email address, and (2) for each P&G Aerosol Product purchase for which the Settlement Class Member is seeking relief in connection with this Settlement, either (a) valid Proof of Purchase showing the Settlement Class Member's actual purchase(s) during the Class Period of one or more P&G Aerosol Products; or (b) a certification attesting under penalty of perjury (i) that the Settlement Class Member purchased during the Class Period one or more P&G Aerosol Products, and (ii) identifying the Products and the number of Products purchased during the Class Period. In addition, the Claim Form shall require each Settlement Class Member who participated in the Recall Program to attest under penalty of perjury that the Settlement Class Member is unable to obtain additional vouchers under the Recall Program and that the Settlement Class Member has purchased additional P&G Aerosol Products during the Class Period for which the Settlement Class Member has not already received a voucher(s) under the Recall Program.

**1.4.** As used herein, the term *"Claims"* means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, nominal, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal, or statutory relief, any other benefits, or any penalties of any type whatever, whether known or unknown, suspected or unsuspected, contingent or non-contingent, or discovered or undiscovered, whether asserted in federal court, state court, arbitration, or otherwise, whether asserted in an individual action, a putative class action, a *parens patriae* action, or other representative action (including any action purportedly brought on behalf of the general public of the United States or of a particular state, district, or territory therein), and whether triable before a judge or jury or otherwise. For the avoidance of doubt, *"Claims"* includes any cause of action asserted in the Actions or in any case in the MDL, but is not limited to, claims for breach of express, implied, and common-law warranties; fraud, fraudulent concealment, fraudulent misrepresentation, and/or fraud by omission; negligent misrepresentation; unjust enrichment; medical monitoring; negligent failure to warn; strict liability failure to warn; negligent design defect; strict liability design defect; strict liability manufacturing defect; violation of the Magnuson-Moss Warranty Act; and violations of the consumer fraud acts of all 50 states and the District of Columbia.

**1.5.** As used herein, the term *"Claims Submission Deadline"* means the date ninety (90) days after the date of entry of the Preliminary Approval Order, and is the deadline by which Settlement Class Members must submit a Claim Form to the Settlement Administrator for the claim to be considered valid, as set forth in Section 4.3(b) of this Agreement.

1.6.    As used herein, the term *"Class Period"* means the period beginning November 4, 2015, and ending December 31, 2021.

1.7.    As used herein, the term *"Court"* means the United States District Court for the Southern District of Ohio.

**1.8.**    As used herein, the term *"Effective Date"* means the date on which all of the following events have occurred: (a) the Court has entered both the Final Approval Order and the Judgment, <u>and</u> (b) either: (i) the time to appeal from the Judgment and all orders entered in connection with that Judgment has expired and no appeal has been taken; or (ii) if a timely appeal of the Judgment and all orders entered in connection with that Judgment is taken, the date on which the Judgment and all orders entered in connection with that Judgment are no longer subject to further direct appellate review if the Judgment and all orders entered in connection with that Judgment have not been reversed in any way.

**1.9.**    As used herein, the term *"Exclusion/Objection Deadline"* means the date ninety (90) days after the entry of the Preliminary Approval Order, and is the deadline by which Settlement Class Members must exclude themselves from the Settlement Class or object to the Settlement, as set forth in Sections 4.4 and 4.6 hereof.

**1.10.**    As used herein, the term *"Final Approval Hearing"* means the hearing(s) to be held by the Court, at least one hundred sixty-seven (167) days after the date of entry of the Preliminary Approval Order, to consider and determine whether the proposed Settlement of the Actions and the MDL on the terms of this Agreement should be finally approved as fair, reasonable, and adequate, and whether both the Final Approval Order and Judgment should be entered.

**1.11.**    As used herein, the term *"Final Approval Order"* means the order finally approving the Settlement and this Agreement and directing its consummation pursuant to its terms and conditions, approving the Release, and dismissing the claims asserted in the Actions and in the MDL with prejudice. The Final Approval Order shall be substantially in the form attached as Exhibit F hereto, subject to such non-substantive modifications as the Court may direct.

**1.12.**    As used herein, the term *"Household"* means all individuals who have their principal place of residence at a single address.

**1.13.**    As used herein, the term *"Judgment"* means the Judgment to be entered by the Court. The Judgment shall be substantially in the form attached as Exhibit G hereto, subject to such modifications as the Court may direct.

**1.14.**    As used herein, the term *"Long Form Notice"* means the Court-approved form of notice of the terms of the proposed Settlement that shall be provided to Settlement Class Members in the manner contemplated by Sections 4.2(a) and 4.2(b). The Long Form Notice shall be substantially in the form attached as Exhibit B hereto.

**1.15.**    As used herein, the term *"MDL"* means the multidistrict litigation action styled *In re P&G Aerosol Products Marketing and Sales Practices Litigation,* No. 2:22-md-03025, currently pending in the United States District Court for the Southern District of Ohio (the *"MDL").* As of the date of the execution of this Settlement Agreement, the cases included in the

4

*MDL* include the Actions and the following additional cases: *Asencio v. Procter & Gamble Co.*, No. 2:22-cv-02017 (S.D. Ohio); *Bryski v. Procter & Gamble Co.*, No. 2:22-cv-01929 (S.D. Ohio); *Campbell v. Procter & Gamble Co.*, No. 1:21-cv-00774 (S.D. Ohio); *Casolari v. Procter & Gamble Co.*, No. 1:22-cv-00235 (S.D. Ohio); *Clayton v. Procter & Gamble Co.*, No. 2:22-cv-1996 (S.D. Ohio); *Delcid v. Procter & Gamble Co.*, No. 2:22-cv-01999 (S.D. Ohio); *Freund v. Procter & Gamble Co.*, No. 2:22-cv-02003 (S.D. Ohio); *Hudnall v. Procter & Gamble Co.*, No. 2:22-cv-01998 (S.D. Ohio); *Leyva v. Procter & Gamble Co.*, No. 2:22-cv-01930 (S.D. Ohio); *Lyle v. Procter & Gamble Co.*, No. 2:22-cv-01925 (S.D. Ohio); *Quinones v. Procter & Gamble Co.*, No. 2:22-cv-01941 (S.D. Ohio); *Toporek v. Procter & Gamble Co.*, No. 2:22-cv-01927 (S.D. Ohio).

**1.16.** As used herein, the term *"No Proof-of-Purchase Payment"* means a monetary payment for $3.50 for each P&G Aerosol Product unit purchased within the Class Period, for which a timely and valid Claim Form is submitted, that does not include a timely and valid Proof of Purchase, subject to the limitations of Section 3.2 below.

**1.17.** As used herein, the term *"No Proof-of-Purchase Voucher"* means a voucher redeemable for a P&G Aerosol Product for each P&G Aerosol Product unit purchased within the Class Period, for which a timely and valid Claim Form is submitted, that does not include a timely and valid Proof of Purchase. The No Proof-of-Purchase Voucher will be fully transferable, expires one hundred eighty (180) days after issuance, and may be used in combination with other promotions. The No Proof-of-Purchase Voucher will not be redeemable for travel- or trial-sized products. The No Proof-of-Purchase Voucher may be redeemed for one P&G Aerosol Product of the same brand indicated on the Claim Form not to exceed the following values: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice, Secret, or Herbal Essences; $9 for Pantene or Waterl<ss; and $10 for Hair Food.

**1.18.** As used herein, the term *"Notice"* means the notice of the terms of the proposed Settlement provided to Settlement Class Members in the manner contemplated by Section 4.2 of this Agreement.

**1.19.** As used herein, the term *"Notice and Settlement Administration Costs"* means all fees, costs, and other expenses, without limitation, relating to the Settlement Administrator's implementation and administration of this Agreement.

**1.20.** As used herein, the term *"Notice and Settlement Administration Costs Advance"* means an advance on the Notice and Settlement Administration Costs in the amount of $196,500 to be paid to the Settlement Administrator within thirty (30) days after the date of entry of the Preliminary Approval Order pursuant to Section 2.4(b).

**1.21.** As used herein, the term *"Objector"* means a Settlement Class Member that objects to the Settlement pursuant to the procedures laid out in Section 4.6.

**1.22.** As used herein, the term *"Online Claim Form"* means the version of the Claim Form that shall be made available to Settlement Class Members on the Settlement Website to obtain the monetary payment or voucher available through this Settlement, in the form of Exhibit E hereto.

**1.23.**  As used herein, the term *"Online Notice"* means the Court-approved form of notice of the terms of the proposed Settlement that shall be provided to Settlement Class Members in the manner contemplated by Section 4.2(c). The Online Notice shall be designed by the Settlement Administrator, subject to the review and final approval by the Parties.

**1.24.**  As used herein, the term *"Order"* includes, as appropriate, the Preliminary Approval Order, the Final Approval Order, any orders relating to a Settlement Class Representative Service Award or any Settlement Class Counsel Attorneys' Fees and Costs Award, and the Judgment.

**1.25.**  As used herein, the term *"P&G"* means The Procter & Gamble Company.

**1.26.**  As used herein, the term *"P&G's Counsel"* means the law firm of Covington & Burling LLP.

**1.27.**  As used herein, the terms *"P&G Aerosol Product"* or *"P&G Aerosol Products"* mean all aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products listed in the complaints filed in the Actions or in any case included in the MDL, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food.

**1.28.**  As used herein, the term *"Parties"* means the Settlement Class Representatives, individually and in their capacity as representatives of the Settlement Class, and P&G.

**1.29.**  As used herein, the term *"Preliminary Approval Order"* means the order preliminarily approving this Agreement as fair, reasonable, and adequate; provisionally certifying, for settlement purposes only, the Settlement Class; provisionally appointing the Settlement Class Representatives as the class representatives; provisionally appointing Settlement Class Counsel as class counsel; staying further proceedings in the Actions and staying any litigation of the Released Claims by any member of the Settlement Class, including all the claims pending in the MDL, pending final settlement approval; authorizing the sending of Notice to the Settlement Class; and setting the date and time of the Final Approval Hearing. The Preliminary Approval Order shall be substantially in the form attached as Exhibit A hereto, subject to such modifications as the Court may direct.

**1.30.**  As used herein, the term *"Publication Notice"* means the Court-approved form of notice of the terms of the proposed Settlement that shall be provided to Settlement Class Members in the manner contemplated by Section 4.2(d). The Publication Notice shall be substantially in the form attached as Exhibit C hereto, subject to such modifications as the Court may direct.

**1.31.**  As used herein, the term *"Proof of Purchase"* means a dated receipt or other document evidencing the Settlement Class Member's actual purchase of one or more P&G Aerosol Products within the Class Period. For the avoidance of doubt, an affidavit, declaration, or other written statement by a Settlement Class Member is not sufficient to qualify as a valid Proof of Purchase. To qualify as a valid Proof of Purchase, the Proof of Purchase must show the specific Product purchased, the date of purchase (which must be within the Class Period), and the price of the purchase; a photo of a Product is not a valid Proof of Purchase. Each Proof of Purchase may

only be submitted to make a claim of one Proof-of-Purchase Payment or one Proof-of-Purchase Voucher per Household.

**1.32.** As used herein, the term *"Proof-of-Purchase Payment"* means a monetary payment for $3.50 for each P&G Aerosol Product unit purchased within the Class Period, for which a timely and valid Claim Form is submitted, that includes a timely and valid Proof of Purchase.

**1.33.** As used herein, the term *"Proof-of-Purchase Voucher"* means a voucher redeemable for one P&G Aerosol Product for each P&G Aerosol Product unit purchased within the Class Period, for which a timely and valid Claim Form is submitted, that includes a timely and valid Proof of Purchase. The Proof-of-Purchase Voucher will be fully transferable, expires one hundred eighty (180) days after issuance, and may be used in combination with other promotions. The Proof-of-Purchase Voucher will not be redeemable for travel- or trial-sized products. The Proof-of-Purchase Voucher may be redeemed for one P&G Aerosol Product of the same brand reflected on the Proof of Purchase not to exceed the following prices: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice or Secret antiperspirant or deodorant products, $7 for Herbal Essences; $9 for Pantene or Waterl<ss; and $10 for Hair Food.

**1.34.** As used herein, the term *"Recall Program"* means the reimbursement programs offered by P&G in connection with the recalls of certain of the P&G Aerosol Products.

**1.35.** As used herein, the term *"Releases"* means the releases and covenants not to sue granted pursuant to Section 3.6.

**1.36.** As used herein, the term *"Released Claims"* means any and all Claims (including but not limited to any and all Claims in the Actions or otherwise asserted in any case ever included in the MDL) that any Settlement Class Representative or any Settlement Class Member ever had, now has, or may have in the future, whether asserted by such Settlement Class Representative or Settlement Class Member, or asserted on their behalf by a third party (including Claims brought on behalf of the general public of the United States or of a particular state, district, or territory therein), arising out of or in any way relating to conduct occurring on or before December 31, 2021, relating to (a) the purchase or use of any of the P&G Aerosol Products, including all of the products identified in any complaint filed in the Actions or in any case included in the MDL; (b) any of the alleged violations of the Federal Food, Drug, and Cosmetics Act, FDA regulations, or FDA guidelines cited in the complaints in the Actions or in any case included in the MDL; (c) any of the marketing representations identified in any complaint filed in the Actions or in any case included in the MDL, including but not limited to the failure to disclose the presence of benzene in any P&G Aerosol Products; (d) any claim for any acts or omissions that were raised or could have been raised within the scope of the facts asserted in any of the complaints filed in the Actions or in any case included in the MDL, including any Claim that was or could be asserted under California's Proposition 65; or (e) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), or (d) of this paragraph. For the further avoidance of doubt, the Released Claims do not include Claims for personal injury.

1.37.    As used herein, the term *"Released Parties"* means P&G with its predecessors, successors (including, without limitation, acquirers of all or substantially all of its assets, stock, or other ownership interests) and assigns; their past, present, and future, direct and indirect, parents, subsidiaries, and affiliates; any entity involved in the supply chain of the manufacturing, distribution, and sale of the P&G Aerosol Products; and the past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, or other ownership interests), assigns, representatives, heirs, executors, and administrators of any of the above.

1.38.    As used herein, the term *"Releasing Parties"* means the Settlement Class Representatives, the Settlement Class Members (other than those who have timely and validly excluded themselves from the Settlement Class), any person or entity claiming by, for, on behalf of, or through them, and any agents, representatives, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, advisors, and assigns of any of the foregoing.

1.39.    As used herein, the term *"Settlement"* means the full and final resolution of the Actions and related claims effectuated by this Agreement.

1.40.    As used herein, the term *"Settlement Administrator"* means or refers to Kroll (or another settlement administrator mutually agreed to by the Parties), which shall perform the services contemplated by this Agreement and such other reasonable services to effectuate this Agreement with the consent of both Settlement Class Counsel and P&G's Counsel or as approved by the Court.

1.41.    As used herein, the term *"Settlement Class"* means all persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021. The following individuals are excluded from the Settlement Class: officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

1.42.    As used herein, the term *"Settlement Class Counsel"* means the following lawyers at the following law firms: Gary Klinger at Milberg Coleman Bryson Phillips Grossman; Kevin Laukaitis at Shub Law Firm; Steven Bloch at Silver Golub & Teitell LLP; Mark S. Reich at Levi & Korsinsky, LLP; Richard S. Wayne at Strauss Troy Co., LPA; Rick Paul at Paul LLP; Paul Doolittle at Poulin Willey Anastopoulo, LLC; Bryan Aylstock at Aylstock, Witkin, Kreis & Overholtz PLLC; Jonathan Jagher at Freed Kanner London & Millen LLC; Michael Reese at Reese LLP; Terence R. Coates at Markovits, Stock & Demarco, and Noah M. Schubert at Schubert Jonckheer & Kolbe LLP.

1.43.    As used herein, the term *"Settlement Class Counsel Attorneys' Fees and Costs Award"* means an amount not to exceed two million four hundred thousand dollars ($2,400,000.00) awarded at the discretion of the Court to Settlement Class Counsel.

**1.44.** As used herein, the term *"Settlement Class Member"* means any person who is a member of the Settlement Class.

**1.45.** As used herein, the term *"Settlement Class Representatives"* means, collectively, Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent individually and in their capacities as representatives of the Settlement Class.

**1.46.** As used herein, the term *"Settlement Class Representative Service Award"* means an amount not to exceed two hundred fifty dollars ($250.00) for each Settlement Class Representative, awarded at the discretion of the Court, intended to compensate the Settlement Class Representatives for their work done on behalf of the Settlement Class.

**1.47.** As used herein, the term *"Settlement Website"* means the website that shall be created for Settlement administration purposes by the Settlement Administrator in the manner contemplated by Section 4.2(a).

**2.**     **SETTLEMENT ADMINISTRATION.**

**2.1.**     **Settlement Administrator.** The Settlement Administrator shall administer various aspects of the Settlement as described in the next Sections hereafter and as specified elsewhere in this Agreement.

**2.2.**     **Duties of Settlement Administrator.** The duties of the Settlement Administrator, in addition to any other responsibilities that are described in this Agreement, shall include:

(a)     Serving notice as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, within ten (10) days after the filing of the motion for preliminary approval;

(b)     Providing Notice to Settlement Class Members as set forth in this Agreement and/or as otherwise directed by the Court;

(c)     Establishing and maintaining the Settlement Website, which shall bear a URL as agreed to by the Parties, as a means for Settlement Class Members to obtain Notice and information about the Settlement;

(d)     Establishing and maintaining a toll-free telephone helpline to which Settlement Class Members may refer for information about the MDL and the Settlement Agreement;

(e)     Establishing and maintaining a system for collecting the submission of electronic Claim Forms that may be submitted to the Settlement Administrator through the Settlement Website (the "Online Claim Form");

(f)     Providing an address for (i) the submission of Claim Forms that may be mailed to the Settlement Administrator; and (ii) mailed requests for exclusion from Settlement Class Members;

(g)     Responding to any inquiries from Settlement Class Members;

(h)     Processing and determining the validity of any requests for exclusion by Settlement Class Members;

(i)     Providing interim reports on request and, within ninety-seven (97) days after the date of entry of the Preliminary Approval Order, a final report to Settlement Class Counsel and P&G's Counsel that summarizes the number of Claim Forms received from Settlement Class Members since the prior reporting period, the total number of Claim Forms received to date, the total number and value of Claim Forms for monetary payments received to date, the total number and value of Claim Forms for vouchers received to date, the number of any Claim Forms deemed valid or invalid since the prior reporting period, the total number of Claim Forms deemed valid or invalid, and any other pertinent information requested by Settlement Class Counsel or P&G's Counsel;

(j)     Providing interim reports on request, and, within ninety-seven (97) days after the date of entry of the Preliminary Approval Order, a final report to Settlement Class Counsel and P&G's Counsel summarizing the number of requests for exclusion received from Settlement Class Members since the prior reporting period, the total number of exclusion requests received to date, the names and addresses of all Settlement Class Members who made a request for exclusion, and any other pertinent information requested by Settlement Class Counsel or P&G's Counsel;

(k)     No later than sixty-three (63) days before the Final Approval Hearing, preparing an affidavit to submit to the Court affirming its compliance with the notice (including CAFA) and settlement administration provisions of this Agreement, and identifying any Settlement Class Members who timely and validly requested exclusion from the Settlement Class;

(l)     Reviewing, determining the validity of, and responding to all Claim Forms submitted;

(m)     Providing all information to P&G that P&G deems necessary before it can perform any of its obligations under this Agreement, including transferring any funds to the Settlement Administrator and processing and transmitting vouchers to Settlement Class Members who elect to receive a Proof-of-Purchase Voucher or a No Proof-of-Purchase Voucher;

(n)     Processing and transmitting monetary payments to Settlement Class Members who elect to receive a Proof-of-Purchase Payment or a No Proof-of-Purchase Payment;

(o)     Paying any invoices, expenses, taxes, fees, and other costs as contemplated by this Agreement or required by law; and

(p)     Performing any other settlement administration-related functions reasonably necessary to effectuate this Agreement, with the consent of both Settlement Class Counsel and P&G's Counsel, or as approved or ordered by the Court.

10

**2.3.    Confidentiality.** The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Agreement or by court order.

**2.4.    Payment of Notice and Settlement Administration Costs.**

(a)    All Notice and Settlement Administration Costs, including all costs associated with providing notice to the appropriate state and federal government officials as may be required by the CAFA, shall be paid by P&G. The Notice and Settlement Administration Costs shall not exceed $600,000, unless the Parties mutually agree otherwise.

(b)    An advance on the Notice and Settlement Administration Costs shall be paid to the Settlement Administrator in an amount of $196,500 (the "Notice and Settlement Administration Costs Advance"), within thirty (30) days after the date of entry of the Preliminary Approval Order.

(c)    In the event this Agreement is not approved or is terminated, or the proposed Settlement fails to become final and effective for any reason, including without limitation if the Final Approval Order or Judgment are reversed, vacated, or modified following any appeal taken therefrom, the Settlement Administrator shall return to P&G the Notice and Settlement Administration Costs Advance, less any Notice and Settlement Administration Costs actually incurred.

**3.    SETTLEMENT TERMS.**

**3.1.    Certification of the Settlement Class.**

(a)    Only for the purposes of Settlement and the proceedings contemplated herein for effectuating the Settlement, the Parties stipulate and agree that a Court may (i) certify the Settlement Class in accordance with the definition contained in Section 1.41, (ii) appoint Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Balcer, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chakka Theus, and Sondra Trent as Settlement Class Representatives to represent the Settlement Class for Settlement purposes, and (iii) appoint Settlement Class Counsel as counsel for the Settlement Class. Certification of the Settlement Class shall be effective and binding only with respect to the Settlement and this Agreement.

(b)    It is expressly recognized and agreed that this stipulation as to the certification of a Settlement Class and the appointment of Settlement Class Representatives and Settlement Class Counsel shall be of no force and effect and has no evidentiary significance outside of enforcing the terms of this Agreement. By entering into this Agreement, P&G does not waive

11

its right to challenge or contest the maintenance of any lawsuit against it as a class action and to oppose certification of any class other than the Settlement Class in connection with the Settlement memorialized in this Agreement.

**3.2.** **Settlement Class Consideration.**

In consideration for the complete and final settlement of the Actions, the Releases, and other promises and covenants set forth in this Agreement, and subject to the other terms and conditions thereof, P&G agrees to pay to Settlement Class Members the monetary relief as set forth in this Section 3.2.

(a) <u>With Proof of Purchase.</u> Settlement Class members who submit a timely and valid Claim Form and provide a timely and valid Proof of Purchase showing their actual purchase(s) during the Class Period of one or more P&G Aerosol Products shall have the option to elect either a Proof-of-Purchase Voucher or Proof-of-Purchase Payment for each Proof of Purchase provided as described in Section 3.2(a)(i)-(ii) below and as subject to Section 3.2(c) below. For the avoidance of doubt, no Settlement Class Member shall receive both a Proof-of-Purchase Voucher and a Proof-of-Purchase Payment for a single P&G Aerosol Product unit purchased under the Settlement, and Settlement Class Members must choose to receive either all vouchers or all monetary payments. Subject to the terms of Paragraph, 3.2(c), there is no monetary limit to the combined value of the Proof-of-Purchase Vouchers and Proof-of-Purchase Payments that P&G shall be required to distribute to Settlement Class Members under this Settlement.

(i) <u>Proof-of-Purchase Voucher.</u> For each P&G Aerosol Product unit purchased within the Class Period for which a timely and valid Proof of Purchase is submitted, Settlement Class Members may elect to receive one Proof-of-Purchase Voucher redeemable for the P&G Aerosol Product reflected on the Proof of Purchase.

(ii) <u>Proof-of-Purchase Payment.</u> For each P&G Aerosol Product purchased within the Class Period for which a timely and valid Proof of Purchase is submitted, Settlement Class Members may elect, in the alternative to a Proof-of-Purchase Voucher, to receive a Proof-of-Purchase Payment for each unit purchased as reflected on the Proof of Purchase.

(b) <u>Without Proof of Purchase.</u> Settlement Class Members who do not provide valid and timely Proof of Purchase showing their actual purchase(s) during the Class Period of one or more P&G Aerosol Products, but who submit a timely and valid Claim Form attesting under penalty of perjury that they purchased during the Class Period one or more P&G Aerosol Products, shall have the option to elect either No Proof-of-Purchase Vouchers or No Proof-of-Purchase Payments as described in Section 3.2(b)(i)-(ii) below and as subject to Section 3.2(c) below. For the avoidance of doubt, no Settlement Class Member shall receive both a No Proof-of-Purchase Voucher and a No Proof-of-Purchase Payment for a single P&G Aerosol Product unit purchased under the Settlement, and Settlement Class Members must choose to receive either all vouchers or all monetary payments.

(i) <u>No Proof-of-Purchase Voucher.</u> For each P&G Aerosol Product that Settlement Class Members attest under penalty of perjury on a valid and timely submitted Claim Form that they purchased within the Class Period, Settlement Class Members may elect to receive

12

one No Proof-of-Purchase Voucher redeemable for the P&G Aerosol Product reflected on the Claim Form. To claim a No Proof-of-Purchase Voucher under this subsection, a Settlement Class Member must identify on the Claim Form the specific P&G Aerosol Product purchased, and the No Proof-of-Purchase Voucher shall correspond to the specific P&G Aerosol Product purchased on the Claim Form. The total number of No Proof-of-Purchase Vouchers claimed under this subsection may not exceed three (3) total vouchers per Household.

(ii)    No Proof-of-Purchase Payment. For each P&G Aerosol Product that Settlement Class Members attest under penalty of perjury on a valid and timely submitted Claim Form that they purchased within the Class Period, Settlement Class Members may elect, in the alternative to No Proof-of-Purchase Voucher, to receive a No Proof-of-Purchase Payment. The total number of No Proof-of-Purchase Payments claimed under this subsection may not exceed three (3) total units per Household.

(iii)    Maximum Value of Relief for Class Members Without Proof of Purchase. The maximum combined value of the No Proof-of-Purchase Vouchers and No Proof-of-Purchase Payments that P&G shall be required to distribute to Settlement Class Members under this Settlement shall not exceed eight million dollars ($8,000,000.00), calculated by combining the face value of the total No Proof-of-Purchase Vouchers and the total No Proof-of-Purchase Payments claimed by Settlement Class Members as of the date the Settlement Administrator delivers the final report contemplated by Section 2.2(i).  If the combined value of the No Proof-of-Purchase Vouchers and No Proof-of-Purchase Payments to Settlement Class Members exceeds eight million dollars ($8,000,000.00) as of that date, then the value of the No Proof-of-Purchase Payments shall be reduced on a *pro rata* basis.

(c)    Impact of P&G's Recall Program.

(i)    No later than thirty (30) days after entry of the Preliminary Approval Order, P&G will provide the Settlement Administrator with the name and addresses of all individuals to whom a voucher was distributed through the Recall Program and the number of vouchers received by those individuals.

(ii)    Offset For Settlement Class Members Participating In P&G's Recall Program. The number of Proof-of-Purchase Vouchers, No Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, or No Proof-of-Purchase Payments each Settlement Class Member is entitled to receive under this Settlement shall be reduced by the number of vouchers that a Settlement Class Member or any member of the Settlement Class Member's Household has received or will receive through the Recall Program. By way of example, if a Settlement Class Member received or will receive two vouchers under the Recall Program, and submits a valid and timely Claim Form for two vouchers under the Settlement, the Settlement Class Member shall not receive any additional vouchers under the Settlement. By way of further example, if a Settlement Class Member received or will receive two vouchers under the Recall Program, and submits a valid and timely Claim Form for three No Proof-of-Purchase Payments under the Settlement, the Settlement Class Member shall receive one (1) No Proof-of-Purchase Payment under the Settlement.

(iii)    Compensation for Settlement Class Members Who Participated In the Recall Program. In the event a Settlement Class Member or any member of the Settlement Clas

13

Member's Household has already received three (3) vouchers under the Recall Program, and attests on a Claim Form under penalty of perjury that the Settlement Class Member has purchased additional P&G Aerosol Products during the Class Period for which the Settlement Class Member has not already received a voucher(s) under the Recall Program, then the provisions of Section 3.2(c)(i) shall not apply to that Settlement Class Member, and the Settlement Class Member may instead make a claim under the Settlement for a maximum of either one (1) No Proof-of-Purchase Payment or one (1) No Proof-of-Purchase Voucher. To be eligible to make a claim under this Section 3.2(c)(ii), the Settlement Class Member must not make or attempt to make a claim for any additional Proof-of-Purchase Vouchers, No Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, or No Proof-of-Purchase Payments. The number of units claimed under this subsection may not exceed one (1) total unit per Household.

        (iv)    <u>Prohibition On Re-Using Proofs Of Purchase.</u> A Proof of Purchase submitted by a Settlement Class Member or any member of the Settlement Class Member's Household to receive a voucher under the Recall Program may not be used as a Proof of Purchase to receive a Proof-of-Purchase Voucher or Proof-of-Purchase Payment under the Settlement.

        (d)    P&G shall have no further monetary obligation to Settlement Class Members under this Settlement other than the obligations set forth in this Section 3.2.

**3.3.    Service Awards to Settlement Class Representatives.**

        (a)    The Settlement Class Representatives may file a motion with the Court requesting a Settlement Class Representative Service Award, not to exceed two hundred fifty dollars ($250.00) for each Settlement Class Representative (for a maximum total Settlement Class Representative Service Award of eight thousand seven hundred fifty ($8,750.00)). Any such motion, if it is filed, must be filed no later than fourteen (14) days prior to the Exclusion/Objection Deadline. Any such motion will be posted on the Settlement Website within one (1) business day after its filing. Subject to Court approval, P&G agrees to pay the Settlement Class Representatives a Settlement Class Representative Service Award in an amount awarded by the Court, provided that any such Award does not exceed two hundred and fifty dollars ($250.00) for each Settlement Class Representative and a maximum total Settlement Class Representative Awards of eight thousand seven hundred fifty ($8,750.00) for all Settlement Class Representatives combined.

        (b)    The Settlement Class Representatives' entitlement, if any, to a Settlement Class Representative Service Award will be determined by the Court. The Settlement shall not be conditioned on Court approval of a Settlement Class Representative Service Award for the Settlement Class Representatives. In the event the Court declines any request or awards less than the amount sought, but otherwise approves the Settlement, the remaining provisions of this Agreement will continue to be effective and enforceable by the Parties. The Settlement Class Representatives agree not to appeal an award in an amount that is less than requested.

        (c)    Within seven (7) days of the later of (i) the Effective Date or (ii) the receipt by P&G of all tax forms and/or payment information reasonably requested by P&G, P&G shall pay any Settlement Class Representative Service Award in accordance with instructions provided in writing by Settlement Class Counsel on Settlement Class Counsel's firm letterhead. Under no circumstances may the amount distributed to the Settlement Class Representatives in connection

with this Settlement exceed two hundred fifty dollars ($250.00) for each Settlement Class Representative or a maximum total class representative award of eight thousand seven hundred fifty ($8,750.00) for all Settlement Class Representatives combined.

**3.4. Attorneys' Fees and Costs.**

(a)      Settlement Class Counsel may file a motion with the Court requesting an award of attorneys' fees and costs not to exceed two million four hundred thousand dollars ($2,400,000.00), to be paid by P&G separately from the relief to the Settlement Class (the "Settlement Class Counsel Attorneys' Fees and Costs Award"). Any such motion, if it is filed, must be filed no later than fourteen (14) days prior to the Exclusion/Objection Deadline. Any such motion will be posted on the Settlement Website within one (1) business day after its filing. Subject to Court approval, P&G agrees to pay Settlement Class Counsel's fees and costs in an amount awarded by the Court, provided that any such award of such fees and costs does not exceed two million four hundred thousand dollars ($2,400,000.00).

(b)      Settlement Class Counsel's entitlement, if any, to an award of attorneys' fees, costs, and/or expenses will be determined by the Court. The Settlement shall not be conditioned on Court approval of the Settlement Class Counsel Attorneys' Fees and Costs Award. In the event the Court declines any request or awards less than the amount sought, but otherwise approves the Settlement, the remaining provisions of this Agreement will continue to be effective and enforceable by the Parties.

(c)      Settlement Class Counsel shall have the sole and absolute discretion to allocate the attorneys' fees and costs among themselves. P&G shall have no liability or other responsibility for allocation of any such fees and costs awarded, and, in the event that any dispute arises relating to the allocation of fees, Settlement Class Counsel agree to hold P&G harmless from any and all such liabilities, costs, and expenses of such dispute.

(d)      Within seven (7) days of the later of (i) the Effective Date or (ii) the receipt by P&G of all tax forms and/or payment information reasonably requested by P&G, P&G shall pay any Court-approved Settlement Class Counsel Attorneys' Fees and Costs Award in accordance with instructions provided in writing by Settlement Class Counsel on Settlement Class Counsel's firm letterhead.

**3.5. Additional Non-Monetary Relief.** Subject to Court approval and the conditions specified herein, and in exchange for the Release described in Section 3.6, P&G will agree to the following non-monetary relief:

(a)      <u>Non-Sale of Recalled Products.</u> P&G shall not in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of the P&G Aerosol Products subject to the Recall Program.

(b)      <u>Isobutane Raw Material Supply.</u> P&G shall undertake the following corrective and preventive actions prior to manufacturing any additional units of the P&G Aerosol Products:

15

       (i)      <u>Raw Material Specification.</u> P&G shall adopt a new specification applicable to any supplier of isobutane raw material for use in the P&G Aerosol Products that requires such raw material to contain not more than 1 part per million ("ppm") benzene. Such specification shall be subject to review by Settlement Class Counsel and shall remain in effect for two (2) years from the date of execution of this Settlement Agreement.

       (ii)      <u>Testing by Raw Material Supplier.</u> P&G shall direct its contract manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in the P&G Aerosol Products, the raw material supplier test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from shipping such raw material to P&G's contract manufacturer if the test result indicates the presence of benzene at 1 ppm or more. This requirement shall remain in effect for two (2) years from the date of execution of this Settlement Agreement.

       (iii)      <u>Testing of Raw Material by Contract Manufacturer.</u> P&G shall require that, upon receipt of any shipment of isobutane raw material intended for use in the P&G Aerosol Products, P&G's contract manufacturer test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from use of such raw material if the test result indicates the presence of benzene at 1 ppm or more. This requirement shall remain in effect for two (2) years from the date of execution of this Settlement Agreement.

       (iv)      <u>Maintenance of Testing Records.</u> P&G shall require its contract manufacturer to preserve, or P&G shall direct its contract manufacturer to require its isobutane raw material suppliers to preserve, certificates of analysis for any tests conducted pursuant to Section 3.5(b)(ii)-(iii) for at least two (2) years and will provide Settlement Class Counsel, upon request, with confirmation that it complied with the testing required under this Settlement.

     (c)      <u>Finished Product Testing.</u> P&G shall undertake the following corrective and preventive actions following the manufacturing of any P&G Aerosol Products:

       (i)      <u>Sampling of Batches.</u> P&G shall engage an independent, ISO-certified and FDA-registered laboratory to test at least one finished unit from each batch of the P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more. The Parties agree that such testing shall be conducted using gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation. This requirement shall remain in effect until at least July 1, 2022.

       (ii)      <u>Subsequent Sampling of Batches.</u> From July 1, 2022, until August 1, 2022, P&G shall instruct the independent laboratory engaged under Section 3.5(c)(i) to test at least one finished unit from at least 50 percent of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more. From August 1, 2022, until September 1, 2022, P&G shall instruct the independent laboratory engaged under Section 3.5(c)(i) to test at least one finished unit from at least 25 percent of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more.

(d)     On-Site Inspections. P&G shall conduct on-site quality inspections of its contract manufacturer's facilities used to manufacture the P&G Aerosol Products at least annually. The inspections shall include a review of the contract manufacturer's compliance with the FDA's Current Good Manufacturing Practice Regulations. This requirement shall remain in effect for two (2) years from the date of execution of this Settlement Agreement.

### 3.6.     Releases and Waivers of Rights

(a)     **Release by Releasing Parties.** Upon entry of the Final Approval Order and accompanying Judgment, and in addition to the preclusive effect of the dismissal with prejudice of the claims asserted in the Actions pursuant to this Settlement, the Releasing Parties shall be deemed to have released, relinquished, and forever discharged each of the Released Parties from any and all Released Claims. The Releasing Parties covenant and agree that they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, against any of the Released Parties.

(b)     **Additional Releases and Representations By Settlement Class Representatives.** The Settlement Class Representatives represent and warrant that, as of the date of the execution of this Agreement, they are unaware of any additional Claims that they have against P&G. In addition to the Releases provided in Section 3.6(a), the Settlement Class Representatives also agree to release P&G from any and all Claims that they could have asserted against P&G, regardless of whether the Settlement Class Representatives know of any such Claim.

(c)     **Additional Representations By Settlement Class Counsel.** Settlement Class Counsel represent that, as of the date of the execution of this Agreement, they do not represent any client, including any resellers of P&G Aerosol Products, besides Settlement Class Representatives asserting claims against P&G arising out of the marketing and sale of the P&G Aerosol Products and intend to work towards the approval of the Settlement. Settlement Class Counsel further represent that they (i) have not encouraged and will not encourage any Settlement Class Member to opt out of this Settlement, provided that they may present Settlement Class Members with the fact that they have the option to seek to exclude themselves from the Settlement Class, and (ii) shall not offer to represent any Settlement Class Member that submits a request for exclusion in connection with any Released Claim, provided that they may represent any such Settlement Class Members who submit a request for exclusion and ask Settlement Class Counsel to represent them.

(d)     **Releases Relating To Litigation Conduct.** The Settlement Class Representatives, Settlement Class Counsel, P&G, and P&G's Counsel agree to release each other from any and all Claims relating in any way to any Party or counsel's conduct in the Actions, including but not limited to any Claims of abuse of process, malicious prosecution, or any other claims arising out of the institution, prosecution, assertion, or resolution of the Actions. The list of Claims released by this Section 3.6(d) includes, but is not limited to, Claims for attorneys' fees, costs of suit, or sanctions of any kind except as otherwise set forth in this Agreement, including without limitation in Section 3.4.

(e)     **Waiver of Rights.** The Settlement Class Representatives and each Settlement Class Member each fully understand that, except as otherwise set forth herein, the facts

17

upon which this Agreement is executed may be found hereafter to be other than or different from the facts now believed by the Settlement Class Representatives, the Settlement Class Members, Settlement Class Counsel, P&G, and P&G's Counsel to be true and expressly accept and assume the risk of such possible differences in facts and agree that the Agreement shall remain effective notwithstanding any such difference in facts. The Notice shall expressly advise Settlement Class Members of this waiver.

As to the Released Claims only, upon entry of the Final Approval Order and accompanying Judgment, the Settlement Class Representatives and each Settlement Class Member expressly waive and relinquish the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

and any and all provisions, rights and benefits of any similar, comparable, or equivalent state, federal, or other law, rule, or regulation or the common law or equity. The Settlement Class Representatives and each Settlement Class Member may hereafter discover facts other than, different from, or in addition to those that he, she, or it knows or believes to be true and, except as otherwise set forth herein, the Settlement Class Representatives and each Settlement Class Member hereby expressly waive and fully, finally, and forever settle, release, and discharge all known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims as of the date of entry of the Preliminary Approval Order, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts. The Settlement Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Final Approval Order and the Judgment to have acknowledged, that the waivers in this Section 3.6(e) were separately bargained for and are a material element of this Agreement. The waivers in this Section 3.6(e) apply only to the Released Claims and not to any other claims.

(t)    The scope of the Releases and Waivers in this Section 3.6 is a material term of this Settlement and Agreement.

4.    **CLASS SETTLEMENT PROCEDURES.**

**4.1.    Preliminary Approval.** The Parties agree that, no later than July 5, 2022 (or earlier as permitted by the Court), the Settlement Class Representatives and Settlement Class Counsel shall submit this Settlement to the Court and file a motion asking the Court to conditionally certify the Settlement Class and enter the Preliminary Approval Order substantially in the form of Exhibit A hereto. For purposes of Settlement only, P&G will not oppose the certification, pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(e), of the Settlement Class or entry of the Preliminary Approval Order.

**4.2.** **Settlement Class Notice.** Subject to Court approval, the Parties agree that as soon as practicable and no later than thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator will provide the Settlement Class with Notice of the proposed Settlement by the following methods:

(a) Establishing a Settlement Website hosted at www.aerosolspraysettlement.com (or another URL agreed-upon by the Parties) and dedicated to the Settlement, which shall contain a Long Form Notice, in substantially the same form attached hereto as Exhibit B, in both downloadable PDF format and HTML format; a Contact Information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Settlement Class Counsel; the telephone helpline number set forth in Section 4.2(b); the Agreement; the signed Preliminary Approval Order; and a downloadable and online version of the Claim Form. While the Settlement Administrator shall have primary responsibility over the design and operation of the Settlement Website, the final design of the Settlement Website shall be subject to the final approval of Settlement Class Counsel and P&G's Counsel. The Settlement Administrator shall further permit Settlement Class Counsel and P&G's Counsel to test the operation of the Settlement Website and shall monitor and if necessary update and modify the Settlement Website to ensure that it performs reliably and consistent with the terms of this Agreement, when accessed from all major Internet browsers (desktop and mobile) operating on all major operating systems (including Windows, MacOS, Android, and iOS). The Settlement Administrator shall add to the Settlement Website all other material filings by the Parties or the Court regarding the Settlement, including, but not limited to, Settlement Class Counsel's application for an Attorneys' Fees and Costs Award and/or Settlement Class Representative Service Awards, the motion for final approval, and any orders with respect to such applications and motions. The Settlement Website shall remain accessible until at least one hundred and twenty (120) days after all monetary payments and vouchers as described in Section 3.2 are distributed to eligible Settlement Class Members.

(b) Establishing and maintaining a toll-free telephone helpline, which shall be posted on the Settlement Website, to which Settlement Class Members may refer for information about the Actions and the Settlement Agreement. Those who call the toll-free helpline or who write to the Settlement Administrator may request a printed copy of the Long Form Notice and Claim Form, which the Settlement Administrator shall provide by first class mail. The toll-free helpline shall remain active until at least ninety (90) days after all monetary payments and vouchers as described in Section 3.2 are distributed to eligible Settlement Class Members.

(c) Causing the Online Notice to be published on internet sites, including search engines and social media, through an appropriate programmatic network.

(d) Causing the Publication Notice to be distributed over a newsline for direct distribution into newsrooms.

(e) Providing notice as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

The Settlement Administrator shall provide a declaration under penalty of perjury to the Court in connection with a motion for entry of the Preliminary Approval Order that the notice

provides sufficient reach and frequency to alert Settlement Class Members to the pendency of the Actions and their rights thereunder. The Court may require changes to the notice process without invalidating this Settlement, provided that the material terms of the Settlement, including the scope of the Release and the total financial obligations imposed on P&G, are not altered by such changes.

### 4.3. Submission of Claims by Settlement Class Members.

(a)  Settlement Class Members will be provided an opportunity to submit electronically or by mail a Claim Form seeking a Proof-of-Purchase Voucher, a Proof-of-Purchase Payment, a No Proof-of-Purchase Voucher, or a No Proof-of-Purchase Payment in accordance with Section 3.2 hereof. The Settlement Administrator will mail the Claim Form to any Settlement Class Member upon request, make the Claim Form available on the Settlement Website, and ensure the Claim Form (or the electronic equivalent thereof) can be completed and submitted directly through the Settlement Website so that no printing or mailing is required. For Claim Forms submitted online, the Settlement Class Member shall have the opportunity to upload Proof of Purchase image files *(e.g.,* jpg, tif, pdt).

(b)  To be considered for payment, a Claim Form must be completed and signed (either by manual signature or electronic signature or affim ation) as detailed herein, and submitted online at the Settlement Website no later than the Claims Submission Deadline. The deadline to submit a Claim Form shall be ninety (90) days after the entry of the Preliminary Approval Order. Claim Forms will not be considered for payment if they are submitted online or postmarked after the Claims Submission Deadline. A Claim Form will be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, mailed first-class postage prepaid, and addressed in accordance with the instructions. Only one (1) Claim Form may be submitted per household, and the Settlement Administrator shall in no case approve more than one (1) Claim Form per household.

(c)  The Settlement Administrator shall be responsible for reviewing, determining the validity of, and responding to all Claim Forms submitted. The Settlement Administrator, in conjunction with the Parties, shall use reasonable, adequate, and customary procedures and standards to identify and prevent the distribution of a Proof-of-Purchase Voucher, a Proof-of-Purchase Payment, a No Proof-of-Purchase Voucher, or a No Proof-of-Purchase Payment to those submitting fraudulent, untimely, or invalid Claim Forms, and otherwise prevent fraud, waste, and abuse in the claims process. The Settlement Administrator will approve Claim Forms and issue payment based upon the terms and conditions of the Agreement and may reject Claim Forms that are invalid or evidence waste, fraud, or abuse. The determination of the validity of all Claim Forms shall occur within ninety-seven (97) days of the date of entry of the Preliminary Approval Order. All Claim Forms that the Settlement Administrator deems invalid or untimely shall be identified and presented to the Parties, who shall meet-and-confer over the validity and timeliness of any Claim Form. If the Parties cannot agree whether a Claim Form is valid and timely, then the Settlement Administrator shall determine whether a Claim Form is valid and timely. Any challenge to the Settlement Administrator's determination that a Claim Form is invalid or untimely must be presented to the Court in time for such challenge to be resolved at the Final Approval Hearing; otherwise, the Claim Form shall be deemed invalid.

(d)     P&G's choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly shall not be construed as a waiver or relinquishment by P&G as to any of its audit and other rights under the Settlement Agreement.

(e)     No person or entity shall have any claim against the Settlement Class Representatives, P&G, Settlement Class Counsel, P&G's Counsel, or the Settlement Administrator based on any determination regarding the validity of a Claim Form or the distributions or awards made in accordance with this Agreement and the Exhibits hereto.

(f)     Court approval of the claims process set forth in this Section 4.3 (with the exception of the deadline to submit a Claim Form) is a material term of this Agreement.

**4.4.     Requests for Exclusion.** The Notice shall inform Settlement Class Members that they may exclude themselves from the Settlement Class by mailing to the Settlement Administrator a written request for exclusion that is postmarked no later than the Exclusion/Objection Deadline, *i.e.,* no later than ninety (90) days after the entry of the Preliminary Approval Order. To be effective, the request for exclusion must include (a) the Settlement Class Member's full name, telephone number, and mailing address; (b) a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; (c) the name of the MDL: *"In re P&G Aerosol Products Marketing and Sale Practices Litigation,* No. 2:22-md-03025"; and (d) the Settlement Class Member's signature, or the like signature or affirmation of an individual authorized to act on the Settlement Class Member's behalf. Upon the Settlement Administrator's receipt of a timely and valid exclusion request, the Settlement Class Member shall be deemed excluded from the Settlement Class and shall not be entitled to any benefits of this Settlement. A Settlement Class Member may request to be excluded from the Settlement only on the Settlement Class Member's own behalf; a Settlement Class Member may not request that other Settlement Class Members (or a group or subclass of Settlement Class Members) be excluded from the settlement. The Settlement Administrator shall provide copies of all timely and valid exclusion requests to Settlement Class Counsel and P&G's Counsel. A list of the Settlement Class Members who have timely and validly excluded themselves from the Settlement Class pursuant to this Section 4.4 shall be attached to the Final Approval Order or otherwise recorded by the Court.

**4.5.     P&G's Right to Terminate Based on Exclusions.** P&G may terminate and rescind this Agreement and void the Settlement, at its own discretion (which shall not be subject to any challenge by Settlement Class Counsel, the Settlement Class Representatives, or any other Settlement Class Member), if more than four hundred (400) Settlement Class Members submit valid and timely requests for exclusion. P&G may exercise this right by, within twenty (20) business days after receiving notice that the number of timely and valid exclusions exceeds the agreed upon threshold, giving notice to Settlement Class Counsel that P&G is terminating and rescinding this Agreement and voiding the Settlement *ab initio.*

**4.6.     Objections.** The Notice shall inform Settlement Class Members that, if they do not request exclusion from the Settlement Class, they have the right to object to the proposed Settlement only by complying with the objection provisions set forth in this Section 4.6. Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall have voluntarily waived their right to pursue any independent

remedy for the Released Claims against the Released Parties. Any Settlement Class Member who wishes to object to the proposed Settlement must file or send to the Court a written objection that is postmarked or filed no later than the Exclusion/Objection Deadline, *i.e.,* no later than ninety (90) days after the entry of the Preliminary Approval Order. To be effective, an objection must (a) include the case name and case number: *"In re P&G Aerosol Products Marketing and Sale Practices Litigation,* No. 2:22-md-03025"; (b) contain the full name, mailing address, and telephone number of the Settlement Class Member objecting to the Settlement (the "Objector"); (c) include the Objector's signature, or the like signature or affirmation of an individual authorized to act on the Objector's behalf; (d) state with specificity the grounds for the objection; (e) state whether the objection applies only to the Objector, to a specific subset of the class, or to the entire class; (f) contain the name, address, bar number, and telephone number of counsel for the Objector, if represented by an attorney in connection with the objection; and (g) state whether the Objector intends to appear at the Final Approval Hearing, either in person or through counsel. If the Objector or his or her attorney intends to present evidence at the Final Approval Hearing, the objection must contain the following information: a detailed description of all evidence the Objector will offer at the Final Approval Hearing, including copies of any and all exhibits that the Objector may introduce at the Final Approval Hearing. To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval Order and accompanying Judgment.

**4.7. Distribution of Proof-of-Purchase Payments and No Proof-of-Purchase Payments.**

(a) Within fourteen (14) days after the Effective Date, the Settlement Administrator shall calculate the total of Proof-of-Purchase Payments and No Proof-of-Purchase Payments payable to Settlement Class Members and inform Settlement Class Counsel and P&G in writing of that amount. P&G shall pay the total amount of the Proof-of-Purchase Payments and No Proof-of-Purchase Payments to the Settlement Administrator within fourteen (14) days of receiving such notice. Payment of this amount, plus any Settlement Class Representative Service Awards, shall fully discharge P&G's monetary obligations to the Settlement Class Members and Settlement Class Representatives under this Agreement.

(b) Proof-of-Purchase Payments and No Proof-of-Purchase Payments shall be paid by digital prepaid MasterCard emailed to the address on the Claim Form or other digital means offered by the Settlement Administrator (such as PayPal or Venmo). Settlement Class Members who submit a Claim Form by mail may alternatively elect to receive their payments by check to the Settlement Class Member with an appropriate legend to indicate that it is from the Settlement, and mailed to the address provided on the Claim Form, as updated in the National Change of Address Database, and, if such election is made, the Settlement Administrator shall make the Proof-of-Purchase Payment or No Proof-of-Purchase Payment to the Settlement Class Member through the method so elected. All Proof-of-Purchase Payments and No Proof-of-Purchase Payments shall be made by the Settlement Administrator within sixty (60) days after the Effective Date, unless otherwise ordered by the Court.

(c) The checks and digital prepaid MasterCards distributed to Settlement Class Members shall be valid for one hundred eighty (180) days after issuance. The Settlement Administrator will make reasonable efforts to locate the proper mailing address for any intended

recipient of a Proof-of-Purchase Payment or No Proof-of-Purchase Payment whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address. If a settlement check is not cashed or a digital prepaid MasterCard is not redeemed within the 180-day period, the Settlement Class Member shall not be entitled to any further payment under this Agreement. Any Proof-of-Purchase Payments or No Proof-of-Purchase Payments (including any portion thereof) that remain uncashed or unredeemed after one hundred eighty (180) days of issuance shall revert to P&G.

(d)     No deductions for taxes will be taken from any Proof-of-Purchase Payment or No Proof-of-Purchase Payment at the time of distribution. Settlement Class Members are responsible for paying all taxes due on such Proof-of-Purchase Payments and No Proof-of-Purchase Payments. Under no circumstance shall P&G be held liable for any tax payments with respect to the Proof-of-Purchase Payments and No Proof-of-Purchase Payments. All Proof-of-Purchase Payments and No Proof-of-Purchase Payments shall be deemed to be paid solely in the year in which such payments are actually issued. Neither Settlement Class Counsel nor P&G's Counsel purport to provide legal advice on tax matters. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any person or entity for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

**4.8.    Distribution of Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers.**

(a)     Within fourteen (14) days after the Effective Date, the Settlement Administrator shall calculate the total of Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers payable to Settlement Class Members and inform Settlement Class Counsel and P&G in writing of: (i) the total number of Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers to be distributed under the Settlement for each eligible P&G Aerosol Product; (ii) the mailing addresses for each Settlement Class Member who the Settlement Administrator determined is entitled to one or more Proof-of-Purchase Vouchers or No Proof-of-Purchase Vouchers under the Settlement; and (iii) the type and number of each Proof-of-Purchase Voucher and/or No Proof-of-Purchase Voucher each such Settlement Class Member should receive.

(b)     Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers shall be distributed by the Settlement Administrator to the Settlement Class Member with an appropriate legend to indicate that it is from the Settlement, and mailed to the address provided by the Settlement Administrator under Section 4.8(a). All Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers shall be mailed within sixty (60) days after the Effective Date, unless otherwise ordered by the Court. P&G shall be deemed to have complied with this Section 4.8(b) if the voucher is postmarked on or before the deadlines set forth in this Section.

(c)     The Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers shall be valid for one hundred eighty (180) days after issuance. The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of a Proof-of-Purchase Voucher or No Proof-of-Purchase Voucher whose voucher is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address. If a voucher is not redeemed within

the 180-day period, the voucher shall have no value and may not be redeemed, and the Settlement Class Member shall not be entitled to any further payment under this Agreement.

(d) No deductions for taxes will be taken from any Proof-of-Purchase Voucher or No Proof-of-Purchase Voucher at the time of distribution. Settlement Class Members are responsible for paying all taxes due on such Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers. Under no circumstance shall P&G be held liable for any tax payments with respect to the Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers. All Proof-of-Purchase Vouchers and No Proof-of-Purchase Vouchers shall be deemed to be paid solely in the year in which such payments are actually issued. Neither Settlement Class Counsel nor P&G's Counsel purport to provide legal advice on tax matters. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any person or entity for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

**4.9.** **No Further Confirmatory Discovery.** The Parties exchanged information via informal discovery in connection with the March 28, 2022 mediation. The Settlement Class Representatives and P&G represent and warrant that all of the information their counsel provided in connection with the mediation and settlement negotiations is true and correct based on information reasonably available and to the best of their knowledge. Settlement Class Representatives and Settlement Class Counsel, and P&G represent and warrant that they will not seek further discovery from each other. Other than the exchange of information contemplated by the Court's May 4, 2022 order, the Parties further agree that P&G is not required to provide any additional discovery in connection with the process of obtaining preliminary or final approval of the Settlement, whether formal or informal, unless otherwise ordered by the Court.

**4.10.** **Finality of Settlement.** The Settlement shall become final and effective on the Effective Date.

5. **FINAL JUDGMENT AND RELEASES.**

**5.1.** **Approval of this Agreement.** Counsel for all Parties will jointly take all necessary and appropriate steps to secure the Court's approval of this Agreement. The Parties intend to use their best efforts to obtain approval of the Settlement and entry of the orders contemplated herein, including, without limitation, seeking certification of a Settlement Class and the entry of preliminary and final approval orders. Settlement Class Counsel shall prepare and file motions seeking preliminary and final approval. P&G may, but is not required to, submit a memorandum or evidence in support of preliminary or final approval. P&G shall not be responsible for justifying to the Court the amount of any Settlement Class Representative Service Award or any Settlement Class Counsel Attorneys' Fees and Costs Award, and P&G shall have no obligation to provide or submit any materials to justify any such awards.

**5.2.** **Final Approval Order and Judgment.** The Settlement is contingent upon entry of a Final Approval Order approving the terms and conditions of this Agreement, and judgment thereon. No later than forty-nine (49) days before the date of the Final Approval Hearing, the Settlement Class Representatives and Settlement Class Counsel shall file a motion seeking the

Court's entry of the Final Approval Order, substantially in the form attached hereto as Exhibit F. Such motion shall include the total amount of Notice and Settlement Administration Costs the Settlement Administrator is seeking to be paid in connection with work performed or that will be performed pursuant to the Settlement Administrator's obligations under the Agreement. P&G will not oppose the motion for final approval, unless to enforce its termination rights under Section 4.5 hereof. Any oppositions (if any) to the motion seeking the Court's entry of the Final Approval Order shall be filed twenty-eight (28) days before the Final Approval Hearing. Any replies in further support of the motion seeking the Court's entry of the Final Approval Order shall be filed fourteen (14) days before the date of the Final Approval Hearing.

**5.3. Effect of Agreement if Settlement Is Not Approved.** This Agreement is entered into only for the purpose of Settlement. If certification of the Settlement Class, preliminary or final approval of the Settlement, or any other Order necessary to effectuate this Settlement does not occur, then this Settlement shall be void, shall have no force or effect, and shall impose no obligations on the Parties. Under such circumstances, this Agreement may not be introduced into evidence under any circumstances, including but not limited to in connection with any motion for class certification. The intent of this Section 5.3 is that, if a necessary approval is denied, the Parties will revert to their positions immediately prior to May 3, 2022, and the Actions and the MDL will resume without prejudice to any party (*i.e.*, to their positions *ab initio*). In the event of such a reversion, the Parties agree that no class will be deemed to have been certified, and that the proposed or actual certification of a settlement class will not be urged or considered as a factor in any proceeding.

**5.4. Dismissal.** Upon entry of the Final Approval Order and accompanying Judgment, except as to any Settlement Class Members who have validly and timely requested exclusion, all Claims in the Actions and in the MDL shall be dismissed with prejudice pursuant to this Settlement. Dismissal with prejudice is a material term of this Settlement.

**6. ADDITIONAL PROVISIONS**

**6.1. No Admission of Liability or Wrongdoing.** This Agreement reflects the compromise and settlement of disputed claims among the Parties. Its constituent provisions, and any and all drafts, communications, and discussions relating thereto, shall not be construed as, used for, or deemed to be evidence of an admission or concession of any point of fact or law by any person or entity, including P&G, and shall not be offered or received in evidence or requested in discovery in the Actions or any other litigation or proceeding as evidence of an admission or concession. P&G has denied and continues to deny each of the claims and contentions alleged by the Settlement Class Representatives in the Actions. P&G has asserted and continues to assert defenses thereto, and P&G has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the various complaints in the Actions.

**6.2. Termination.** If the Court for any reason does not enter any material part of the Preliminary Approval Order or the Final Approval Order or Judgment, or if any of those Orders (with the exception of any provision of these Orders relating to any Settlement Class Representative Service Award or any Settlement Class Counsel Attorneys' Fees and Costs Award) is materially modified, reversed, or set aside on further judicial review, or if for any other reason the Settlement does not become final, or if the Court or a reviewing court takes any action to

expand, impair, or reduce the scope or effectiveness of the Releases set forth in Section 3.6 or to impose greater financial or other burdens on P&G than those contemplated in this Agreement, then either Party shall have the option of terminating this Agreement. If a Party exercises this option, this Agreement shall become null and void *ab initio* without prejudice to the *status quo ante* rights, positions, and privileges of the Parties, except as otherwise expressly provided herein. In the event of a termination, this Agreement shall have no force or effect and the Parties will return to the *status quo ante* in the Actions as it existed prior to May 3, 2022. The Parties will also be prohibited from using this Settlement and any settlement or mediation communications as evidence in the Actions. The Parties further agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Actions.

**6.3.** **Publicity.** The Parties will cooperate with respect to any public statements regarding this Settlement. In no event shall the Parties or their counsel make any public statements that disparage the business or reputation of the other Party (or their counsel in this action) based on the subject matter or the conduct of the Actions or the MDL. Nothing in this Section 6.3, or elsewhere in this Agreement, shall prevent Settlement Class Counsel from discharging their duties to Settlement Class Members; discussing the Settlement with the Settlement Class Representatives, Settlement Class Members, or the Court; disclosing public information about the case on a resume, curriculum vitae, firm website, in other promotional materials, or in future legal filings; or responding to government inquiries.

**6.4.** **Fair, Adequate and Reasonable Settlement.** The Parties believe this Settlement is a fair, adequate, and reasonable settlement of the Actions and have arrived at this Settlement through arms-length negotiations, taking into account all relevant factors, present and potential. This Settlement was reached after negotiations that included a daylong mediation and extensive follow-up negotiations conducted by Robert Meyer.

**6.5.** **Stay and Bar of Other Proceedings.** Pending determination of whether the Settlement should be granted final approval, the Parties agree not to pursue any claims or defenses otherwise available to them in the Actions or the MDL, and no Settlement Class Member, either directly, on a representative basis, or in any other capacity, will commence or prosecute any action or proceeding against any of the Released Parties asserting any of the Released Claims, pending final approval of the Settlement; nor shall any third party do so on their behalf.

**6.6.** **Real Parties in Interest.** In executing this Agreement, Settlement Class Representatives, on behalf of themselves and the Settlement Class, represent and warrant that, to their knowledge, Settlement Class Members are the only persons having any interest in any of the Claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Actions and the MDL, and, except as provided herein, neither said Claims nor any part thereof have been assigned, granted, or transferred in any way to any other person, firm, or entity.

**6.7.** **Voluntary Agreement.** This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

**6.8.** **Binding On Successors.** This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

**6.9.    Parties Represented by Counsel.** The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

**6.10.    Authorization.** Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein by that Party and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**6.11.    Construction and Interpretation.** Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them. The Parties waive the application of any applicable law, regulation, holding, or rule of construction providing that ambiguities in an agreement shall be construed against the party drafting such agreement.

**6.12.    Headings.** The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

**6.13.    Exhibits.** The exhibits to this Agreement constitute material parts of this Agreement and are incorporated by reference herein.

**6.14.    Effect of Weekends and Holidays.** If any date or deadline in this Agreement falls on a Saturday, Sunday, or federal holiday, the next business day following the date or deadline shall be the operative date.

**6.15.    Merger and Integration.** This Agreement-including the Recitals to this Agreement, which are contractual in nature and form a material part of this Agreement-contains the entire, complete, and integrated statement of each and every term and condition agreed to by and among the Parties, is not subject to any term or condition not provided for herein, and supersedes, extinguishes, and replaces all previous agreements, discussions, and negotiations (including but not limited to the Memorandum of Settlement executed on or about May 3, 2022). This Agreement shall not be modified in any respect except by a writing executed by duly authorized representatives of all the Parties hereto. In entering into this Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein. There shall be no waiver of any term or condition absent an express writing to that effect by the Party to be charged with that waiver. No waiver of any term or condition in this Agreement by any Party shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Agreement.

**6.16.    Modifications and Amendments.** No amendment, change, or modification of this Agreement or any part thereof shall be valid unless in writing signed by the Parties.

**6.17.    Governing Law.** This Agreement is entered into in accordance with federal law and the laws of the State of Ohio and shall be governed by and interpreted in accordance with federal law and the laws of the State of Ohio, without regard to any conflicts of laws principles.

**6.18. Further Assurances.** Each of the Parties hereto shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of its obligations hereunder to carry out the express intent of the Parties hereto.

**6.19. Execution Date.** This Agreement shall be deemed executed on June __, 2022.

**6.20. Continuing Jurisdiction.** The parties shall ask the Court to retain jurisdiction over the interpretation, effectuation, and implementation of this Agreement.

**6.21. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

**6.22. Notice.** Any notice required or permitted to be given in connection with this Agreement shall be served in the MDL in accordance with applicable law. If not served by email, a copy shall be sent by email to all opposing counsel of record at their respective email addresses of record.

IN WITNESS WHEREOF, each of the signatories has read and understood this Agreement, has executed it, and represents that he or she is authorized to execute this Agreement on behalf of the Party or Parties he or she represents, who or which has agreed to be bound by its terms and has entered into this Agreement.

Agreed to by:

**For The Procter & Gamble Co.:**

By: ___Joseph D. Heyd /AJS___          ___7-1-22___
     Joseph D. Heyd                                    Date
     The Procter & Gamble Co.

By: _____          ___7-1-22___
     Andrew Soukup                                    Date
     Covington & Burling LLP
     Counsel for The Procter & Gamble Co.

**For the Settlement Class Representatives, Settlement Class Counsel, and the Settlement Class:**

By: _____        06/27/2022
Norma Bernsee                                       Date
Settlement Class Representative

By: _____        06/28/2022
Abby Nelson                                          Date
Settlement Class Representative

By: _____        06/28/2022
Shirley Thiele                                       Date
Settlement Class Representative

By: _____        06/27/2022
Eileen Aviles                                        Date
Settlement Class Representative

By: _____        06/27/2022
Shelby Cooper                                     Date
Settlement Class Representative

By: _____        06/27/2022
Tanya Cooper                                    Date
Settlement Class Representative

By: Jacob Cooper        06/28/2022
Jacob Cooper                                    Date
Settlement Class Representative

By: _Patricia Donadio_____     06/27/2022
     Patricia Donadio                                              Date
     Settlement Class Representative


By: _____     06/29/2022
     Gary M. Klinger                                               Date
     Milberg Coleman Bryson Phillips Grossman
     Counsel for Plaintiffs Bernsee, Nelson, Thiele, Aviles, Cooper, Cooper, Cooper, &
     Donadio, and the Settlement Class


By: _Lindsey LaBella_____     06/27/2022
     Lindsey LaBella                                               Date
     Settlement Class Representative


By: _Beth Blake_____     6/27/22
     Beth Blake                                                    Date
     Settlement Class Representative


By: _Kevin Laukaitis_____     06/24/2022
     Kevin Laukaitis                                               Date
     Shub Law Firm
     Counsel for Plaintiffs Labella & Blake and the Settlement Class


By: _____     6/24/22
     Jonathan Jagher                                               Date
     Freed Kanner London & Millen LLC
     Counsel for Plaintiff Labella and the Settlement Class


By: _____     _____
     Erica Esquivel                                                Date
     Settlement Class Representative

By: _____

Joshua Wallace
Settlement Class Representative

6/27/2022
_____
Date

By: _____

Matthew Lopez
Settlement Class Representative

6/27/2022
_____
Date

By: _____

Erik Velasques
Settlement Class Representative

6/29/2022
_____
Date

By: _____

Frank Ortega
Settlement Class Representative

06/27/2022
_____
Date

By: _____

Steven Bloch
Silver Golub & Teitell LLP
Counsel for Plaintiffs Esquivel, Wallace, Lopez, Velasques & Ortega and the Settlement
Class

6/27/22
_____
Date

By: _____
Tyler Baker (Jun 24, 2022 17:29 EDT)

Tyler Baker
Settlement Class Representative

Jun 24, 2022
_____
Date

By: _____
Brian Stanfield (Jun 24, 2022 16:39 CDT)

Brian Stanfield
Settlement Class Representative

Jun 24, 2022
_____
Date

By: _Patricia Kelley_        6/28/22
Patricia Kelley                       Date
Settlement Class Representative

By: _Jeremy Wilson_        Jun 24, 2022
Jeremy Wilson                        Date
Settlement Class Representative

By: _Dante Melendez_        Jun 24, 2022
Dante Melendez                      Date
Settlement Class Representative

By: _Darrell Stewart_        Jun 27, 2022
Darrell Stewart                      Date
Settlement Class Representative

By: _Mark S. Reich_        June 28, 2022
Mark S. Reich                      Date
Levi & Korsinsky, LLP
Counsel for Plaintiffs Baker, Stanfield, Kelley, Wilson, Melendez & Stewart and the
Settlement Class

By: _Richard S. Wayne_        6/28/22
Richard S. Wayne                 Date
Strauss Troy Co., LPA
Counsel for Plaintiffs Baker, Stanfield, Kelley, Wilson, Melendez, & Stewart and the
Settlement Class

By: _Gregory Pickens_        06/28/2022
Gregory Pickens                    Date
Settlement Class Representative

32

By: _____          06/29/2022
    Ryan Rinz                                   Date
    Settlement Class Representative


By: _____          6/29/2022
    Rick Paul                                   Date
    Paul LLP
    Counsel for Plaintiffs Pickens & Rinz and the Settlement Class


By: _____          06/28/2022
    Terence R. Coates                           Date
    Markovits, Stock & DeMarco, LLC
    Counsel for Plaintiffs Pickens & Rinz and the Settlement Class


By: _____          06/27/2022
    Angela Hernandez                            Date
    Settlement Class Representative


By: _____          06/27/2022
    Lynn Balser Mills                           Date
    Settlement Class Representative


By: _____          27 June '22
    Paul Doolittle                              Date
    Poulin | Willey | Anastopoulo, LLC
    Counsel for Plaintiffs Hernandez & Mills and the Settlement Class


By: _____          Jun 24, 2022
    Nancy Martinez (Jun 24, 2022 18:12 EDT)
    Nancy Martinez                              Date
    Settlement Class Representative

By     _____

Evan Clarke
Settlement Class Representative

6/29/2022

Date

By     _____

Lagregory Bonner
Settlement Class Representative

6/29/2022

Date

By     _____

Bryan F. Aylstock
Aylstock, Witkin, Kreis & Overholtz PLLC
Counsel for Plaintiffs Martinez, Clark, & Bonner and the Settlement Class

6/24/2022

Date

By:     _____

Haley Canaday
Settlement Class Representative

6/28/2022

Date

By:     _____

Michael Reese
REESE LLP
Counsel for Plaintiff Haley Canaday and the Settlement Class

6/28/2022

Date

By     _____

Cheri Casolari
Settlement Class Representative

June 29, 2022

Date

By     _____

Dan Lewis
Settlement Class Representative

June 29, 2022

Date

34

By: _____          June 28, 2022
    _____          _____
    Berenice Bernier                           Date
    Settlement Class Representative


By: _____          June 28, 2022
    _____          _____
    Chaka Theus                                Date
    Settlement Class Representative


By: _____          June 28, 2022
    _____          _____
    Sondra Trent                               Date
    Settlement Class Representative


By: _____          06/28/2022
    _____          _____
    Noah M. Schubert                           Date
    Schubert Jonckheer & Kolbe LLP
    Counsel for Plaintiffs Casolari, Lewis, Bernier, Theus, & Trent and the Settlement Class


35

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**In re: Procter & Gamble Aerosol Products**     Case No. 2:22-md-3025
**Marketing and Sales Practices Litigation**     Judge Michael H. Watson
                                               Magistrate Judge Chelsey Vascura

**This document relates to: ALL CASES**

**[PROPOSED] ORDER GRANTING**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Settlement and Direction of Notice Under Rule 23(e) (the "Motion"). Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent (collectively, "Settlement Class Representatives") and Defendant The Procter & Gamble Company ("P&G") have entered into a Class Action Settlement Agreement and Release, dated [_____], 2022 (the "Settlement Agreement").

Having thoroughly reviewed the Settlement Agreement, including the proposed forms of class notice and other exhibits thereto, the Motion, and the papers and arguments in connection therewith, THE COURT HEREBY FINDS, CONCLUDES, AND ORDERS THE FOLLOWING:

Exhibit A

1.      Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement.

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), and has personal jurisdiction over the Parties and the Settlement Class Members. Venue is proper in this District.

3.      The Motion is GRANTED.

4.      The Court hereby provisionally certifies, for settlement purposes only, a "Settlement Class," pursuant to Rules 23(b)(2) and 23(b)(3), consisting of

> All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021. The following individuals are excluded from the Settlement Class: officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

5.      The Court hereby preliminarily approves the Settlement Agreement and the terms embodied therein pursuant to Rule 23(e)(1). The Court finds that it will likely be able to approve the Settlement Agreement under Rule 23(e)(2) and to certify the Settlement Class for purposes of judgment on the proposed Settlement. The Court preliminarily finds that the Settlement is fair, reasonable, and adequate as to the Settlement Class Members under the relevant considerations. The Court finds that proposed Settlement Class Representatives and proposed Settlement Class Counsel have adequately represented, and will continue to adequately represent, the Settlement Class. The Court further finds that the Settlement Agreement is the product of arm's length negotiations by the Parties through an experienced mediator, Robert Meyer, and comes after adequate investigation of the facts and legal issues, the filing of 14 complaints by proposed

Settlement Class Representatives, a day-long mediation session, and extended arm's-length negotiations thereafter. The Court preliminarily finds that the relief provided to the Settlement Class is adequate taking into account, *inter alia*, the costs, risks, and delay of trial and appeal and the proposed method of distributing compensation to the Settlement Class. The Court further finds that the Settlement Agreement treats the Settlement Class Members equitably relative to one another. As set forth more fully in the Settlement Agreement, Settlement Class Members that submit a timely and valid Claim Form will be sent Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, or No Proof-of-Purchase Payments, the number of which will be based on the number of P&G Aerosol Products the Settlement Class Member purchased, as provided on the Settlement Class Member's submitted Claim Form and consistent with the terms of the Settlement Agreement. The Court will fully assess any request for an Attorneys' Fees and Costs Award or a Settlement Class Representative Service Award after receiving a motion from proposed Settlement Class Representatives and Settlement Class Counsel supporting such request. At this stage, the Court finds that the plan to request these awards creates no reason not to direct notice to the Settlement Class, especially because any motion for any such award must be filed before the deadline to object or opt-out of the Settlement.

6. The Court finds that, for settlement purposes only, the Settlement Class, as defined above, meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Specifically, the Court finds that (1) the Settlement Class Members are sufficiently numerous such that joinder is impracticable; (2) there are questions of law and fact common to Settlement Class Members; (3) proposed Settlement Class Representatives' claims are typical of those of the Settlement Class Members; (4) proposed Settlement Class Representatives and Settlement Class Counsel have fairly and adequately represented, and will continue to fairly and

adequately represent, the interests of the Settlement Class Members; and (5) for purposes of settlement only, the Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3). The Court further finds, for settlement purposes only, that P&G has acted or refused to act on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the class as a whole under Rule 23(b)(2).

7.      Certification of the Settlement Class shall be solely for settlement purposes and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect, and the Parties preserve all rights and defenses regarding class certification in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

8.      The Court hereby appoints Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent as Settlement Class Representatives to represent the Settlement Class.

9.      The Court hereby appoints the following lawyers at the following firms as Settlement Class Counsel for the Settlement Class: Gary Klinger at Milberg Coleman Bryson Phillips Grossman; Kevin Laukaitis at Shub Law Firm; Steven Bloch at Silver Golub & Teitell LLP; Mark S. Reich at Levi & Korsinsky, LLP; Richard S. Wayne at Strauss Troy Co., LPA; Rick Paul at Paul LLP; Paul Doolittle at Poulin Willey Anastopoulo, LLC; Bryan Aylstock at Aylstock,

Witkin, Kreis & Overholtz PLLC; Jonathan Jagher at Freed Kanner London & Millen LLC; Michael Reese at Reese LLP; Terence R. Coates at Markovits, Stock & Demarco, LLC; and Noah M. Schubert at Schubert Jonckheer & Kolbe LLP.

10.     The Court hereby appoints Kroll as Settlement Administrator and directs Kroll to carry out all duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement and herein.

Notice Program

11.     Pursuant to Rule 23(e)(1) and Rules 23(c)(2)(A) and 23(c)(2)(B), the Court approves the proposed Notice program set forth at Section 4.2 of the Settlement Agreement, including the form and content of the proposed forms of class notice attached as Exhibits B and C to the Settlement Agreement.  The Court finds that the proposed Notice program meets the requirements of due process under the U.S. Constitution and Rule 23; and that such Notice program, which includes the establishment of a Settlement Website, the establishment of a toll-free telephone helpline, online display advertising, advertising on search engines and social media, and publication of notice of the proposed Settlement over a newsline for direct distribution into newsrooms, is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  The Court further finds that the proposed form and content of the Notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt out, and the proposed Settlement and its terms.  The Court finds that the Notice clearly and concisely states in plain, easily understood language, *inter alia*: (i) the nature of the Actions and the MDL; (ii) the definition of the Settlement Class; (iii) the class claims and issues; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires;

(v) that the Settlement Class Member must submit a timely claim via a valid Claim Form to be eligible to receive compensation under the Settlement; (vi) the time and manner for submitting a Claim Form; (vii) that the Court will exclude from the Settlement Class any member who timely and validly requests exclusion; (viii) the time and manner for requesting exclusion; and (ix) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3). The parties may make non-material changes to the proposed Notice program, including the form and content of the Notice, without seeking further approval of the Court.

12.     The Court directs the Settlement Administrator and the Parties to implement the Notice program as set forth in the Settlement Agreement. As soon as practicable and no later than 30 days after entry of this Preliminary Approval Order, the Settlement Administrator shall do the following:

a.     Settlement Website:  The Settlement Administrator shall establish a Settlement Website hosted at www.aerosolspraysettlement.com (or another URL agreed-upon by the Parties) that is dedicated to the Settlement. The Settlement Website shall contain the Long Form Notice (in substantially the same form attached as Exhibit B to the Settlement Agreement), in both downloadable PDF format and HTML format; a Contact Information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Settlement Class Counsel; the telephone helpline number; the Settlement Agreement; this Order; a downloadable and online version of the Claim Form; and all other material filings by the Parties or the Court regarding the Settlement, including Settlement Class Counsel's application for an Attorneys' Fees and Costs Award and/or Settlement Class Representative Service Awards, the motion for final approval of the Settlement, and any orders with respect to such applications and motions. The Settlement Website shall remain accessible until at least 120 days after all Proof-of-

6

Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, and No Proof-of-Purchase Payments to eligible Settlement Class Members have been distributed.

        b.    <u>Toll-free telephone helpline</u>: The Settlement Administrator shall establish a toll-free telephone helpline, which shall be posted on the Settlement Website, and to which Settlement Class Members may refer for information about the MDL and the Settlement Agreement. The toll-free helpline shall remain active until at least 90 days after all Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, and No Proof-of-Purchase Payments to eligible Settlement Class Members have been distributed.

        c.    <u>Online Notice</u>: The Settlement Administrator shall cause the Online Notice to be published on internet sites, including search engines and social media, through an appropriate programmatic network.

        d.    <u>Publication Notice</u>: The Settlement Administrator shall cause the Publication Notice to be distributed over a newsline for direct distribution into newsrooms.

        13.    Within 30 days after entry of this Preliminary Approval Order, P&G shall pay the Notice and Settlement Administration Costs Advance to the Settlement Administrator in an amount of $196,500.

        14.    By no later than 63 days before the Final Approval Hearing, the Settlement Administrator shall file (or provide to Settlement Class Counsel for filing) an affidavit affirming that the Notice program has been implemented in accordance with the Settlement Agreement and this Order (including CAFA notice) and identifying any Settlement Class Members who timely and validly requested exclusion from the Settlement Class.

<u>Opt-Out and Objection Procedures</u>

7

15.     Settlement Class Members may exclude themselves from the Settlement Class by mailing to the Settlement Administrator a written request for exclusion that is postmarked no later than 90 days after entry of this Preliminary Approval Order (the "Exclusion/Objection Deadline"). To be effective, the request for exclusion must include (a) the Settlement Class Member's full name, telephone number, and mailing address; (b) a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; (c) the name of the MDL: "*In re Procter & Gamble Aerosol Product Marketing & Sales Practices Litigation*, No. 22-md-3025"; and (d) the Settlement Class Member's signature, or the like signature or affirmation of an individual authorized to act on the Settlement Class Member's behalf. Upon the Settlement Administrator's receipt of a timely and valid exclusion request, the Settlement Class Member shall be deemed excluded from the Settlement Class and shall not be entitled to any benefits of this Settlement. A Settlement Class Member may request to be excluded from the Settlement only on the Settlement Class Member's own behalf; a Settlement Class Member may not request that other Settlement Class Members (or a group or subclass of Settlement Class Members) be excluded from the settlement.

16.     Any Settlement Class Member who does not request exclusion from the Settlement Class has the right to object to the proposed Settlement and/or to Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award or Settlement Class Representative Service Awards. To be considered valid, an objection must be in writing, must be filed with or mailed to the Court, must be postmarked or filed no later than 90 days after entry of this Preliminary Approval Order (the Exclusion/Objection Deadline), and must include the following: (a) the case name and case number: "*In re Procter & Gamble Aerosol Product Marketing & Sales Practices Litigation*, No. 22-md-3025"; (b) the full name, mailing address, and telephone number of the

8

Settlement Class Member objecting to the Settlement (the "Objector"); (c) the Objector's signature, or the like signature or affirmation of an individual authorized to act on the Objector's behalf; (d) a statement of the specific grounds for the objection; (e) a statement whether the objection applies only to the Objector, to a specific subset of the class, or to the entire class; (f) the name, address, bar number, and telephone number of counsel for the Objector, if represented by an attorney in connection with the objection; and (g) a statement whether the Objector intends to appear at the Final Approval Hearing, either in person or through counsel. If the Objector or his or her attorney intends to present evidence at the Final Approval Hearing, the objection must contain the following information: a detailed description of all evidence the Objector will offer at the Final Approval Hearing, including copies of any and all exhibits that the Objector may introduce at the Final Approval Hearing. If an objection is not submitted in accordance with this paragraph, this Court may in the exercise of its discretion refuse to consider it. Any Settlement Class Member who does not timely submit an objection in accordance with this paragraph shall waive the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the proposed Settlement or to Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award or Settlement Class Representative Service Awards.

17.     By no later than fourteen (14) days prior to the Exclusion/Objection Deadline, Settlement Class Counsel shall file their motion for an Attorneys' Fees and Costs Award and/or a Settlement Class Representative Service Award. Any such motion shall be posted to the Settlement Website within one business day after its filing.

<u>Final Approval Hearing</u>

18.     The Court will hold a Final Approval Hearing on _____, 2022 [*at least 167 days after entry of this Preliminary Approval Order*] at _____ a.m./p.m, in the United States

9

District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, Room 108, 85 Marconi Boulevard, Columbus, OH 43215. The purposes of the Final Approval Hearing will be to: (i) determine whether the proposed Settlement Agreement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Settlement Class; (ii) determine whether judgment should be entered pursuant to the Settlement Agreement, dismissing the claims in the Actions and in the MDL with prejudice and releasing all Released Claims; (iii) determine whether the Settlement Class should be finally certified; (iv) rule on Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award and/or Settlement Class Representative Service Awards; (v) consider any properly filed objections; and (vi) consider any other matters necessary in connection with the final approval of the Settlement Agreement. If the Court subsequently determines that the Final Approval Hearing should not occur at an in-person hearing but rather through remote means, the Court will issue a subsequent order.

19. By no later than 49 days before the Final Approval Hearing, Settlement Class Counsel shall file their motion for final approval of the Settlement Agreement.

20. Any oppositions (if any) to the motion seeking the Court's entry of the Final Approval Order shall be filed 28 days before the Final Approval Hearing.

21. Any replies in further support of the motion seeking the Court's entry of the Final Approval Order (if any) shall be filed 14 days before the date of the Final Approval Hearing

22. The Court may, in its discretion, modify the date, time, and/or location of the Final Approval Hearing. In the event the Court changes the date, time, and/or location of the Final Approval Hearing, the new date and time shall be posted on the Settlement Website.

23. If the Settlement Agreement, including any amendment made in accordance therewith, is not approved by the Court or shall not become effective for any reason whatsoever,

the Settlement Agreement and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein), shall be terminated and shall become null and void and of no further force and effect except for (i) any obligations to pay for any expense incurred in connection with Notice and administration as set forth in the Settlement Agreement, and (ii) any other obligations or provisions that are expressly designated in the Settlement Agreement to survive the termination of the Settlement Agreement.

24.     Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, including matters relating to Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award and/or a Settlement Class Representative Service Award, all proceedings in the MDL are hereby stayed and suspended until further order of this Court.

25.     Pending final determination of whether the Settlement Agreement should be finally approved, Settlement Class Representatives, all Settlement Class Members, and Releasing Parties (and any persons purporting to act on their behalf) are barred and enjoined from filing, commencing, prosecuting, maintaining, or enforcing any Released Claims against the Released Parties, directly or indirectly (including in any action purportedly brought on behalf of the general public of the United States or of a particular state, district, or territory therein), in any judicial, administrative, arbitral, or other forum. This bar and injunction are necessary to protect and effectuate the Settlement Agreement and this Preliminary Approval Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction.

26.     This Preliminary Approval Order, the Settlement Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not constitute, be

11

described as, construed as, offered, or received against P&G or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by any plaintiff in the MDL; (b) any liability, negligence, fault, or wrongdoing of P&G or the Released Parties; or (c) that this or any other action may be properly certified as a class action for litigation, non-settlement purposes.

27. The Parties are directed to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement according to its terms should it be finally approved.

28. The Court may, for good cause, extend any of the deadlines set forth in this Preliminary Approval Order without further notice to Settlement Class Members. Without further order of the Court, the Parties may agree to make non-material modifications in implementing the Settlement that are not inconsistent with this Preliminary Approval Order.

29. The following chart summarizes the dates and deadlines set by this Preliminary Approval Order:

| | |
|---|---|
| Notice Date | **30 days after entry of this Preliminary Approval Order** |
| Last day for Settlement Class Counsel to file motion for Settlement Class Counsel Attorneys' Fees and Costs Award and/or Class Representative Service Award | **14 days prior to the Exclusion/Objection Deadline** |
| Claims Submission Deadline | **90 days after entry of this Preliminary Approval Order** |
| Exclusion/Objection Deadline | **90 days after entry of this Preliminary Approval Order** |
| Last day for Settlement Class Counsel to file motion for final approval of the Settlement | **49 days before Final Approval Hearing** |
| Last day to file oppositions (if any) to the motion for final approval of the Settlement | **28 days before the Final Approval Hearing** |

| Last day to file any replies in further support of the motion for final approval of the Settlement | **14 days before the date of the Final Approval Hearing** |
|---|---|
| Final Approval Hearing | **_____, 2022, which is at least 167 days after entry of this Preliminary Approval Order** |

**IT IS SO ORDERED.**

DATED: _____.


_____
Michael H. Watson
United States District Judge

United States District Court for the Southern District of Ohio
*In re Procter & Gamble Aerosol Products Marketing & Sales Practices Litigation*
Case No. 2:22-MD-03025

# Notice of Proposed Class Action Settlement

If you purchased a Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, or Hair Food aerosol antiperspirant, deodorant, body spray, dry shampoo, or dry conditioner product from November 4, 2015 to December 31, 2021, you may be entitled to make a claim for a monetary payment or a voucher.

**The Court authorized this notice. This is not a solicitation from a lawyer.
You are not being sued. Please do not contact the Court.**

| 1. | Background & Introduction |
|---|---|

This class action settlement will resolve several lawsuits filed against The Procter & Gamble Company ("P&G"), and consolidated into a multidistrict litigation action ("MDL"), involving the marketing and sale of certain aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food ("P&G Aerosol Products"). The lawsuits contend that these products were inappropriately marketed because it was not disclosed that the P&G Aerosol Products allegedly contained benzene. The lawsuits seek to, among other things, stop such marketing and refund to customers a portion of the purchase price of the P&G Aerosol Products. P&G denies that it has engaged in any wrongdoing and maintains that its marketing was at all times truthful and accurate.

The Court has not made a determination as to whether the allegations against P&G have merit. Instead, the parties have proposed to enter into a class action settlement to resolve the claims asserted in the settlement. In connection with this settlement, P&G will provide each Settlement Class Member who submits a valid and timely claim with the option to receive either a monetary payment of up to three dollars and fifty cents ($3.50) for each P&G Aerosol Product purchased between November 4, 2015 and December 31, 2021, or vouchers for the same P&G Aerosol Product(s) purchased. Claims submitted without valid proof of purchases are limited to a maximum of three (3) P&G Aerosol Products per household, and Settlement Class Members have the option to receive up to a maximum of ten dollars and fifty cents ($10.50) or up to three vouchers for the same P&G Aerosol Products(s) purchased. The number of vouchers or monetary payments that you can receive under the settlement will be reduced by the number of vouchers that you or a member of your household previously received through P&G's recall programs. The value of any voucher(s) will correspond to the type of P&G Aerosol Product that you claim you have purchased. The value of each voucher is: $5 for Old Spice Hair; $6 for

Exhibit B

Aussie; $7 for Old Spice, Secret, or Herbal Essences; $9 for Pantene or Waterl<ss; and $10 for Hair Food. In addition, P&G has agreed to undertake certain corrective and preventive actions prior to and following the manufacture of any additional units of the P&G Aerosol Products.

This notice summarizes your rights under the proposed settlement of a class action lawsuit. For the precise terms and conditions of the settlement, please see the settlement agreement available at www.aerosolspraysettlement.com.

**Your legal rights are affected whether you act or don't act. Read this notice carefully.**

Any questions? Read below, visit www.aerosolspraysettlement.com, or call [#####] for more information.

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **Submit a Claim** | The only way to receive a monetary payment or a voucher in connection with this settlement is to submit a timely and valid claim. See Questions 6–8 for more information. | [90 days after entry of the Preliminary Approval Order] |
| **Exclude Yourself** | If you exclude yourself from the Settlement Class (also called "opting out"), you will give up your right to receive a monetary payment or voucher under the settlement, but will retain any rights you may have to bring your own lawsuit about the issues in the MDL. See Question 10 for more information. | [90 days after entry of the Preliminary Approval Order] |
| **Object or Comment** | If you do not exclude yourself from the Settlement Class, you may object to, or comment on, the settlement and/or Settlement Class Counsel's request for attorneys' fees and litigation expenses and for a Settlement Class Representative Service Award to the plaintiffs who brought these lawsuits on behalf of the Settlement Class. See Question 11 for more information. | [90 days after entry of the Preliminary Approval Order] |
| **Go to a Hearing** | Ask to speak to the Court about the fairness of the settlement, the amount of attorney's fees, or the payments to the Settlement Class Representatives. See Questions 11 and 16–18 for more information. | [90 days after entry of the Preliminary Approval Order] |
| **Do Nothing** | If you do nothing and the settlement becomes final, you will not receive a settlement payment or voucher, even if you are a Settlement Class Member. You will give up your right to bring your own lawsuit about the issues in the MDL. See Questions 6–7, 9, 12 for details. | |

# Basic information about the class action

**2.        What are these lawsuits about?**

The lawsuits in the MDL concern the marketing and sale of certain aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food ("P&G Aerosol Products"), which are marketed by P&G. The lawsuits allege that these products were inappropriately marketed because it was not disclosed that some of the P&G Aerosol Products reportedly contained benzene.

Several plaintiffs—including Settlement Class Representatives Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent —filed class action lawsuits against P&G about these issues, and those lawsuits were consolidated into the MDL. The complaints in this case are available at www.aerosolspraysettlement.com. P&G denies that any of the allegations are true and that it did anything wrong.

The Settlement Class Representatives and P&G have now agreed to a settlement to resolve these lawsuits, as described below. The Court has not decided whether Settlement Class Representatives or P&G are correct. By agreeing to the settlement, neither P&G nor Settlement Class Representatives makes any admissions regarding the merits of the allegations, claims, or defenses in this case.

The United States District Court for the Southern District of Ohio is overseeing the MDL that includes these class action lawsuits. The MDL is known as *In re P&G Aerosol Products Marketing and Sales Practices Litigation*, No. 2:22-md-03025.

**3.        Why is this a class action?**

In a class action, one or more people sue on behalf of themselves and other people with similar claims. All of these people together make up the Settlement Class and are Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

**4.        Who is in the Settlement Class?**

People in the Settlement Class are called "Settlement Class Members." The "Settlement Class" is defined as:

> All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021. Excluded from the Settlement Class are officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling

interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

"P&G Aerosol Products" means all aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products listed in the complaints filed in one of fifteen class actions filed against P&G by the Settlement Class Representatives or in any case included in the MDL, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food.

The final Settlement Class will consist of all persons within the Settlement Class definition except for those individuals who submit timely and valid requests for exclusion by the deadline set by the Court. (See Question 10).

# Information about the Settlement

**5.    What are the terms of the proposed settlement?**

The complete terms of the proposed settlement are set forth in the Settlement Agreement, which is available at www.aerosolspraysettlement.com. This notice provides only a summary of the terms of the settlement. The settlement benefits and obligations are summarized below.

**6.    What are the benefits of the proposed settlement?**

If the settlement is approved and becomes final, P&G will provide monetary payments or vouchers to each Settlement Class Member that submits a timely and valid Claim Form, as described further in Questions 7 and 8.

**You must file a timely and valid claim to receive a payment or voucher under the settlement.**

P&G has also agreed to undertake certain corrective and preventive actions prior to and following the manufacture of any additional units of the P&G Aerosol Products. Specifically, P&G has agreed (1) not to in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of the P&G Aerosol Products subject to its recall programs; (2) to undertake certain corrective and preventive actions prior to manufacturing any additional units of the P&G Aerosol Products; (3) to undertake certain corrective and preventive actions following the manufacturing of any P&G Aerosol Products; and (4) to conduct on-site quality inspections of its contract manufacturer's facilities used to manufacture the P&G Aerosol Products at least annually.

If awarded by the Court, P&G shall also pay the attorneys' fees and litigation expenses of the Settlement Class Counsel and any service award granted to the Settlement Class Representatives. Such payments will be paid by P&G separate and apart from the monetary relief offered to Settlement Class Members and will not in any way reduce the monetary payments and vouchers

provided to the Settlement Class Members.

**7.    How much can I get in the settlement?**

Each Settlement Class Member will have an opportunity to file a claim requesting either a monetary payment or a voucher. If the settlement is approved and becomes final, each Settlement Class Member that files a timely and valid claim will have the option to receive either a voucher for the same P&G Aerosol Product purchased, or a monetary payment of up to three dollars and fifty cents ($3.50) for each P&G Aerosol Product purchased, between November 4, 2015 and December 31, 2021, up to a maximum of ten dollars and fifty cents ($10.50) or three vouchers per household (*i.e.*, for three P&G Aerosol Products). The maximum of $10.50 or three vouchers per household does not apply if valid proof of purchases are submitted; however, the number of vouchers or monetary payments that you can receive under the settlement will be reduced by the number of vouchers that you or a member of your household received through P&G's recall programs. The value of any voucher(s) will correspond to the type of P&G Aerosol Product that you claim to have purchased.

If you or any member of your household has already received three (3) vouchers under P&G's recall programs, but you purchased additional P&G Aerosol Products between November 4, 2015 and December 31, 2021 for which you have not already received a voucher(s) under the recall programs, you may instead make a claim under the Settlement for a maximum of either one monetary payment of up to three dollars and fifty cents ($3.50) or one voucher for the same P&G Aerosol Product you purchased. However, you must not make or attempt to make a claim for any additional vouchers or monetary payments under the Settlement, and the number of units claimed cannot exceed one per household.

If the total number of claims submitted for monetary payments and vouchers without proof of purchase exceeds eight million dollars ($8,000,000), calculated by combining the face value of the total vouchers and the total payments claimed without proof of purchase, then any monetary payment you may receive will be reduced on a *pro rata* basis.

"Proof of purchase" means a dated receipt or other document evidencing the Settlement Class Member's actual purchase of one or more P&G Aerosol Products between November 4, 2015 and December 31, 2021. The proof of purchase must show the specific P&G Aerosol Product purchased, the date of purchase (which must be between November 4, 2015 and December 31, 2021), and the price of the purchase; a photo of a Product is not a valid proof of purchase. An affidavit, declaration, or other written statement by a Settlement Class Member is also not sufficient to qualify as a valid proof of purchase.

If you file a timely and valid claim at www.aerosolspraysettlement.com, monetary payments will be distributed by digital means (such as Venmo or PayPal) or digital prepaid MasterCard via email to the address you provide on the Claim Form if you elect that option on the Claim Form. If you prefer to receive your monetary payment via check, please download the Claim Form available at [URL] and mail your completed form to the address indicated on the Claim Form. Your check will be mailed to the address you provide on that form. Vouchers will be distributed by mail to the address you provide on the Claim Form.

Any monetary payments (including any portion thereof) that remain uncashed or unredeemed after one hundred eighty (180) days of issuance shall revert to P&G.

## 8. How can I submit a claim?

To submit a claim, you must fill out the Claim Form available on the settlement website, www.aerosolspraysettlement.com. You can submit the form online, or you can print it out and mail it to the Settlement Administrator at [*address*]. You can also request a Claim Form by calling [#####]. Claim Forms must be submitted online or postmarked by **[90 days after Preliminary Approval Order]**. Only one Claim Form may be submitted per household.

# Your rights and options

## 9. What are my options?

**You <u>must</u> file a timely and valid claim by following the steps in Question 8 to receive a payment or a voucher under the settlement.**

If you are a Settlement Class Member and do nothing, and the settlement is approved and becomes final, you will <u>not</u> receive a payment or a voucher under this settlement, and you will give up your right to bring your own lawsuit against P&G about the issues in this MDL. You will also be legally bound by all of the orders that the Court issues and judgments the Court makes in this action.

You may exclude yourself from the Settlement Class (sometimes referred to as "opting out") by following the steps described in Question 10. If you exclude yourself, you will give up your right to receive a settlement payment or voucher but will retain any right you may have to sue P&G about the issues in this action. You may only submit an exclusion on your own behalf; you may not attempt to exclude others from the settlement.

If you do not exclude yourself, you may object to or comment on the settlement and/or to Settlement Class Counsel's request for attorneys' fees and litigation expenses and for a Settlement Class Representative Service Award (see Question 11). If you exclude yourself, you may not object. You do not need to object or comment in order to receive a settlement payment or voucher, but you <u>must</u> file a claim.

## 10. How do I exclude myself from the Settlement Class?

To exclude yourself from the Settlement Class, you must mail a written request for exclusion to:

[<em>SETTLEMENT ADMINISTRATOR ADDRESS</em>]

To be effective, your request for exclusion must be **postmarked no later than [90 days after Preliminary Approval Order]**, and must include the following information:

(a) your full name, telephone number, and mailing address;

(b) a clear and unequivocal statement that you wish to be excluded from the Settlement Class;
(c) the name of the MDL: "*In re P&G Aerosol Products Marketing and Sale Practices Litigation*, No. 2:22-md-03025"; and
(d) your signature or the signature of an individual authorized to act on your behalf.

Requests for exclusion must be specific to individual Settlement Class Members. Settlement Class Members cannot request exclusion on behalf of others or as a class or group.

## 11.     How do I object or comment?

If you are a Settlement Class Member and have not excluded yourself from the Settlement Class, you can comment on or object to the settlement, Settlement Class Counsel's request for attorneys' fees and litigation expenses, and/or the request for a service award for Settlement Class Representatives. To object or comment, you must send a written objection/comment including the following:

(a) the case name and case number: "*In re P&G Aerosol Products Marketing and Sale Practices Litigation*, No. 2:22-md-03025";
(b) your full name, mailing address, and telephone number;
(c) your signature or the signature of an individual authorized to act on your behalf;
(d) a description of the specific reasons for your objection;
(e) a statement about whether the objection applies only to you, to a specific subset of the class, or to the entire class;
(f) the name, address, bar number, and telephone number of your attorney, if you are represented by an attorney in connection with your objection; and
(g) a statement about whether or not you intend to appear at the Final Approval Hearing either in person or through an attorney.

If you or your attorney intend to present evidence at the Final Approval Hearing, your written objection/comment also must:

(a) describe in detail all evidence you or your attorney will offer at the hearing; and
(b) attach copies of any and all exhibits you or your attorney may introduce at the hearing.

To be considered by the Court, your comment or objection must be filed with or mailed (and postmarked) to the Clerk of Court **no later than [90 days after Preliminary Approval Order]**, at the following address:

Office of the Clerk
Joseph P. Kinneary U.S. Courthouse
Room 121
85 Marconi Boulevard
Columbus, Ohio 43215

You have the right to consult with your own attorney, at your own expense, before deciding how best to proceed.

## 12. What claims will be released by this Settlement?

If you are in the Settlement Class and do not exclude yourself from the Settlement Class, and the settlement is approved and becomes final, the settlement will be legally binding on you. In exchange for the settlement benefits, you will release all claims against P&G and its affiliates about the issues in this MDL regarding P&G's alleged marketing and sale of the P&G Aerosol Products. You also covenant and agree that you will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any claims about the issues in the MDL against P&G and its affiliates. The Settlement Agreement, available at www.aerosolspraysettlement.com, describes the claims you are releasing (giving up) by staying in the Settlement Class (called "Released Claims"). These Released Claims are any and all Claims (including but not limited to any and all Claims asserted in the Actions or otherwise asserted in any case ever included in the MDL) that you ever had, now have, or may have in the future, whether asserted by you or on your behalf by a third party (including Claims brought on behalf of the general public of the United States or of a particular state, district, or territory therein), arising out of or in any way relating to conduct occurring on or before December 31, 2021, relating to:

(a) the purchase or use of any of the P&G Aerosol Products, including all of the products identified in any complaint filed in the Actions or in any case included in the MDL;

(b) any of the alleged violations of the Federal Food, Drug, and Cosmetics Act, FDA regulations, or FDA guidelines cited in the complaints in the Actions or in any case included in the MDL;

(c) any of the marketing representations identified in any complaint filed in the Actions or in any case included in the MDL, including but not limited to the failure to disclose the presence of benzene in any P&G Aerosol Products;

(d) any claim for any acts or omissions that were raised or could have been raised within the scope of the facts asserted in any of the complaints filed in the Actions or in any case included in the MDL; or

(e) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), or (d).

The Released Claims do not include Claims for personal injury.

If you are in the Settlement Class and do not exclude yourself from the Settlement Class, and the settlement is approved, you also expressly accept and assume the risk that the facts upon which this Settlement Agreement is executed may be found later to be other than or different from the facts now believed by the Settlement Class Representatives, the Settlement Class Members, Settlement Class Counsel, P&G, and P&G's Counsel to be true, and you agree that the Settlement Agreement shall remain effective notwithstanding any such difference in facts.

## 13. Do I have a lawyer in this class action?

Yes. The Court has appointed the following attorneys and law firms to represent the Settlement Class Members. Together, these lawyers are known as "Settlement Class Counsel":

Gary Klinger
Milberg Coleman Bryson Phillips Grossman
[ADDRESS]

[PHONE]

Kevin Laukaitis
Shub Law Firm
134 Kings Highway E.
2nd Floor
Haddonfield, New Jersey 08033
856-772-7200

Steven Bloch
Silver Golub & Teitell LLP
[ADDRESS]
[PHONE]

Mark S. Reich
Levi & Korsinsky, LLP
[ADDRESS]
[PHONE]

Richard S. Wayne
Strauss Troy Co., LPA
[ADDRESS]
[PHONE]

Rick Paul
Paul LLP
601 Walnut St., Suite 300
Kansas City, MO 64106
(816)984-8100

Paul Doolittle
Poulin Willey Anastopoulo, LLC
[ADDRESS]
[PHONE]

Bryan Aylstock
Aylstock, Witkin, Kreis & Overholtz PLLC
[ADDRESS]
[PHONE]

Jonathan Jagher
Freed Kanner London & Millen LLC
[ADDRESS]
[PHONE]

Michael Reese
Reese LLP
[ADDRESS]
[PHONE]

Terence R. Coates
Markovits, Stock & Demarco, LLC

119 E. C., Suite 530
Cincinnati, OH 45202
(513) 651-3700

Noah M. Schubert
Schubert Jonckheer & Kolbe LLP
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 690-7101

You do not have to pay Settlement Class Counsel for their time or expenses incurred in this case out of your pocket. Instead, Settlement Class Counsel will petition the Court for an award of their fees and expenses; any amount awarded will be paid by P&G separate and apart from, and in addition to, the monetary payments and vouchers provided to Settlement Class Members.

The Court has also appointed Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent as class representatives to represent the Settlement Class.

## 14. How will the lawyers be paid?

Settlement Class Counsel (see Question 13) will file a motion on or before [*14 days prior to Exclusion/Objection Deadline*] asking the Court to award them attorneys' fees and reimbursement of litigation expenses up to a total of $2.4 million, which will be paid separately by P&G. The attorneys' fees and expenses awarded by the Court will be the only payment to Settlement Class Counsel for their efforts in achieving the settlement and for their risk in undertaking this representation on a wholly contingent basis.

In addition, Settlement Class Counsel will ask the Court on or before [*14 days prior to Exclusion/Objection Deadline*] to award service awards of up to $250 to each Settlement Class Representative listed in Question 13 above, to compensate them for their efforts and commitment on behalf of the Settlement Class in this lawsuit.

The Court will determine the amount of attorneys' fees and expenses and the amount of any service awards to award. Settlement Class Counsel's application for attorneys' fees and expenses and for service awards will be made available at www.aerosolspraysettlement.com when they are filed.

## 15. Should I hire my own lawyer for this case?

You do not need to hire your own lawyer because Settlement Class Counsel represents you and the other members of the Settlement Class already. However, you have the right to hire your

own lawyer. If you want your own lawyer separate from Settlement Class Counsel, you will have to pay that lawyer.

# The Court's Final Approval Hearing

| 16. | When and where will the Court decide whether to approve the settlement? |

The Court will hold a Final Approval Hearing at [__:__] a.m./p.m. on [_____], in the United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, Room 108, 85 Marconi Boulevard, Columbus, OH 43215, with United States District Judge Michael H. Watson presiding. The hearing may be moved to a different date, time, and/or location without further notice to you. Please check www.aerosolspraysettlement.com for updates or changes to the date, time, or location of the Final Approval Hearing.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable and adequate. The Court will also consider Settlement Class Counsel's applications for attorneys' fees and expenses and for service awards. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 17. | Do I have to come to the hearing? |

No. Settlement Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. So long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| 18. | May I speak at the hearing? |

You may ask the Court for permission to speak at the Final Approval Hearing. You cannot speak at the hearing if you exclude yourself from the Settlement Class.

# Getting more information

| 19. | Where can I get more information? |

More information can be found at www.aerosolspraysettlement.com. That website includes important case deadlines, links to case documents including the full Settlement Agreement and the complaints in this case, and other information about the lawsuits and the settlement. You can also get more information by calling [######], or by calling Settlement Class Counsel at the phone numbers listed in the response to Question 13 above.

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*A federal court authorized this notice.*

*This is **not** a solicitation from a lawyer.*

**IF YOU PURCHASED A SECRET, OLD SPICE, PANTENE, WATERL<SS, AUSSIE, HERBAL ESSENCES, OR HAIR FOOD AEROSOL ANTIPERSPIRANT, DEODORANT, BODY SPRAY, DRY SHAMPOO, OR DRY CONDITIONER PRODUCT FROM NOVEMBER 4, 2015 TO DECEMBER 31, 2021, YOU MAY BE ENTITLED TO MAKE A CLAIM FOR A MONETARY PAYMENT OR A VOUCHER UNDER A CLASS ACTION SETTLEMENT, AND YOUR LEGAL RIGHTS COULD BE AFFECTED BY THAT SETTLEMENT.**

**You <u>must</u> file a timely and valid claim to receive a payment or a voucher under the settlement. Read this notice and visit www.aerosolspraysettlement.com or call [######] for more information.**

**What is this notice about?** A proposed settlement has been reached in a class action proceeding. The lawsuits in this proceeding claimed that certain aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products marketed by The Procter & Gamble Company ("P&G"), including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food brands ("P&G Aerosol Products"), were inappropriately marketed because it was not disclosed that some of the P&G Aerosol Products allegedly contained benzene. P&G denies that it did anything wrong. The settlement, if approved, resolves the lawsuits and provides benefits to Settlement Class Members who do not exclude themselves from the Settlement Class.

**Who is included?** The "Settlement Class" consists of all persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021. "P&G Aerosol Products" means all aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products listed in the complaints filed in the Actions or in any case included in the MDL, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food.

**What benefits does the settlement provide?** Under the proposed settlement, each Settlement Class Member will have an opportunity to file a claim requesting either a monetary payment or a voucher from P&G. If the settlement is approved and becomes final, each Settlement Class Member that files a timely and valid claim will have the option to receive either a monetary payment of up to three dollars and fifty cents ($3.50) for each P&G Aerosol Product purchased, between November 4, 2015 and December 31, 2021, up to a maximum of ten dollars and fifty cents ($10.50), or a voucher for the same P&G Aerosol Product purchased, up to a maximum of three vouchers per household (*i.e.*, for three P&G Aerosol Products). The value of any voucher(s) will correspond to the type of P&G Aerosol Product that you claim you have purchased. There is no limit to the amount of claims you may submit if you submit valid proof of

Exhibit C

purchases (i.e., you may receive more than $10.50 if you have valid proof of purchases showing that you purchased more than three P&G Aerosol Products between November 4, 2015 and December 31, 2021). The number of vouchers or monetary payments that you can receive under this settlement will be reduced by the number of vouchers that you or a member of your household received through P&G's recall programs, although each Settlement Class Member's household that received any vouchers through P&G's recall programs still is permitted to submit a claim for at least one monetary payment or one voucher in connection with this settlement.

**You <u>must</u> file a claim to receive a payment or voucher under the settlement.**

**What are the options?** You <u>must</u> file a timely and valid claim to receive a payment or a voucher under the settlement. If you are a Settlement Class Member and do nothing, and the settlement is approved and becomes final, you will <u>not</u> receive a payment or a voucher under this settlement, and you will give up your right to bring your own lawsuit against P&G about the issues in the lawsuits. If you exclude yourself from the Settlement Class (sometimes referred to as "opting out"), you will give up your right to receive a settlement payment or voucher but will retain any right you may have to sue P&G about the issues in this action. To exclude yourself, you must mail a signed, written request for exclusion, postmarked no later than **[90 days after Preliminary Approval Order]**, to: [SETTLEMENT ADMINISTRATOR ADDRESS]. Requests for exclusion must be specific to individual Settlement Class Members, and Settlement Class Members cannot request exclusion as a class or group. If you do not exclude yourself, you may object to or comment on the settlement and/or to Settlement Class Counsel's request for attorneys' fees and litigation expenses and for a service award to the plaintiffs who brought these lawsuits on behalf of the Settlement Class. For more information, visit www.aerosolspraysettlement.com.

**What happens next?** The Court will hold a hearing on **[DATE, TIME]**, at the United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, Room 108, 85 Marconi Boulevard, Columbus, OH 43215, to decide whether to approve the settlement, how much attorneys' fees and expenses to award the attorneys who worked representing the Settlement Class (up to $2.4 million), and whether to award a service award of up to $250 to each Settlement Class Representative who brought this case on behalf of the Settlement Class. If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost. The date and time of this hearing may change without further notice. Please check www.aerosolspraysettlement.com for updates.

**Who represents the Settlement Class?** The Court has appointed the following lawyers at the following law firms to represent the Settlement Class: Gary Klinger at Milberg Coleman Bryson Phillips Grossman; Kevin Laukaitis at Shub Law Firm; Steven Bloch at Silver Golub & Teitell LLP; Mark S. Reich at Levi & Korsinsky, LLP; Richard S. Wayne at Strauss Troy Co., LPA; Rick Paul at Paul LLP; Paul Doolittle at Poulin Willey Anastopoulo, LLC; Bryan Aylstock at Aylstock, Witkin, Kreis & Overholtz PLLC; Jonathan Jagher at Freed Kanner London & Millen LLC; Michael Reese at Reese LLP; ~~and~~ Terence R. Coates at Markovits, Stock & Demarco, LLC; and Noah M. Schubert at Schubert Jonckheer & Kolbe LLP. Together, these lawyers are called Settlement Class Counsel. Settlement Class Members do not need to pay these lawyers out of their pocket; instead these lawyers will apply for compensation under the terms of the

settlement. If you are a Settlement Class Member and want to be represented by your own lawyer, you may hire one at your own expense.

**How do I get more information?** For more information, including to view copies of case documents including a detailed notice about your rights under the proposed settlement, the full settlement agreement, the complaints in the lawsuits, and Settlement Class Counsel's attorneys' fees and service award motion and any court orders related to the settlement (once they are filed), visit www.aerosolspraysettlement.com or call [########]. **PLEASE DO NOT CONTACT THE COURT.**

# Procter & Gamble Aerosol Products Class Action Settlement
## Claim Form

| | | |
|---|---|---|
| **MUST BE SUBMITTED NO LATER THAN, MONTH XX, 2022** | This Settlement involves Procter & Gamble aerosol products, including all aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products listed in the complaints filed in the Actions or in any case included in the MDL, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food (the "P&G Aerosol Products"). | For Office Use Only |

If your claim is timely and valid and the Court approves the settlement, you may elect to receive either a monetary payment equivalent to up to three dollars and fifty cents ($3.50) or a voucher redeemable for one P&G Aerosol Product, for each P&G Aerosol Product unit purchased between November 4, 2015 and December 31, 2021, for which a timely and valid Claim Form is submitted that includes a timely and valid Proof of Purchase. The value of the voucher will correspond to the type of P&G Aerosol Product that you purchased. There is no limit to the amount of vouchers or monetary payments you may receive under the settlement if you submit a timely and valid Proof of Purchase for each P&G Aerosol Product you claim to have purchased. Proof of Purchase means a dated receipt or other document showing that you purchased one or more P&G Aerosol Products between November 4, 2015 and December 31, 2021. The Proof of Purchase must include the specific P&G Aerosol Product purchased, the date of purchase, and the price of the purchase. A photo of the product is not valid Proof of Purchase. Each Proof of Purchase may only be submitted to make a claim of one monetary payment or one voucher per household.

If you do not submit a timely and valid Proof of Purchase, you may still be eligible to receive a monetary payment or voucher for up to three P&G Aerosol Products (*i.e.*, up to ten dollars and fifty cents ($10.50) or up to three vouchers) per household. If you wish to receive monetary payments or vouchers for more than three P&G Aerosol Products, you must submit a valid Proof of Purchase for each additional product. A voucher is redeemable for the same product(s) shown in your Proof of Purchase or claimed under oath below.

**To make a claim under the settlement, you must complete this form and mail it to the address below.** (Alternatively, you can complete and submit your claim via the online claim process at [*website URL*].) All information will be kept confidential. Your claim form must be **postmarked by [_____], 2022**. This claim form will be used only for purposes of administering this settlement. Your submission, whether online or by mail, is subject to the penalty of perjury carrying penalties under U.S. laws including criminal, civil, and financial penalties for fraudulent submissions.

After the Settlement's Effective Date, monetary payments will be made by Venmo or PayPal or digital prepaid MasterCard to the email address you provide below (or mailed by check to the address you provide below, if you elect that option) and vouchers will be mailed to the address you provide. Please save a copy of this completed form and any Proof of Purchase(s) you submit with this completed form for your records. **For further information, visit [URL]. In order to receive a monetary payment or voucher, you must complete all of the information below and sign and date the form. Incomplete forms will not be processed. The address that you provide below is the address where your check (if you elect that option) or voucher will be mailed.**

**Name:** _____   _____   _____
         *First Name*                 *M.I.*         *Last Name*

**Street Address:** _____

**City:** _____

**State:** _____         **Zip Code:** _____ (zip4 optional)

**Phone:** (_____) _____ - _____

**Email Address:** _____ @ _____ .

Exhibit D

**P&G Aerosol Products Class Action Settlement**
**Claim Form**

By checking a box below, I certify that I did or did not (depending on the box I checked) receive a voucher in connection with P&G's recall programs announced on November 23, 2021 (for certain aerosol antiperspirants or deodorant products) and December 17, 2021 (for certain aerosol dry shampoo or dry conditioner products):

☐ Yes, I or a member of my household already received three or more vouchers under the recall programs. By checking this box, I certify that I purchased at least one additional P&G Aerosol Product between November 4, 2015 and December 31, 2021, for which I did not obtain a voucher from P&G under the recall programs. I also understand that, if I already received three or more vouchers under the recall programs, I am limited to receiving a maximum of one monetary payment or one voucher under this settlement.

☐ Yes, I or a member of my household already received one or two vouchers under the recall program. By checking this box, I understand that the number of monetary payments or vouchers I am entitled to receive under this settlement will be reduced by the number of vouchers I or someone else in my household received under the recall programs.

☐ No. By checking this box, I certify that neither I nor a member of my household received any vouchers from P&G in connection with P&G's recall programs.

I certify that I purchased the following units of P&G Aerosol Products between November 4, 2015 and December 31, 2021:

☐ Old Spice antiperspirant: _____ units      Year of purchase: _____

☐ Old Spice "Below Deck" deodorant: _____ units      Year of purchase: _____

☐ Secret antiperspirant: _____ units      Year of purchase: _____

☐ Pantene dry shampoo: _____ units      Year of purchase: _____

☐ Pantene dry conditioner: _____ units      Year of purchase: _____

☐ Waterl<ss dry shampoo: _____ units      Year of purchase: _____

☐ Waterl<ss dry conditioner: _____ units      Year of purchase: _____

☐ Aussie dry shampoo: _____ units      Year of purchase: _____

☐ Aussie dry conditioner: _____ units      Year of purchase: _____

☐ Herbal Essences dry shampoo: _____ units      Year of purchase: _____

☐ Hair Food dry shampoo: _____ units      Year of purchase: _____

☐ Old Spice dry shampoo: _____ units      Year of purchase: _____

☐ Other P&G Aerosol Product that I allege contains benzene:

Product: _____ Units: _____ Year of purchase: _____

If the settlement is approved, I want to receive any compensation I am owed under the settlement as follows (check one):

☐ Voucher, mailed to the address I provided above

☐ Monetary payment, which I will receive via a prepaid digital MasterCard emailed to the email address I provided above

☐ Monetary payment, which I will receive via Venmo to the following account: _____

☐ Monetary payment, which I will receive via PayPal to the following account: _____

☐ Monetary payment, which I will receive by check mailed to the mailing address I provided above

I certify under penalty of perjury under the laws of the United States that all of the foregoing is true and correct. I further understand that if it is determined that I provided any information on this form that is not true or correct, I may be ineligible for any compensation in connection with this settlement.

**SIGNATURE:** _____ **PRINTED NAME:** _____

**DATED:** _____ / _____ / _____

Mail, **WITH YOUR PROOF OF PURCHASE, IF ANY**, to: P&G Settlement Administrator, [*address*]

## "HOME" PAGE

This Settlement involves Procter & Gamble "P&G" Aerosol Products, including all aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products listed in the complaints filed in the Actions or in any case included in the MDL, including but not limited to aerosol antiperspirant, deodorant, body spray, dry shampoo, and dry conditioner products from the following brands: Secret, Old Spice, Pantene, Waterl<ss, Aussie, Herbal Essences, and Hair Food (the "P&G Aerosol Products").  **Please read this page in its entirety, as it contains important information about your options under the Settlement.**

If your claim is timely and valid and the Court approves the settlement, you may elect to receive either a monetary payment of three dollars and fifty cents ($3.50) or a voucher redeemable for one P&G Aerosol Product, for each P&G Aerosol Product unit purchased between November 4, 2015 and December 31, 2021, for which a timely and valid Claim Form is submitted that includes a timely and valid Proof of Purchase.  Proof of Purchase means a dated receipt or other document showing that you purchased one or more P&G Aerosol Products between November 4, 2015 and December 21, 2021. The Proof of Purchase must include the specific P&G Aerosol Product purchased, the date of purchase, and the price of the purchase. A photo of the product is not valid Proof of Purchase. Each Proof of Purchase may only be submitted to make a claim of one monetary payment or one voucher per household. A voucher is redeemable for the same product(s) shown in your Proof of Purchase or claimed under oath below, and the value of the voucher will correspond to the type of P&G Aerosol Product that you purchased.

If you do not submit a timely and valid Proof of Purchase, you may still be eligible to receive a monetary payment or voucher for up to three P&G Aerosol Products (*i.e.*, up to ten dollars and fifty cents ($10.50) or up to three vouchers) per household.  If you wish to receive monetary payments or vouchers for more than three P&G Aerosol Products, you must submit a valid Proof of Purchase for each additional product.

**To make a claim under the settlement, you must complete and submit the information on the following pages.**  (Alternatively, you can complete and submit your claim by printing a paper claim form available at [*website URL*] and mailing it to the address provided on that claim form. Your claim form must be **postmarked by [_____], 2022**.) All information will be kept private. The information collected will be used only for purposes of administering this settlement. Your submission, whether online or by mail, is subject to the penalty of perjury carrying penalties under U.S. laws including criminal, civil, and financial penalties for fraudulent submissions.

After the Settlement's Effective Date, monetary payments will be made by digital prepaid MasterCard to the email address you provide or by Venmo or PayPal. (If you prefer to receive your monetary payment via check, please download the claim form available at [URL] and mail your completed form to the address below. Your check will be mailed to the address you provide on that claim form.) Vouchers will be mailed to the address you provide. Please save a copy of this completed form and any Proof of Purchase(s) you submit with this completed form for your records. **For further information, visit [URL]. In order to receive a monetary payment or**

Exhibit E

**voucher, you must complete all of the information below and sign and date the form. Incomplete forms will not be processed.**

[Button: "Click Here to begin submitting your claim"]

## PAGE 1

Please provide the following information:

**Name:** _____  _____  _____
        *First Name*              *M.I.*        *Last Name*

**Street Address:** _____

**City:** _____

**State:** _____        **Zip Code:** _____ (zip4 optional)

**Phone:** (_____) _____ - _____

**Email Address:** _____ **@** _____ **.** _____

[Button: "Continue"]

## **PAGE 2**

[Placeholder for collection of one-time passcode]

**PAGE 3**

By checking a box below, I certified that I did or did not (depending on the box I checked) receive a voucher in connection with P&G's recall programs announced on November 23, 2021 (for certain aerosol antiperspirants or deodorant products) and December 17, 2021 (for certain aerosol dry shampoo or dry conditioner products):

☐ Yes, I or a member of my household already received three or more vouchers under the recall programs.  By checking this box, I certify that I purchased at least one additional P&G Aerosol Product between November 4, 2015 and December 31, 2021, for which I did not obtain a voucher from P&G under the recall programs.  I also understand that, if I already received three or more vouchers under the recall programs, I am limited to receiving a maximum of one monetary payment or one voucher under the settlement.

☐ Yes, I or a member of my household already received one or two vouchers under the recall program.  By checking this box, I understand that the number of monetary payments or vouchers I am entitled to receive under the settlement will be reduced by the number of vouchers I or someone else in my household received under the recall programs.

☐ No.  By checking this box, I certify that neither I nor a member of my household received any vouchers from P&G in connection with P&G's recall programs.

[Button: "Continue"]

## **PAGE 4**

<u>I certify that I purchased</u> the following units of P&G Aerosol Products between November 4, 2015 and December 31, 2021:

☐ Old Spice antiperspirant: ____ units          Year of purchase: _____

☐ Old Spice "Below Deck" deodorant: ____ units  Year of purchase: _____

☐ Secret antiperspirant: ____ units          Year of purchase: _____

☐ Pantene dry shampoo: ____ units          Year of purchase: _____

☐ Pantene dry conditioner: ____ units        Year of purchase: _____

☐ Waterl<ss dry shampoo: ____ units        Year of purchase: _____

☐ Waterl<ss dry conditioner: ____ units      Year of purchase: _____

☐ Aussie dry shampoo: ____ units           Year of purchase: _____

☐ Aussie dry conditioner: ____ units        Year of purchase: _____

☐ Herbal Essences dry shampoo: ____ units  Year of purchase: _____

☐ Hair Food dry shampoo: ____ units        Year of purchase: _____

☐ Old Spice dry shampoo: ____ units        Year of purchase: _____

☐ Other P&G Aerosol Product that I allege contains benzene:

     Product: _____ Units: ____ Year of purchase: _____

[Button: "Continue"]

## **PAGE 5**

If the settlement is approved, I want to receive any compensation I am owed under the settlement as follows (check one):

☐ Voucher, mailed to the address I provided above

☐ Monetary payment, which I will receive via a prepaid digital MasterCard emailed to the email address I provided above

☐ Monetary payment, which I will receive via Venmo to the following account: _____

☐ Monetary payment, which I will receive via PayPal to the following account: _____

If you prefer to receive your monetary payment via check, do not continue.  Instead, please download a paper claim form available at [URL] and mail your completed form to the address on that claim form. Your check will be mailed to the address you provide on that claim form.

[Button: "Continue"]

## **PAGE 6**

I certify under penalty of perjury under the laws of the United States that all of the foregoing is true and correct. I further understand that if it is determined that I provided any information on this form that is not true or correct, I may be ineligible for any compensation in connection with this settlement.

[Button: "Agree and Submit Claim"]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**In re: Procter & Gamble Aerosol Products**     Case No. 2:22-md-3025
**Marketing and Sales Practices Litigation**      Judge Michael H. Watson
                                                  Magistrate Judge Chelsey Vascura

**This document relates to: ALL CASES**

### [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT

This matter came before the Court for hearing on [_____], 2022, pursuant to the Court's

Preliminary Approval Order dated [_____], 2022 (Dkt. No. [__]), and on the motion ("Motion")

for final approval of the Class Action Settlement Agreement and Release, dated [_____], 2022,

entered into by the Parties (the "Settlement Agreement") (Dkt. No. [__]), as well as Settlement

Class Counsel's motion for an Attorneys' Fees and Costs Award and for a Settlement Class

Representative Service Award ("Fee Motion") (Dkt. No. [__]).

Due and adequate notice having been given to the Settlement Class Members of the

proposed Settlement and the pending motions, as directed by the Court's Preliminary Approval

Order, and upon consideration of all papers filed and proceedings had herein, and good cause

appearing, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Capitalized terms not otherwise defined herein have the meanings set forth in the

Settlement Agreement.

2.      This Court has subject matter jurisdiction over this matter pursuant to 28

U.S.C. § 1332(d), and has personal jurisdiction over the Parties and the Settlement Class Members.

Venue is proper in this District.

Exhibit F

3.      The "Settlement Class" for purposes of this Final Approval Order means:

All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021. The following individuals are excluded from the Settlement Class: officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

4.      The Court finds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this matter.

5.      The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Actions and the MDL, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires, the opportunity, the time, and the manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (c) constituted due, adequate, and sufficient notice to all persons and entities entitled to notice; and (d) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.

6.      The Court APPROVES Notice and Settlement Administration Costs in the amount of [_____], with such costs, net of any Notice and Settlement Administration Costs Advance already paid, to be paid by P&G pursuant to Section 2.4 of the Settlement Agreement.

7. The Court hereby finds that all Settlement Class Members and all persons who fall within the definition of the Settlement Class have been adequately provided with an opportunity to exclude themselves from the Settlement Class by submitting a request for exclusion in conformance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order. A list of those persons and entities who submitted timely and valid requests for exclusion is attached as Exhibit __. All persons and entities listed on Exhibit __ are not bound by this Final Approval Order and Judgment and are entitled to no relief under the Settlement. All other persons who fall within the definition of the Settlement Class are Settlement Class Members and part of the Settlement Class, and shall be bound by this Final Approval Order and corresponding Judgment and the Settlement Agreement.

8. The Court reaffirms that the Actions are properly maintained as class actions, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(3).

9. The Court finds that, for settlement purposes only, the Settlement Class, as defined above, meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Specifically, this Court finds that (1) the Settlement Class Members are sufficiently numerous such that joinder is impracticable; (2) there are questions of law and fact common to Settlement Class Members; (3) Settlement Class Representatives' claims are typical of those of the Settlement Class Members; (4) Settlement Class Representatives and Class Counsel have adequately represented, and will continue to adequately represent, the interests of the Settlement Class Members; and (5) for purposes of settlement only, the Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3). The Court further finds, for settlement purposes only, that P&G has acted or refused to act on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the class as a whole

3

under Rule 23(b)(2).

10.      The Court reaffirms its appointment of Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent as Settlement Class Representatives to represent the Settlement Class, and reaffirms its appointment of Settlement Class Counsel to represent the Settlement Class.

11.      The Court finds that the Settlement Agreement warrants final approval pursuant to Rule 23(e)(2) because the Court finds the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Settlement Class, after weighing the relevant considerations. First, the Court finds that the Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class, and will continue to do so through Settlement implementation. Second, the proposed Settlement Agreement was reached as a result of arms-length negotiations through an experienced mediator, Robert Meyer, and comes after adequate investigation of the facts and legal issues and the filing of 14 complaints and a Consolidated Amended Complaint by the Settlement Class Representatives, a daylong mediation session, and extended arm's-length negotiations thereafter. Third, the Court finds that the relief proposed to be provided for the Settlement Class is fair, reasonable, and adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class

Members' claims; and (iii) the terms of the requested Attorneys' Fees and Costs Award. Fourth, the Court finds that the Settlement Agreement treats Settlement Class Members equitably relative to each other. As set forth more fully in the Settlement Agreement, each Settlement Class Member that submitted a timely and valid Claim Form will be sent, at his or her election, either a Payment or Voucher, which will be based on the number of P&G Aerosol Products the Settlement Class Member purchased, as provided on the Settlement Class Member's submitted Claim Form.

12.     In granting final approval of the Settlement Agreement, the Court has also considered the factors that courts in this Circuit consider in evaluating proposed class settlements—which overlap considerably with the factors to be considered under Rule 23(e)(2)— including "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

13.     [*Discussion of factors, as appropriate*]

14.     The Motion is hereby GRANTED, and the Settlement Agreement and its terms are hereby found to be and APPROVED as fair, reasonable, and adequate and in the best interest of the Settlement Class. The Parties and Settlement Administrator are directed to consummate and implement the Settlement Agreement in accordance with its terms, including distributing Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, and No Proof-of-Purchase Payments to eligible Settlement Class Members, distributing the Settlement Class Representative Service Awards (discussed below), and paying the Notice and Settlement Administration Costs.

5

15.     All Actions and any other case centralized for pretrial proceedings as part of *In re Procter & Gamble Aerosol Product Marketing & Sales Practices Litigation*, No. 22-md-3025 (S.D. Ohio), including the Consolidated Amended Complaint, are hereby dismissed with prejudice and without costs to any Party, other than as specified in the Settlement Agreement, this Final Approval Order and corresponding Judgment, and any order(s) by this Court regarding Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award and a Settlement Class Representative Service Award.

16.     In consideration of the benefits provided under the Settlement Agreement, and for other good and valuable consideration set forth in the Settlement Agreement, each of the Settlement Class Members and Releasing Parties shall, by operation of this Final Approval Order and Judgment, have fully, finally, and forever released, relinquished, acquitted, and discharged all Released Claims against each of the Released Parties in accordance with Section 3.6 of the Settlement Agreement, the terms of which section are incorporated herein by reference.  The terms of the Settlement Agreement, which are incorporated by reference into this Order, shall have *res judicata* and other preclusive effects as to the Released Claims as against the Released Parties. The Released Parties may file the Settlement Agreement and/or this Order in any other litigation to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any similar defense or counterclaim.

17.     All Settlement Class Members and Releasing Parties (including any persons purporting to act on their behalf) have covenanted not to sue any Released Party with respect to any Released Claim and shall be permanently barred and enjoined from instituting, commencing, prosecuting, continuing, or asserting any Released Claim against any Released Party, directly or indirectly (including in any action purportedly brought on behalf of the general public of the United

States or of a particular state, district, or territory therein).  This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement and this Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.  Notwithstanding the foregoing, nothing in this Order and judgment shall preclude an action to enforce the terms of the Settlement Agreement.

18.     Pursuant to the terms of the Settlement Agreement, Settlement Class Representatives, Settlement Class Counsel, P&G, and P&G's Counsel have, and shall be deemed to have, released each other from any and all Claims relating in any way to any Party or counsel's conduct in the Actions, including but not limited to any Claims of abuse of process, malicious prosecution, or any other claims arising out of the institution, prosecution, assertion, or resolution of the Actions, including Claims for attorneys' fees, costs of suit, or sanctions of any kind except as otherwise expressly set forth in Section 3.6(d) of the Settlement Agreement.

19.     This Final Approval Order and corresponding Judgment is the final, appealable judgment in the MDL as to all Released Claims.  The time to appeal from this Final Approval Order and Judgment shall commence upon its entry.

20.     Without affecting the finality of this Final Approval Order and Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement Agreement and the terms of the Settlement Agreement; (b) Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award and a Settlement Class Representative Service Award; (c) distribution of the vouchers and settlement payments, Settlement Class Counsel's Attorneys' Fees and Costs Award, and any Settlement Class Representative Service Award; and (d) all other proceedings arising out of or related to the implementation, interpretation, validity, administration, consummation, and enforcement of the terms of the Settlement Agreement, including enforcement of the Releases

provided for in the Settlement Agreement.

21.     In the event that the Effective Date does not occur, this Final Approval Order and Judgment shall be rendered null and void and shall be vacated, nunc pro tunc, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of Settlement Class Representatives, Settlement Class Members, and P&G.

22.     This Final Approval Order and Judgment, the Preliminary Approval Order, the Settlement Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements shall not constitute, be described as, construed as, offered or received against P&G or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by Settlement Class Representatives in the Actions; (b) any liability, negligence, fault, or wrongdoing of P&G or the Released Parties; or (c) that these Actions or any other action may be properly certified as a class action for litigation, non-settlement purposes.

23.     The Fee Motion is also hereby GRANTED. The Court APPROVES: (a) payment of Settlement Class Counsel's Attorneys' Fees and Costs Award in the total amount of $[_____] (consisting of $[_____] in attorneys' fees, plus $[_____] in reimbursement of litigation expenses); and (b) payment of service awards in the amount of $[_____] each to Settlement Class Representatives Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, James Dethrow, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent to compensate them

for their commitment and effort on behalf of the Settlement Class pursuant to Section 3.3 of the Settlement Agreement.

24.     The Court finds that the fees and litigation expenses requested by Settlement Class Counsel are reasonable and appropriate under applicable standards and justified by the circumstances of this case.

25.     [*Discussion of factors, as appropriate*]

26.     With respect to the requested Settlement Class Representative Service Awards for Settlement Class Representatives, the Court finds that such awards are appropriate, and that the amount requested is within the range regularly awarded by Sixth Circuit courts and justified by the circumstances in this case.  *See Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *9 (S.D. Ohio Jan. 19, 2022).

27.     The Court also notes that [__] Settlement Class Member[s] objected to the Settlement or to the requested Attorneys' Fees and Costs Award or Settlement Class Representative Service Awards—the requested amounts of which were included in the class notice.

28.     [*Discussion of objections, as necessary.*]

29.     Pursuant to Rule 54, the Court finds that there is no just reason for delay and expressly directs this Final Approval Order and Judgment and immediate entry by the Clerk of the Court.


**IT IS SO ORDERED.**

DATED: _____.


_____
Michael H. Watson

9

United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**In re: Procter & Gamble Aerosol Products**      Case No. 2:22-md-3025
**Marketing and Sales Practices Litigation**        Judge Michael H. Watson
                                                     Magistrate Judge Chelsey Vascura

**This document relates to: ALL CASES**

**[PROPOSED] JUDGMENT**

This matter came before the Court for hearing on [_____], 2022, pursuant to the Court's

Preliminary Approval Order dated [_____], 2022 (Dkt. No. [__]), and on the motion ("Motion")

for final approval of the Class Action Settlement Agreement and Release, dated [_____], 2022,

entered into by the Parties (the "Settlement Agreement") (Dkt. No. [__]), as well as Settlement

Class Counsel's motion for an Attorneys' Fees and Costs Award and for a Settlement Class

Representative Service Award ("Fee Motion") (Dkt. No. [__]).

For the reasons set forth in the accompanying Final Approval Order, **IT IS HEREBY**

**ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Settlement Class Representatives' motion for final approval of the Class Action

Settlement Agreement and Release, dated [_____], 2022, entered into by the Parties (the

"Settlement Agreement"), is hereby GRANTED.  The parties are ORDERED to comply with the

terms of the Settlement Agreement.

2.      Settlement Class Representatives' Fee Motion is hereby GRANTED.  Pursuant to

Section 3.4 of the Settlement Agreement, P&G shall pay Settlement Class Counsel an Attorneys'

Fees and Costs Award in the amount of $_____.  Pursuant to Section 3.3 of the Settlement

Exhibit G

Agreement, P&G shall pay Settlement Class Representatives a Settlement Class Representative Service Award, each in the amount of $_____.

       3.     All Actions and any other case centralized for pretrial proceedings as part of *In re Procter & Gamble Aerosol Product Marketing & Sales Practices Litigation*, No. 22-md-3025 (S.D. Ohio), are hereby DISMISSED WITH PREJUDICE.

       4.     Without affecting the finality of this Final Approval Order and Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement Agreement and the terms of the Settlement Agreement; (b) Settlement Class Counsel's motion for an Attorneys' Fees and Costs Award and a Settlement Class Representative Service Award; (c) distribution of the vouchers and settlement payments, Settlement Class Counsel's Attorneys' Fees and Costs Award, and any Settlement Class Representative Service Award; and (d) all other proceedings arising out of or related to the implementation, interpretation, validity, administration, consummation, and enforcement of the terms of the Settlement Agreement, including enforcement of the Releases provided for in the Settlement Agreement.

       5.     This is a final and appealable judgment.

**IT IS SO ORDERED.**

DATED: _____.

                                    _____
                                    Michael H. Watson
                                    United States District Judge