# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

In re: Procter & Gamble Aerosol
Products Marketing and Sales
Practices Litigation

This document relates to: ALL
CASES

Case No. 2:22-md-3025

Judge Michael H. Watson

Magistrate Judge Vascura

## <u>PRELIMINARY APPROVAL ORDER</u>

Twenty-eight individually filed cases have been consolidated into this
multidistrict litigation ("MDL") against The Procter & Gamble Company ("P&G").
This litigation stems from the alleged contamination of certain P&G Aerosol
Products with benzene, a known human carcinogen. All currently filed cases
allege solely economic loss.

After engaging in limited discovery and mediation before a neutral
mediator, a group of at least thirty-four plaintiffs[1] from fifteen of the twenty-eight
lawsuits ("Settling Plaintiffs") reached a proposed class-wide settlement with
P&G ("Settlement Agreement"). Settling Plaintiffs move for preliminary approval
of the Settlement and direction of notice to Class Members. Mot. Approve, ECF

---

[1] Settling Plaintiffs are: Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey
Labella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles,
Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, Gregory Pickens,
Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrell Stewart, Beth
Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank
Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri
Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, and Sondra Trent.

No. 23. P&G also urges the Court to grant preliminary approval. Resp., ECF No. 38. Several other plaintiffs ("Nonsettling Plaintiffs"), however, oppose the settlement and urge the Court not to grant preliminary approval. Resp., ECF Nos. 32 (redacted), 33 & 34 (unredacted). The issue is fully briefed.

Approval of class action settlements "usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Manual for Complex Litigation*, Fourth, § 13.14. Then, after notice and a hearing on the fairness of the settlement, the judge makes a final decision regarding approval. *Id.*

Again, at issue now is preliminary approval. According to Federal Rule of Civil Procedure 23(e)(1), the court "must" preliminarily approve the Settlement and direct notice to Class Members if the parties demonstrate that: (1) the Court will likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2) and (2) certify the class for purposes of judgment. The Court thus considers at this stage the requirements of Rule 23(a), Rule 23(b), Rule 23(c)(2)(B), Rule 23(e)(2), and the factors established in this Circuit for granting final approval of a class action settlement. Although the Court must not "rubber stamp" a proposed settlement, it applies a less strict standard at the preliminary approval stage than is required for final approval because the Court considers only whether the Settlement will "likely" satisfy the above requirements. *E.g.*, *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-cv-439, 2022 WL 1240432, at

*2 (W.D. Ky. April 27, 2022); Fed. R. Civ. P. 23(e)(1). Generally, "the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion" and whether the terms fall within the range of reasonableness. *Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001) (citation omitted); *Waters v. Pizza to You, LLC*, 3:19-cv-372, 2022 WL 404614, at *2 (S.D. Ohio Feb. 9, 2022) (citation omitted). The Settlement easily satisfies this standard.

The basic terms of the Settlement are as follows: Class Members would include persons who could not recover should the case proceed with litigation because the proposed definition of the Settlement Class includes persons who purchased Aerosol Products that were not actually contaminated with benzene. *See* Settlement Agmt. § 1.41, ECF No. 23-1 at PAGEID # 169. Class Members may choose to receive either a voucher (for values ranging from $5–$10) or a cash payment (of $3.50).[2] Settlement Agmt. §§ 1.32, 1.33, 3.2, ECF No. 23-1 at PAGEID ## 168, 173–75. There is no limit to the amount of cash or vouchers P&G will provide to Class Members who demonstrate proof of purchase, and there is no limit to the number of claims a Class Member may submit with proof of purchase. Settlement Agmt. § 3.2(a), ECF No. 23-1 at PAGEID # 173. P&G will pay up to $8,000,000 in cash payments or vouchers for Class Members who submit a claim without proof of purchase, and Class Members are limited to three

---

[2] Settling Class Counsel states that $3.50 represents 70% of the average manufacturer's suggested retail price. Mot. Approve 11, ECF No. 23.

no-proof-of-purchase cash payments/vouchers per household.  Settlement Agmt.
§§ 1.16, 1.17, 3.2(b), ECF No. 23-1 at PAGEID ## 166, 173–74.  Class Members
who already recovered through P&G's voluntary recall program will have their
claims offset by their prior recovery, as explained in more detail below.
Settlement Agmt. § 3.2(c), ECF No. 23-1 at PAGEID ## 174–75.  Additionally,
P&G agrees to injunctive relief that includes: specifying that sourced isobutane
raw material may not contain more than 1 ppm[3] benzene; requiring its raw
material suppliers and contract manufacturers of isobutane raw material to
therefore test for the presence of benzene in its materials and withhold batches
containing more than 1 ppm; and requiring P&G to test its finished product and
withhold batches that contain more than 1 ppm.  Settlement Agmt. § 3.5, ECF
No. 23-1 at PAGEID ## 176–78.  The different provisions of injunctive relief last
for varying time periods, up to two years from execution of the Settlement
Agreement.  *Id*.

The Court has read and considered the Settlement Agreement, the
exhibits thereto, and the parties' arguments in support of and against granting
preliminary approval of the Settlement Agreement.  Having considered all of the
above, the Court finds there is sufficient basis for: (1) granting preliminary
approval of the Settlement; (2) certifying the proposed Settlement Class for
settlement purposes pursuant to Federal Rule of Civil Procedure 23(b)(3) and

---

[3] Part per million.

23(b)(2); (3) appointing class counsel for the Settlement Class ("Settlement Class Counsel") pursuant to Rule 23(g); (4) appointing Settling Plaintiffs as Settlement Class Representatives; (5) appointing Kroll, Inc. as Settlement Administrator; (6) directing that the Settlement Class be notified of the proposed Settlement in the form and manner proposed by Settling Plaintiffs; and (7) setting a schedule for final settlement approval.

The Court now **GRANTS** the motion for preliminary approval and makes the following findings and orders:

1. Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement.

2. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) and has personal jurisdiction over the Parties and the Settlement Class Members. Venue is proper in this District.

3. The Court hereby provisionally certifies, for settlement purposes only, a "Settlement Class," pursuant to Rules 23(b)(2) and 23(b)(3), consisting of

> All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015, and ending December 31, 2021.

Excluded from the Settlement Class are: officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of

the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

4. Certification of the Settlement Class shall be solely for settlement purposes and without prejudice to the parties in the event the Settlement Agreement is not finally approved by this Court or otherwise does not take effect, and the Parties preserve all rights and defenses regarding class certification in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

5. The Court provisionally appoints the Settling Plaintiffs as Settlement Class Representatives to represent the Settlement Class.

6. The Court provisionally appoints the following lawyers at the following firms as Settlement Class Counsel for the Settlement Class: Gary Klinger at Milberg Coleman Bryson Phillips Grossman; Kevin Laukaitis at Shub Law Firm; Steven Bloch at Silver Golub & Teitell LLP; Mark S. Reich at Levi & Korsinsky, LLP; Richard S. Wayne at Strauss Troy Co., LPA; Rick Paul at Paul LLP; Paul Doolittle at Poulin Willey Anastopoulo, LLC; Bryan Aylstock at Aylstock, Witkin, Kreis & Overholtz PLLC; Jonathan Jagher at Freed Kanner London & Millen LLC; Michael Reese at Reese LLP; Terence R. Coates at Markovits, Stock & Demarco, LLC; and Noah M. Schubert at Schubert Jonckheer & Kolbe LLP.

7. For settlement purposes only, the Court finds that the Settlement Class meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2), (3).

Specifically, the Court finds that joinder of all members of the Settlement Class in a single proceeding would be impractical because of their numbers and dispersion—the Settlement Class encompasses "thousands of consumers across the country[.]" Mot. Approve 19, ECF No. 23. Thus, the Settlement Class Members are sufficiently numerous such that joinder is impracticable. Moreover, common issues exist among Settlement Class Members. In particular, each Settlement Class Member's claims depend on whether, inter alia, the P&G Aerosol Product(s) that Settlement Class Member purchased contained benzene; whether P&G knew or should have known as much; and whether P&G unlawfully failed to disclose the presence of benzene in the Aerosol Products. *See also* Mot. Approve 19–20, ECF No. 23. Commonality is thus satisfied. Additionally, Settlement Class Representatives' claims are typical of those of the Settlement Class because Settlement Class Representatives, like all members of the Settlement Class, purchased P&G Aerosol Products that were allegedly contaminated with benzene but were not labelled as such. Settlement Class Representatives' legal theories against P&G largely mirror the theories asserted against P&G by the other MDL plaintiffs. Notably, Settlement Class Representatives and Settlement Class Members suffered the same injury: economic loss. The Settlement Agreement does not release claims for personal injury. Settlement Agmt. § 1.36, ECF No. 23-1. Finally, Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class. Settlement Class Representatives'

interests are not antagonistic to those of the Settlement Class, and Settlement Class Counsel is experienced and competent to prosecute this matter on behalf of the Settlement Class.

For settlement purposes only, the Court finds that the Settlement Class may be certified under Rule 23(b)(3) because the questions of fact and law common to all Settlement Class Members predominate over any questions affecting only individual members, and a class action is the superior method of adjudication here. Specifically, the issues regarding whether benzene was present in the Aerosol Products and, if so, whether P&G knew or should have known of that fact, or whether P&G mislabeled the Aerosol Products will be common to all Settlement Class Members. As Settling Plaintiffs argue, "[i]n other words, the evidence Plaintiffs would offer to establish liability would be the same evidence that every member of the proposed Settlement Class would also have to offer at their own individual trials." Mot. Approve 23, ECF No. 23. Moreover, the class action is superior here where individual plaintiffs have suffered minor economic loss and therefore possess little interest in individually controlling the prosecution or defense of separate actions. Indeed, the desirability of concentrating litigation in one forum has already been demonstrated through the Judicial Panel's consolidation of various cases into this MDL. Although litigation has barely begun, P&G has shared significant discovery with Settlement Class Counsel as well as counsel for the MDL plaintiffs who have not formally joined in support of the settlement (including Nonsettling Plaintiffs'

counsel). Klinger Aff. ¶¶ 4, 9–10, ECF No. 23-2 ("Defendant's production included information regarding P&G's notice of benzene contamination; communications between P&G and its affiliates concerning benzene contamination; information regarding studies and analysis performed by P&G with respect to the benzene contamination; P&G's communications with the FDA regarding the contamination; information about P&G's Aerosol manufacturers and raw material suppliers; and information on P&G's refund program . . . ."). Because the cases of all MDL plaintiffs who have not yet joined in support of the settlement are in their infancy, but counsel for each filed case has been provided the same discovery as Settlement Class Counsel, judicial economy will be served by certifying a class. The "extent and nature" of litigation "already begun" by class members thus weighs in favor of certifying the Settlement Class and permitting those plaintiffs who wish to opt out the chance to do so and pursue their own claims. Finally, the Court need not consider the likely difficulty in managing the class action. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The Court further finds, for settlement purposes only, that P&G has acted or refused to act on grounds that apply generally to the Settlement Class, so that

final injunctive relief is appropriate respecting the class as a whole under Rule 23(b)(2).

Notably, Nonsettling Plaintiffs—who asserted claims on behalf of a similarly defined class—do not argue that the requirements of Rule 23(a) or 23(b) are lacking.[4]  *See*, Compl. ¶ 41, ECF No. 1 (Case No. 2:22-cv-1930); Resp., ECF No. 32 (Case No. 2:22-md-3025).  Rather, their opposition is limited to the fairness of the terms of the settlement, which is addressed below.

8. The Court preliminarily approves the Settlement Agreement and the terms embodied therein pursuant to Rule 23(e)(1).  The Court finds that it will likely be able to approve the Settlement Agreement under Rule 23(e)(2) and to certify the Settlement Class for purposes of judgment on the proposed Settlement.  The Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate as to the Settlement Class Members under the relevant considerations.

Namely, the Court finds that proposed Settlement Class Representatives and proposed Settlement Class Counsel have adequately represented, and will continue to adequately represent, the Settlement Class.  This is evident in the briefs Settlement Class Counsel filed in support of the motion for preliminary approval as well as the assertions of counsel's competency made by the mediator, Robert Meyer ("Meyer" or "mediator").  *E.g.*, Meyer Decl. ¶ 13, ECF No.

---

[4] In fact, twenty of the twenty-eight cases in this MDL were initiated as class actions.

38-1 (At all times I found counsel to be engaged, motivated, and knowledgeable about the case.  Counsel zealously and professionally advocated for their clients' positions . . . .").

As discussed more fully below in response to Nonsettling Plaintiffs' opposition, the Court further finds that the Settlement Agreement is the product of arm's length negotiations through a neutral, experienced mediator and comes after adequate investigation of the facts and legal issues, the filing of fourteen complaints by proposed Settlement Class Representatives, a day-long mediation session, and extended arm's-length negotiations thereafter.

The Court preliminarily finds that the relief provided to the Settlement Class is adequate taking into account, *inter alia*, the costs, risks, and delay of trial and appeal and the proposed method of distributing compensation to the Settlement Class.  As explained above and set forth more fully in the Settlement Agreement, Settlement Class Members that submit a timely and valid Claim Form will be sent Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, or No Proof-of-Purchase Payments, the number of which will be based on the number of P&G Aerosol Products the Settlement Class Member purchased, as provided on the Settlement Class Member's submitted Claim Form and consistent with the terms of the Settlement Agreement.  The cash payments represent approximately 70% of the manufacturer's suggested retail price, and the vouchers represent an even higher value relative to alleged loss of purchase price per product—which is the

primary loss alleged. This is a significant recovery given the low maximum recovery each plaintiff would win even after success at trial. It is all the more reasonable when one takes into account the obstacles plaintiffs could face in attempting to certify a class for litigation purposes or to establish P&G's knowledge. Further, early settlement ensures immediate relief to Class Members and obviates a lengthy, expensive process for both sides that would undoubtedly cause accrual of exorbitant attorneys' fees.

The Court further finds that the Settlement Agreement treats the Settlement Class Members equitably relative to one another. It is equitable to have no limit for those Class Members who can prove their factual entitlement to a voucher or coupon, and it is equitable to prevent fraud by capping the amount of payment made to Class Members who cannot submit proof of purchase. The Parties' proposal for reducing no-proof-of-purchase payments in excess of the cap on a pro rata basis is fair and treats Class Members equitably.

The Court will fully assess any request for attorneys' fees or service awards after receiving a motion from proposed Settlement Class Representatives and Settlement Class Counsel supporting such request. The motion shall address the supportability of any requested fees under 28 U.S.C. § 1712. At this stage, the Court finds that the plan to request these awards creates no reason not to direct notice to the Settlement Class, especially because any motion for any such award must be filed before the deadline to object or opt-out of the Settlement and because those awards were negotiated separately after reaching

agreement on the primary terms of the Settlement and were themselves the subject of a mediator's proposal.

Although the arguments made by Nonsettling Plaintiffs would be better raised as objections to the Settlement, the Court addresses herein their principal arguments in opposition to preliminary approval.

Nonsettling Plaintiffs' primary assertion is that the proposal was not negotiated at arm's length, which is a consideration under Rule 23(e)(2)(B). They argue Settlement Class Counsel engaged in a "reverse auction" with P&G to avoid consolidation of the Actions in Florida out of a fear that Settlement Class Counsel would be excluded from the leadership structure if the Actions were consolidated in Florida.  Resp. 1, 6–11, ECF No. 32.  Out of "self-interest," Settlement Class Counsel purportedly engaged in a "fire sale early settlement" in order to eek out whatever attorneys' fees they could (the alternative being, they supposedly believed, a recovery of *no* attorneys' fees if the cases were sent to Florida).  *Id.* at 7, 9.

Nonsettling Plaintiffs' allegation of collusion rests entirely on supposition— hence their use of modifiers such as "presumably," "likely," and "purportedly" in relation to Settlement Class Counsel's actions and motives.  But the Court is satisfied no collusion occurred here.  The Settlement was reached only after engaging in mediation with a neutral JAMS mediator who specializes in complex business litigation.  Meyer Decl. ¶ 2, ECF No. 38-1.  Even then, the Parties reached an impasse after a full-day mediation.  *Id.* ¶ 8.  The mediator then

assisted the Parties in "engag[ing] in vigorous, arm's lengths negotiations" over the following weeks, but they *again* appeared to be at an impasse. *Id.* ¶ 9. It was only after the mediator, "[i]n an effort to break the impasse," made a mediator's proposal that the Parties reached agreement. *Id.* ¶ 10. The Court credits the mediator's statement that, from his perspective, "this settlement resulted from a robust, adversarial arm's length negotiation process between experienced, knowledgable, and capable counsel who fully understood the strengths and weaknesses of their positions" and his assurance that "[t]here was no collusion whatsoever in reaching the terms of the settlement, nor any 'reverse auction.'" *Id.* ¶¶ 12, 14. Indeed, the Court is hard-pressed to conclude that a resolution conceived as a mediator's proposal could be deemed collusive. Accordingly, the Court rejects this argument as a basis for not approving the Settlement at this preliminary stage and finds, pursuant to Rule 23(e)(2)(B), the proposal was likely negotiated at arm's length.

Nonsettling Plaintiffs next seem to argue that the Settlement is not fair, reasonable, and adequate because it does not provide adequate relief, taking into account the risks of going to trial. This falls under the consideration in Rule 23(e)(2)(c)(i). Their argument rests on P&G's legal culpability for the presence of benzene in the Aerosol Products.

P&G's knowledge of the presence of benzene is a key issue in these cases. To that end, Nonsettling Plaintiffs make much of an October 21, 2021, letter from Voyant Beauty, LLC, one of P&G's manufacturers, to a P&G

employee. Resp. 3–4, ECF No. 32 (citing Ex. 1 at PAGEID ## 533). Nonsettling Plaintiffs seem to argue that this letter is a "smoking gun" that proves P&G's knowledge and, therefore, demonstrates that Settling Plaintiffs could have secured a much more favorable settlement. In other words, Nonsettling Plaintiffs suggest the value of the settlement is inadequate given the strength of the Class's evidence regarding P&G's knowledge.

To the contrary, the October 2021 letter is hardly the damning evidence Nonsettling Plaintiffs claim it to be. Nowhere does the letter inform P&G that any of the products Voyant manufactured for P&G contained benzene or even that one of Voyant's vendors had been supplying benzene-contaminated hydrocarbon propellant. Resp. Ex. 1, ECF No. 32 at PAGEID # 533. The letter thus does not undermine the fairness of the proposed Settlement.

In addition, the mediator—based on forty years of experience practicing complex business litigation, professional liability, and class actions—has averred that "both sides possessed strong arguments and . . . neither side was assured of a victory should the case be litigated through class certification and to final judgment." Meyer Decl. ¶ 7, ECF No. 38-1. Noting Defendant's "potential defenses"[5] and the "risks of trial and appeal that could have also caused the case

---

[5] This includes the arguments raised in P&G's confidential mediation brief, ECF No. 33 at PAGEID ## 635–48, many of which very well may have merit and could pose hurdles to continued litigation by plaintiffs.

to drag on for years," *id.* ¶ 14–15, the Court agrees that the class-wide relief under the Settlement is adequate after considering Rule 23(e)(2)(c)(i).

Nonsettling Plaintiffs also argue that the Settlement is not fair, reasonable, and adequate because it: (1) permits a standard for the presence of benzene in P&G products that is more lenient than the FDA's guidance; (2) divests federal and state governments of their enforcement authority over contaminated products; (3) provides less favorable benefits than were provided under P&G's voluntary recall program; (4) releases claims of consumers who participated in the recall program even though those consumers cannot recover under the Settlement; and (5) releases claims that fall beyond the scope of the claims contained in the underlying Actions. Resp. 2, ECF No. 32.

None of these arguments warrant denying preliminary approval. First, the injunctive relief provided for in the Settlement is not "illusory" or more lenient than current requirements, as Nonsettling Plaintiffs claim. Resp. 13, ECF No. 32. Namely, the Settlement requires P&G to require suppliers of isobutane raw material that will be used in Aerosol Products to assure that the material will not contain more than 1 ppm benzene. Settlement Agmt. § 3.5(b)(i), ECF No. 23-1 at PAGEID # 177. The Settlement will require P&G's contracted manufacturers, as well as suppliers, to test for compliance with this requirement. Settlement Agmt. § 3.5(b)(ii), (iii). P&G will also have to test batches of Aerosol Products for the presence of benzene prior to releasing them for sale. Settlement Agmt. § 3.5(c).

Nonsettling Plaintiffs' citation to the FDA Q3 Guidance is inapposite. First, the recommendations contained therein are nonbinding. FDA Q3 Guidance at I ("[G]uidances describe the Agency's current thinking on a topic and should be viewed only as recommendations . . . . The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required."). Thus, the relief provided for in the Settlement is not illusory because it is not *required* under the guidance. Moreover, as it relates to accidental contamination, as of 2022, the FDA suggested that manufacturers not release drugs containing benzene above 2 ppm. *FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*, U.S. Food & Drug Admin. (last updated June 9, 2022), https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs?utm_medium=email&utm_source=govdelivery; *Frequently Asked Questions on Benzene Contamination in Drugs*, U.S. Food & Drug Admin. (last updated June 9, 2022), https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs. The Settlement thus provides for more restrictive procedures than even the current FDA guidance, which is nonbinding. Additionally, Nonsettling Plaintiffs' conclusory assertion that the Settlement Agreement's testing requirements "lack any value," Resp. 15, ECF No. 32, is simply disingenuous.

Moreover, Nonsettling Plaintiffs argue that the value of the Settlement is not fair, reasonable, or adequate because it provides for less monetary relief than

Class Members could have received under P&G's voluntary recall program. Resp. 15–17, ECF No. 32. But that is not the test. There is no requirement that a defendant, who takes voluntary remedial measures to compensate purchasers for an alleged loss of purchase price, must then *exceed* that voluntary effort in order to settle a lawsuit. If that were the case, defendants would be loath to institute voluntary remedial measures for fear that they would establish a floor for future settlement negotiations. Rather, the Court simply considers whether the voucher/cash payment relief provided for in the Settlement Agreement is fair, reasonable, and adequate for the claims that would be released. The value of the vouchers offered under the Settlement seems to match the value of the vouchers offered under the voluntary recall program; it is the maximum limit of vouchers that can be received that differs, as well as the value of cash reimbursement. *Compare* Settlement Agmt. §§ 1.16, 1.17, 1.32, 1.33, 3.2(b)(i), ECF No. 23-1 at PAGEID ## 166, 168, 174 *with* Resp. Exs. 3–5, ECF No. 33 at PAGEID ## 638–39, 650–54. The value of the Settlement is likely fair, reasonable, and adequate, and, therefore, preliminary approval is appropriate.[6]

Next, the release of claims contained in the Settlement Agreement is not overbroad and does not exceed the factual predicate of the Actions. *See* Resp. 17–19, ECF No. 32. The Released Claims are, first, tied to the definition of

---

[6] The "Benefits of Settlement" chart attached to Settling Plaintiffs' Reply brief, ECF No. 39-4, further demonstrates the benefits of Settlement notwithstanding the prior voluntary recall program.

Claims contained in § 1.4, which, in turn, specifically recites the causes of action contained in the Actions. Second, each of the sub-parts (a)—(d) within the definition of "Released Claims" limit such Released Claims to either: (1) "the purchase or use of any of the P&G Aerosol Products," (2) violations of law "cited in the complaints in the Actions or in any case included in the MDL;" (3) or claims that were or could have been raised in the complaints in the Actions or MDL based on "the scope of the facts asserted" therein. Settlement Agmt. § 1.36. The final provision, while broader, must still "relate[] to or arise[] out of [the above enumerated] events[.]" *Id*. § 1.36. Thus, all of the Released Claims are tied directly to the Aerosol Products, laws already alleged to have been violated, misrepresentations already alleged to have been made, or claims that already could have been raised based on the facts alleged in the various complaints. Importantly, moreover, the Settlement Agreement explicitly *excludes* claims for personal injury. *Id*. The Released Claims are thus sufficiently related to the factual predicate involved in the Actions. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a factual predicate with the claims pled in the complaint." (internal quotation marks and citation omitted)).

The Settlement Agreement is similarly not overbroad because certain Class Members who recovered under the voluntary recall may not receive additional coupons or cash value under the Settlement. *See* Resp. 19–20, ECF

No. 32.  The Settlement does *not* prohibit Class Members who already recovered under the recall program from receiving additional economic relief; rather, it offsets any such economic relief by relief already obtained through the recall program.  Settlement Agmt. § 3.2(c)(ii).  And it contains a provision whereby Class Members who have received three or more vouchers can still recover an additional no-proof-of-purchase payment or voucher by certifying under penalty of perjury that they purchased additional products for which they were not compensated under the recall program.  Settlement Agmt. § 3.2(c)(iii).  Additional proof-of-purchase recovery is unlimited.  Settlement Agmt. § 3.2(a)(i), (ii), 3.2(c)(iii).[7]  There is nothing wrong with requiring an offset or limiting additional non-proof-of-purchase recovery; settlement is not meant to be a windfall to plaintiffs, and if they have already been made whole via another mechanism, it is not unfair to prevent additional recovery through settlement.  Ultimately, if there are Class Members who would receive no additional economic benefit under the Settlement, they may opt out of the Settlement.  At that point, they will still enjoy the benefits of the injunctive relief provided for in the Settlement, but they will not release any claims they may have for additional monetary relief.  *See* Settlement Agmt. § 1.38 (defining Releasing Parties so as to exclude opt-outs); § 3.6(a).

---

[7] It appears, however, that the reference to § 3.2(c)(i) within § 3.2(c)(iii) may be an incorrect holdover from a prior version of the document because § 3.2(c)(i) does not set out a provision that applies to Class Members; it sets out the deadline for P&G to provide information to Kroll.  Settlement Class Counsel shall confirm that cross-references within the Settlement Agreement are up-to-date and reflect the current cross-referenced sections.

Finally, the Settlement Agreement does not divest the FDA from enforcing the FDCA or its regulations. *See* Resp. 20, ECF No. 32. As P&G notes, the FDA is not a Class Member as that phrase is defined in the Settlement Agreement, and it would not be bringing enforcement actions on behalf of Class Members. *See* 21 U.S.C. § 337(a).

Thus, none of the arguments raised by Nonsettling Plaintiffs warrant denying preliminary approval.[8] And the Court notes the Settlement seems particularly fair given the significant hurdles plaintiffs could face in attempting to litigate their claims on a class-wide basis. *See, e.g.*, P&G Resp. 6–8, ECF No. 38 (discussing its defenses to continued class-wide litigation). For these and the other reasons addressed herein, the Court concludes it will likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2).

After considering the enumerated Rule 23(e)(2) factors, many courts in this Circuit also consider whether a settlement will likely satisfy the seven factors established by the Sixth Circuit for assessing the fairness, reasonableness, and adequacy of a class action settlement. *See, e.g.*, *Platinum Restaurants Mid-Am.*

---

[8] To the extent Nonsettling Plaintiffs argue separately in their response or reply that the Court *must* appoint leadership counsel—either under the Federal Rules of Civil Procedure or as part of the MDL process—before approving a settlement, the Court rejects that argument out of hand. It is also not lost on the Court that Nonsettling Plaintiffs' position essentially guarantees their placement in any proposed leadership structure. Indeed, their entire request to pause the settlement process until "leadership counsel" can review the Settlement and attempt to negotiate modifications would be useless should the Court appoint a Settlement Class Counsel attorney as lead counsel; the proposal has teeth only if Nonsettling Plaintiffs' counsel (or counsel who has taken no position on the settlement thus far) is appointed lead counsel.

*LLC*, 2022 WL 1240432, at *2 ("The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement . . . .  This Court thus considers both the Rule 23(e) factors and the factors set forth by the Sixth Circuit (citation omitted)).  The Sixth Circuit factors are: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of continued litigation; (3) the extent of discovery the parties have engaged in; (4) the likelihood of plaintiffs succeeding on the merits; (5) Settlement Class Counsels' and Settlement Class Representatives' opinions; (6) the reaction from absent class members; and (7) the public interest.  *Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (citation omitted).

The factors overlap to a large extent, and the Court has already considered and discussed the first four factors.

Settlement Class Counsel's and Settlement Class Representatives' opinions weigh in favor of granting preliminary approval.   *See* Klinger Decl. ¶ 2, ECF No. 23-2 ("I believe the proposed Settlement is fair, reasonable, and adequate for the Settlement Class.").

The Court will not know the reaction of absent class members until after notice and the opportunity to object and will take those reactions under advisement at the final approval stage.

Finally, the public has a strong interest in the injunctive relief portions of the Settlement, and the public interest favors preliminarily approving the

settlement. *See Déjà vu Servs., Inc.*, 925 F.3d at 899 ("Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." (internal quotation marks and citation omitted)). Thus, the Court finds the Settlement will likely pass muster under the seven factors traditionally considered in this Circuit.

9. The Court provisionally appoints Kroll, Inc. ("Kroll") as Settlement Administrator and directs Kroll to carry out all duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement and herein.

## NOTICE PROGRAM

10. Pursuant to Rule 23(e)(1) and Rules 23(c)(2)(A) and 23(c)(2)(B), the Court approves the proposed Notice program set forth at Section 4.2 of the Settlement Agreement, including the form and content of the proposed forms of class notice attached as Exhibits B and C to the Settlement Agreement. The Court finds that the proposed Notice program meets the requirements of due process under the U.S. Constitution and Rule 23; and that such Notice program, which includes the establishment of a Settlement Website, the establishment of a toll-free telephone helpline, online display advertising, advertising on search engines and social media, and publication of notice of the proposed Settlement over a news line for direct distribution into newsrooms, is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

The Court further finds that the proposed form and content of the Notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt out, and the proposed Settlement and its terms. The Court finds that the Notice clearly and concisely states in plain, easily understood language, inter alia: (i) the nature of the Actions and the MDL; (ii) the definition of the Settlement Class; (iii) the class claims and issues; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Settlement Class Member must submit a timely claim via a valid Claim Form to be eligible to receive compensation under the Settlement; (vi) the time and manner for submitting a Claim Form; (vii) that the Court will exclude from the Settlement Class any member who timely and validly requests exclusion; (viii) the time and manner for requesting exclusion; and (ix) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3). See Notice; ECF No. 23-1 at PAGEID ## 210–20. The Parties may make non-material changes to the proposed Notice program, including the form and content of the Notice, without seeking further approval of the Court.

11. The Court directs the Settlement Administrator and the Parties to implement the Notice program as set forth in the Settlement Agreement. As soon as practicable, and no later than thirty days after entry of this Preliminary Approval Order, the Settlement Administrator shall do the following:

a. Settlement Website: The Settlement Administrator shall establish a Settlement Website hosted at www.aerosolspraysettlement.com (or another URL agreed-upon by the Parties) that is dedicated to the Settlement. The Settlement Website shall contain the Long Form Notice (in substantially the same form attached as Exhibit B to the Settlement Agreement), in both downloadable PDF format and HTML format; a Contact Information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Settlement Class Counsel; the telephone helpline number; the Settlement Agreement; this Order; a downloadable and online version of the Claim Form; and all other material filings by the Parties or the Court regarding the Settlement, including Settlement Class Counsel's application for an Attorneys' Fees and Costs Award and/or Settlement Class Representative Service Awards, the motion for final approval of the Settlement, and any orders with respect to such applications and motions. The Settlement Website shall remain accessible until at least 120 days after all Proof-of-Purchase Vouchers, Proof-of-Purchase Payments, No Proof-of-Purchase Vouchers, and No Proof-of-Purchase Payments to eligible Settlement Class Members have been distributed.

b. Toll-free telephone helpline: The Settlement Administrator shall establish a toll-free telephone helpline, which shall be posted on the Settlement Website, and to which Settlement Class Members may refer for information about the MDL and the Settlement Agreement. The toll-free helpline shall remain active until at least ninety days after all Proof-of- Purchase Vouchers, Proof-of-

Purchase Payments, No Proof-of-Purchase Vouchers, and No Proof-of-Purchase Payments to eligible Settlement Class Members have been distributed.

    c.  Online Notice: The Settlement Administrator shall cause the Online Notice to be published on internet sites, including search engines and social media, through an appropriate programmatic network.

    d.  Publication Notice: The Settlement Administrator shall cause the Publication Notice to be distributed over a newsline for direct distribution into newsrooms.

    12.  Within thirty days after entry of this Preliminary Approval Order, P&G shall pay the Notice and Settlement Administration Costs Advance to the Settlement Administrator in the amount of $196,500.00.

    13.  By no later than sixty-three days before the Final Approval Hearing, the Settlement Administrator shall file (or provide to Settlement Class Counsel for filing) an affidavit affirming that the Notice program has been implemented in accordance with the Settlement Agreement and this Order (including CAFA notice) and identifying any Settlement Class Members who timely and validly requested exclusion from the Settlement Class.

<strong>OPT-OUT AND OBJECTION PROCEDURES</strong>

    14.  Settlement Class Members may exclude themselves from the Settlement Class by mailing to the Settlement Administrator a written request for exclusion that is postmarked no later than ninety days after entry of this Preliminary Approval Order (the "Exclusion/Objection Deadline"). To be

effective, the request for exclusion must include (a) the Settlement Class

Member's full name, telephone number, and mailing address; (b) a clear and

unequivocal statement that the Settlement Class Member wishes to be excluded

from the 23(b)(3) Settlement Class; (c) the name of the MDL: "In re Procter &

Gamble Aerosol Product Marketing & Sales Practices Litigation, No. 22-md-

3025"; and (d) the Settlement Class Member's signature, or the like signature or

affirmation of an individual authorized to act on the Settlement Class Member's

behalf.  Upon the Settlement Administrator's receipt of a timely and valid

exclusion request, the Settlement Class Member shall be deemed excluded from

the Rule 23(b)(3) Settlement Class and shall not be entitled to any benefits of this

Settlement save the injunctive relief.  A Settlement Class Member may request to

be excluded from the Settlement only on the Settlement Class Member's own

behalf; a Settlement Class Member may not request that other Settlement Class

Members (or a group or subclass of Settlement Class Members) be excluded

from the Settlement.

 15.  Any Settlement Class Member who does not request exclusion from

the Settlement Class has the right to object to the proposed Settlement and/or to

a motion for attorneys' fees or service awards.  To be considered valid, an

objection must be in writing, must be filed with or mailed to the Court, must be

postmarked or filed no later than ninety days after entry of this Preliminary

Approval Order (the Exclusion/Objection Deadline), and must include the

following: (a) the case name and case number: "In re Procter & Gamble Aerosol

Product Marketing & Sales Practices Litigation, No. 22-md-3025"; (b) the full name, mailing address, and telephone number of the Settlement Class Member objecting to the Settlement (the "Objector"); (c) the Objector's signature, or the like signature or affirmation of an individual authorized to act on the Objector's behalf; (d) a statement of the specific grounds for the objection; (e) a statement whether the objection applies only to the Objector, to a specific subset of the class, or to the entire class; (f) the name, address, bar number, and telephone number of counsel for the Objector, if represented by an attorney in connection with the objection; and (g) a statement whether the Objector intends to appear at the Final Approval Hearing, either in person or through counsel.  If the Objector or his or her attorney intends to present evidence at the Final Approval Hearing, the objection must contain the following information: a detailed description of all evidence the Objector will offer at the Final Approval Hearing, including copies of any and all exhibits that the Objector may introduce at the Final Approval Hearing.  If an objection is not submitted in accordance with this paragraph, this Court may in the exercise of its discretion refuse to consider it.  Any Settlement Class Member who does not timely submit an objection in accordance with this paragraph shall waive the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the proposed Settlement or to a motion for attorneys' fees or service awards.

16.  By no later than fourteen days prior to the Exclusion/Objection Deadline, Settlement Class Counsel shall file their motion for attorneys' fees and

service awards.  Any such motion shall be posted to the Settlement Website within one business day after its filing.

## FINAL APPROVAL HEARING

17.  The Court will hold a Final Approval Hearing on May 30, 2023, at 10:00 a.m., in the United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, Room 108, 85 Marconi Boulevard, Columbus, OH 43215.  The purposes of the Final Approval Hearing will be to: (i) determine whether the proposed Settlement Agreement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Settlement Class; (ii) determine whether judgment should be entered pursuant to the Settlement Agreement, dismissing the claims in the Actions and in the MDL with prejudice and releasing all Released Claims; (iii) determine whether the Settlement Class should be finally certified; (iv) rule on Settlement Class Counsel's motion for attorneys' fees and service awards; (v) consider any properly filed objections; and (vi) consider any other matters necessary in connection with the final approval of the Settlement Agreement.

If the Court subsequently determines that the Final Approval Hearing should not occur at an in-person hearing but rather through remote means, the Court will issue a subsequent order.

18.  By no later than forty-nine days before the Final Approval Hearing, Settlement Class Counsel shall file their motion for final approval of the

Settlement Agreement which may respond to any objections filed by Settlement Class Members.

19. Any oppositions (if any) to the motion seeking the Court's entry of the Final Approval Order shall be filed twenty-eight days before the Final Approval Hearing.

20. Any replies in further support of the motion seeking the Court's entry of the Final Approval Order (if any) shall be filed fourteen days before the date of the Final Approval Hearing

21. The Court may, in its discretion, modify the date, time, and/or location of the Final Approval Hearing. In the event the Court changes the date, time, and/or location of the Final Approval Hearing, the new date and time shall be posted on the Settlement Website, and the parties shall not be required to provide any additional notice to the Settlement Class.

22. If the Settlement Agreement, including any amendment made in accordance therewith, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement Agreement and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein), shall be terminated and shall become null and void and of no further force and effect except for (i) any obligations to pay for any expense incurred in connection with Notice and administration as set forth in the Settlement Agreement, and (ii) any other obligations or provisions that are

expressly designated in the Settlement Agreement to survive the termination of the Settlement Agreement.

23. Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, including matters relating to Settlement Class Counsel's motion for attorneys' fees or service awards, all proceedings in the MDL are hereby **STAYED** and suspended until further order of this Court.

24. Pending final determination of whether the Settlement Agreement should be finally approved, Settlement Class Representatives, all Settlement Class Members, and Releasing Parties (and any persons purporting to act on their behalf) are barred and enjoined from filing, commencing, prosecuting, maintaining, or enforcing any Released Claims against the Released Parties, directly or indirectly (including in any action purportedly brought on behalf of the general public of the United States or of a particular state, district, or territory therein), in any judicial, administrative, arbitral, or other forum. This bar and injunction are necessary to protect and effectuate the Settlement Agreement and this Preliminary Approval Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction.

25. This Preliminary Approval Order, the Settlement Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not constitute, be described as, construed as,

offered, or received against P&G or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by any plaintiff in the MDL; (b) any liability, negligence, fault, or wrongdoing of P&G or the Released Parties; or (c) that this or any other action may be properly certified as a class action for litigation, non-settlement purposes.

26.  The Parties are directed to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement according to its terms should it be finally approved.

27.  The Court may, for good cause, extend any of the deadlines set forth in this Preliminary Approval Order without further notice to Settlement Class Members.  Without further order of the Court, the Parties may agree to make non-material modifications in implementing the Settlement that are not inconsistent with this Preliminary Approval Order.

28.  The following chart summarizes the dates and deadlines set by this Preliminary Approval Order:

| Notice Date | 30 days after entry of this Order |
|---|---|
| Last day for Settlement Class Counsel to file motion for Settlement Class Counsel Attorneys' Fees and Costs Award and/or Class Representative Service Award | 14 days prior to the exclusion/objection deadline |
| Claims Submission Deadline | 90 days after entry of this Order |
| Exclusion/Objection Deadline | 90 days after entry of this Order |
| Last day for Settlement Class Counsel to file motion for final approval of the Settlement | 49 days before the Final Approval Hearing |

| | |
|---|---|
| Last day to file oppositions (if any) to the motion for final approval of the Settlement | 28 days before the final approval hearing |
| Last day to file any replies in further support of the motion for final approval of the Settlement | 14 days before the final approval hearing |
| Final Approval Hearing | May 30, 2023, which is at least 167 days after entry of this Order |

The Clerk shall terminate ECF No. 23 as a pending motion.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**