# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **In re Procter & Gamble Aerosol Products Marketing & Sales Practices Litigation** | Case No. 2:22-md-3025 |
| | Judge Michael H. Watson |
| | Magistrate Judge Chelsey Vascura |
| **This document relates to: <u>ALL CASES</u>** | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

In accordance with Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs Norma Bernsee, Abby Nelson, Shirley Thiele, Lindsey LaBella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrel Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, Sondra Trent and Marianna Campbell (collectively "Settlement Class Representatives" or "Plaintiffs"), by and through their undersigned counsel ("Settlement Class Counsel" or "Class Counsel"), on behalf of themselves and the Settlement Class, move this Court for the entry of an order: (i) awarding attorneys' fees, expenses; and (ii) Class Representative service awards (the "Motion").

This Motion seeks approval of the following payments by Defendant The Procter & Gamble Company ("Defendant" or "P&G"): (1) attorneys' fees and costs to Class Counsel in the amount of two-million four-hundred thousand dollars ($2,400,000.00); and (2) a Class

1

Representative Service Award in the amount of two-hundred fifty dollars ($250.00) for each named Settlement Class Representative (collectively the "Fee Request"). Class Counsel consulted with counsel for Defendant before filing this Motion and determined that, consistent with the Settlement, this Motion is unopposed. (Doc. 23-1). Since the claims period does not end until January 26, 2023, Plaintiffs will supplement this Motion after the claims period is completed. The grounds for this Motion are included in the accompanying memorandum.

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

## I.    INTRODUCTION

Plaintiffs and Class Counsel submit that the proposed request of fees, expenses, and service awards is based upon the successful resolution of a complicated consumer class action.[1]

Plaintiffs brought this lawsuit on behalf of themselves and a putative class of consumers who purchased Defendant P&G's aerosol antiperspirant, deodorant, body spray products ("P&G Body Products"), dry shampoo, and dry conditioner products ("P&G Hair Products") (collectively the "P&G Aerosol Products") that are alleged to contain benzene, a known human carcinogen. *See* Preliminary Approval Order, at 1 (Doc. 45, PageID #930).

Plaintiffs allege that P&G first became aware of the benzene contamination through the filing of Valisure's Citizen Petition with the Food & Drug Administration (the "FDA") on November 3, 2021, wherein Valisure reported that it had tested numerous body spray products from various manufacturers and discovered that certain P&G aerosol antiperspirant products contained benzene. Valisure contacted the FDA to recall all batches of P&G's Body Products that contained benzene. Immediately thereafter, P&G initiated an investigation concluding that the

---

[1] Detail surrounding the claims, defenses, and procedural history may be found in Plaintiffs' motion for preliminary approval (Doc. 23) and will not be fully repeated here.

benzene identified in some product samples stemmed from the isobutane used as a propellant in those aerosol product lines.

Given the difficulty of the case and its procedural setting, the Settlement is an outstanding result for Class Members. The Settlement provides for a cash payment or vouchers (whichever Class Members choose) to Class Members with and without Proof of Purchase of the P&G Aerosol Products. Class Members with a valid Proof of Purchase have the option to select either a cash payment or voucher for each Proof of Purchase provided. If the Class Member chooses a cash payment, the Class Member will receive a payment of $3.50 for each unit with a valid Proof of Purchase. If the Class Member chooses to receive a voucher, the Class Member will receive a voucher redeemable for one product of the same brand reflected on the Proof of Purchase not to exceed the following prices: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice or Secret antiperspirant or deodorant products; $7 for Herbal Essences; $9 for Pantene or Waterless; and $10 for Hair Food. The voucher will be fully transferable, expire 180 days after issuance, and may be used in combination with other promotions. There is no limit on the number of separate claims that Class Members with a Proof of Purchase may file.

Class Members without Proof of Purchase, but who submit a timely and valid claim form, attesting under penalty of perjury that they purchased during the Class Period one or more P&G Aerosol Products shall have the option to elect either No Proof of Purchase Payment or No Proof of Purchase Voucher. A Class Member Without Proof of Purchase may elect to receive a No Proof of Purchase Payment of $3.50 for each unit purchased. The total number of No Proof of Purchase Payments claimed by Class Members may not exceed three (3) total payments (or $10.50) per household. In the alternative, a Class Member Without Proof of Purchase may elect to receive No Proof of Purchase Vouchers. Each voucher will be redeemable for one P&G Aerosol Product of

the same brand indicated on the Claim Form, which will be fully transferable, expires 180 days after issuance, and may be used in combination with other promotions. The value of the voucher is not to exceed the following prices: $5 for Old Spice Hair; $6 for Aussie; $7 for Old Spice or Secret antiperspirant or deodorant products; $7 for Herbal Essences; $9 for Pantene or Waterless; and $10 for Hair Food. The total number of No Proof of Purchase Vouchers claimed by Class Members may not exceed three (3) vouchers per household. Class Members Without Proof of Purchase who received three (3) vouchers under the Recall Program can still file a claim for one (1) additional No Proof of Purchase Payment or No Proof of Purchase Voucher.

The Settlement also provides for significant injunctive relief, including material and product testing, product sampling and testing protocols in the supply chain, and sale restrictions. There is no limit on monetary relief for claims of Class Members who have Proofs of Purchase, and the Settlement has allotted $8,000,000 of relief for Class Members with No Proofs of Purchase.

Class Counsel are not seeking fees based upon the value of the vouchers claimed, but the attorneys' fees and costs provision was the product of the Mediator's proposal, after the Parties could not reach agreement through arms' length negotiations. Attorneys' fees and costs that are awarded in this Action will be paid by P&G separate and apart from, and in addition to, the relief being offered to the Class Members.

A fee of $2,400,000 is reasonable as it is well within the standard for fees within the Sixth Circuit, when there is a separate distinct fund of $8,000,000 and possibly much more, as there is unlimited monetary relief for claims of Class Members who have Proofs of Purchase. A lodestar cross-check, though optional, supports the Fee Request. The Fee Request, expenses and Service Awards are reasonable and typical for a case such as this. Accordingly, Plaintiff and Class Counsel respectfully request that the Court enter an Order approving the Fee Request.

II.     **FACTUAL BACKGROUND**

On November 19, 2021, Plaintiffs Velasques, Ortega, and Lopez filed the first case in this District regarding the alleged contamination of the P&G Body Products. *See generally* Compl., ECF No. 1. On December 23, 2021, Plaintiff Beth Blake filed the first case in this District regarding the P&G Hair Products, captioned *Blake v. The Procter & Gamble Company*, No. 21-cv-00794. The first case seeking class relief arising out of the presence of benzene in P&G Aerosol Products, captioned *Bryski v. Procter & Gamble*, No. 21-cv-62285, was filed in the Southern District of Florida on November 4, 2021. On December 13, 2021, Defendant filed a Motion for Transfer of Action for Centralized Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation (the "Panel") listing eleven (11) actions for transfer.

On November 23, 2021, P&G announced a nationwide voluntary recall of P&G Body Products due to the presence of benzene, and instructed consumers in possession of such P&G Body Products to stop using the products.[2] In its announcement, P&G indicated it would offer reimbursement to consumers who purchased the P&G Body Products and established a process for claimants to obtain a refund (the "Recall Program"). *Id.* On December 17, 2021, P&G also announced a nationwide voluntary recall of P&G Hair Products due to the presence of benzene detected in some products and included those products in the Recall Program.[3] The Recall Program was terminated by P&G in April 2022.

On March 31, 2022, a hearing was held before the Panel in New Orleans to determine which court the cases would be transferred to for consolidated pretrial proceedings. Doc. 23,

---

[2]  https://wwwfda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.
[3]     https://news.pg.com/news-releases/news-details/2021/pg-issues-voluntary-recall-of-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray-products/default.Aspx

Preliminary Approval Order, at 5-6 (PageID # 128-129). On April 7, 2022, the Panel issued a Consent of Transferee Order which transferred and consolidated the cases involving P&G Aerosol Products to the Southern District of Ohio and assigned them to this Court. There are twenty-seven (27) cases now pending before this Court (the "Action"). Doc. 1, Transfer Order.

Before the Panel's hearing on the motion for transfer and centralization of the cases in one Court, counsel for P&G, Andrew Soukup ("Defendant's Counsel") and Counsel for certain Plaintiffs - Gary M. Klinger, Kevin Laukaitis, Steven Bloch, Mark S. Reich, Rick Paul, Terence R. Coates, Paul Doolittle, Bryan F. Aylstock, R. Jason Richards, Kiley Grombacher, Jonathan Jagher, and Richard S. Wayne (collectively "Plaintiffs' Mediation Counsel" and Defendant's Counsel, are referred to as "Parties' Mediation Counsel") engaged in early settlement discussions. Doc. 23, at 6 (PageID # 129); *see also* Declaration of Richard S. Wayne in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Wayne Decl."), at ¶ 3. In connection with those discussions, Plaintiffs' Mediation Counsel reached out to certain attorneys representing plaintiffs in other pending cases against P&G, including those pending in the Southern District of Florida ("Non-settling Plaintiffs' Counsel"), to participate in a potential mediation. Wayne Decl., at ¶ 7. However, the Non-settling Plaintiffs' Counsel refused to participate in any settlement discussions claiming it was too early to settle and that a leadership structure must be appointed before any settlement discussions could take place. *Id*.

Plaintiffs' Mediation Counsel also reached out to other plaintiffs' counsel who reviewed the relevant mediation documents and proposed settlement terms and, after consulting their clients, agreed to the Settlement preliminarily approved by the Court (collectively, the undersigned plaintiffs' attorneys are referred to as "Plaintiffs' Counsel" or "Settlement Class Counsel"). *Id*. at ¶ 8.

In March 2022, the Parties' Mediation Counsel agreed to jointly retain Robert Meyer ("Mediator"), a nationally recognized mediator, to serve as the mediator in an attempt to reach a nationwide resolution.[4] *Id*. at ¶ 4. Before the mediation session, Plaintiffs' Mediation Counsel provided P&G with a comprehensive list of documents and data they requested be produced by P&G before the mediation (the "Disclosure Requests") so they could adequately evaluate the Settlement. *Id*. The Parties then negotiated a Confidentiality Agreement, which was executed by the Parties' Mediation Counsel on March 14, 2022, and the data and information was produced by P&G in response to the Disclosure Requests in advance of the scheduled mediation. *Id*.

The data and information P&G produced to Plaintiffs' Mediation Counsel in advance of the mediation detailed nationwide sales data and testing information as to the P&G Aerosol Products. *Id*. at ¶ 5. Defendant's production included information regarding P&G's notice of benzene contamination; communications between P&G and its affiliates concerning benzene contamination; information regarding studies and analysis performed by P&G with respect to the benzene contamination; P&G's communications with the FDA regarding the contamination; information about P&G's Aerosol manufacturers and raw material suppliers; and information on P&G's Recall Program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications. Additionally, in advance of the mediation, Plaintiffs retained Colin B. Weir, Vice President of Economics and Technology, Inc.-a highly-regarded firm that specializes in conducting economic, statistical, regulatory, and other analysis—to conduct a conjoint analysis, which included a test survey from which price premium percentages were derived. *Id*. The information and documents produced by P&G, Plaintiffs' Mediation Counsel's independent investigation, and

---

[4] https://www.jamsadr.com/meyer/ (last visited on May 23, 2022).

the results of Mr. Weir's conjoint analysis, provided Plaintiffs' Mediation Counsel with more than sufficient information to proceed with mediation and negotiate a potential settlement. *Id.* at ¶ 6.

In advance of the formal mediation session, Defendant's Counsel and Plaintiffs' Mediation Counsel prepared separate mediation statements for the Mediator where the Parties discussed the facts, evaluated the strengths and weaknesses of their claims both on the merits and as to class certification, and also addressed damages. *Id.* at ¶ 9. A full day mediation was held on March 28, 2022, with Robert Meyer, during which the Parties' Mediation Counsel discussed and evaluated the claims, damages, allegations, and defenses; however, a final agreement was not reached. *Id.* at ¶ 10.

Over the weeks that followed, the Parties continued to engage in arm's-length negotiations involving the Mediator after the conclusion of the formal mediation; however, the Parties, after an additional month of negotiations reached an impasse and, in an effort to resolve the deadlock, the Mediator made a mediator's proposal that was agreed to by P&G and Plaintiffs' Counsel on May 2, 2022. *Id.* at ¶ 11. The Parties' Mediation Counsel, with the assistance of the Mediator, negotiated the attorneys' fees provision of the Settlement Agreement that would be applied for and subject to the approval of this Court, and the material terms of his provision were also the result of the mediator's proposal. *Id.* On May 2, 2022, the Parties entered into a Memorandum of Settlement, and, on May 3, 2022, just before the Court's Case Management Conference No. 1, notification of the Settlement was filed with the Court. *Id.* at ¶ 12.

On October 28, 2022, the Court granted the Preliminary Approval Order of the Settlement at the request of Settling Plaintiffs, setting in motion the notice and claims process to the Class. (Doc. 45). As of January 6, 2023, there have been 632,081 claims submitted for settlement benefits for a total cash value of $2,282,073. *Id.*, ¶ 17. The deadline to submit a claim is January 26, 2023.

### III.    STANDARD

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach." *Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834, at *5 (S.D. Ohio Aug. 7, 2020) (Watson, J.) (internal and external citations omitted). "Whichever method is utilized, the … Sixth Circuit requires 'only that awards … be reasonable under the circumstances." *Id.* (citing *Rawlings*, 9 F.3d. at 516).

District courts have the discretion to select the particular method of calculation but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). These factors include (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingency fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of the counsel on both sides. *Johnson v. Midwest Logistics Systems, Ltd.*, No. 2:211-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)); *Bartell*, 2020 WL 7062834, at *5-6 (S.D. Ohio Aug. 7, 2020) (quoting *Moulton*, 581 F.3d at 352 (same)). No individual factor is dispositive. Instead, the Court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors

according to the demands of the case." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 779

(N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010).

 Understanding the Court requested Plaintiffs' Counsel to "address the supportability of any

requested fees under 28 U.S.C. § 1712." (Doc. 45, PageID #941) and the guidance from the Sixth

Circuit Court of Appeals that the Court is required to use the redemption rate of any coupon relief

afforded under a class action settlement when determining class counsel's fees based on the

percentage method (*Linneman v. Vitamix Corp.*, 970 F.3d 621, 627 (6th Cir. 2020)), Plaintiffs'

Counsel base their requested fee award only as a percentage of the $8 million monetary benefit

made available to Class Members and not in any way on the voucher relief provided under the

Settlement. Indeed, of the claims submitted through January 6, 2023, more than 97% of class

members have requested monetary payment under the Settlement. Wayne Dec., ¶ 18. Accordingly,

the Court may properly award attorneys' fees under the percentage of the benefit analysis measured

as a percentage of the cash settlement benefits made available to the Class.

## IV. ARGUMENT

### A. Class Counsel's Fee Request is Reasonable as Measured as a Percentage of the Benefit Made Available to the Class

The percentage-of-benefit method may be employed even where attorneys' fees are paid

separate from a fund. *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL

4776977, at * 4 (S.D. Ohio Oct. 3, 2018). When calculating the benefit, "[i]t is appropriate to base

the percentage on the gross cash benefits available for class members to claim, plus the additional

benefits conferred on the class by the … separate payment of attorney's fees and expenses, and the

expenses of administration." *Raimondo v. Sprint Commun. Co. L.P.*, No. 1:12-CV-01984-SO,

2013 WL 12131877, at *2 (N.D. Ohio June 13, 2013); *see also Ditsworth v. P & Z Carolina Pizza*,

No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *5 (W.D. Ky. July 13, 2021) ("The total benefit

of this Agreement includes the settlement funds, administrator's fees, Reserve Fund, Ditsworth's incentive payment, and attorneys' fees.").[5] Here, P&G has agreed to pay up to $2,400,000 in attorneys' fees and expenses and up to $8,750 in class representative incentive awards ($250 Service Award to each Class Representative). When combined with the $8,000,000 made available to pay the claims of Class Members with No Proofs of Purchase ($11,008,750), the requested fee is just 21.8% of the benefit generated by the Settlement Agreement. This does not include the money generated by the Settlement to pay the claims of Class Members who have Proofs of Purchase, which is ***unlimited***.

Courts within the Sixth Circuit routinely approve fee awards of roughly one-third the financial benefit made available for the class. *Borders v. Alt. Sol. Health Network, LLC*, No. 2:20-CV-1273, 2021 WL 4868512, at *4 (S.D. Ohio May 17, 2021) ("courts in this Circuit generally approve of awards that are 1/3 of the total settlement."); *see also In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20% - 50%"); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *29 (M.D. Tenn. Aug. 11, 1999) (noting same); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) (approving one-third fee); *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-CV-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (same); *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2020 WL 7062806, at *4 (S.D. Ohio Mar. 25, 2020) (same).

**B. All Factors Weigh in Favor of the Requested Fee**

---

[5] "The [Supreme] Court has held that class plaintiffs' 'right to share the harvest of the lawsuit …, *whether or not they exercise it,* is a benefit ….'" *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis in original) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)).

Although no individual factor is dispositive, each weigh in favor of approval here.[6]

### 1. The Value of the Benefits to the Class

Class Counsel's efforts resulted in a Settlement with a substantial recovery for the Class, as there is no limit on monetary relief for claims of Class Members who have Proofs of Purchase and the Settlement's maximum value of relief for Class Members with No Proofs of Purchase is $8,000,000.[7] Settlement Class Members with Proofs-of-Purchase can make an *unlimited* number of submissions, which means the total monetary relief made available to the Class Members is actually in the tens, if not hundreds, of millions of dollars. Secondly, the Settlement provides relief in addition to what P&G provided under its voluntary recall program (which paid out vouchers totaling $3.6 million and only $25,000 in cash). Conversely, here, the Settlement provides an *unlimited* value for Class Members with Proof-of-Purchase and provides up to $8,000,000 for Class Members without Proof-of-Purchase, and the vast majority of class members have to date selected to receive monetary relief under the Settlement. Meaning, the amount available to Class Members without Proofs-of-Purchase exceeds the value paid out *entirely* under the unilateral

---

[6] "Negotiated and agreed-upon attorneys' fees as a part of a class action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey v. AK Steel Corp.*, No. No. 1:06-cv-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008). The six factors should be viewed in this light. *See Bartell*, 2020 WL 7062834, at *6 ("Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member oppose the fee request and the Class has received a substantial benefit, the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.").

[7] The Settlement also provides significant injunctive/non-monetary relief which is designed to establish corrective and preventive measures to further address the benzene contamination at issue in this Action. Specifically, the Settlement provides injunctive/non-monetary relief, including, no further sales of Aerosol Product subject to the Recall Program, adoption of new specifications related to benzene, testing for the presence of benzene at 1 ppm or more in raw materials, additional maintenance of testing records, sampling of batches of products, and annual on-site quality inspections of its contract manufacturer's facilities.

Recall Program. Additionally, even individuals who submitted three claims without proofs-of-purchase under the Recall Program may still receive compensation under the Settlement.

"It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate, and reasonable." *Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993). There are no potential class members who could be bound by this Settlement who are barred from the opportunity to receive funds; even those who received three vouchers under the Recall Program are entitled to claims an additional voucher or payment under Settlement. And to be clear, the Settlement Agreement's "Offset" provision (§ 3.2(c)(ii)) bars consumers from "double dipping" in both the Recall Program and the Settlement – speaking squarely to the settlement's overall fairness. *See In re Wendy's Co. S'holder Derivative Action*, No. 1:16-CV-1153, 2020 WL 13169460, at *6 (S.D. Ohio Jan. 24, 2020), *aff'd*, 44 F.4th 527 (6th Cir. 2022) ("In making this determination, the Court should consider whether the proposed settlement contains any obvious defects, and whether the proposed settlement contains any preferential treatment."). No class members get preferential treatment in this Settlement.

Based on the claims filed through January 6, 2023, approximately $2,282,073 in Settlement benefits have been claimed. Wayne Decl., ¶ 17. Of those claims, more than 97% of class members have selected monetary compensation, as opposed to vouchers. *Id.* at ¶ 18. Given that the deadline for claims is not until January 26, 2023, and it is typical for there to be a surge of claims surrounding the deadline, more claims are expected so that the total amount of settlement benefits redeemed by the Class will increase.

For comparison purposes, there are stark differences between the voluntary recall program and the Settlement which show that the Settlement provides significant benefits to consumers:

| P&G Voluntary Recall Program | Settlement |
| --- | --- |
| Discontinued entirely as of April 2022 | Ninety (90) days to submit claims for payment/voucher after Preliminary Approval Order |
| Unilaterally-generated notice program on respective brand websites | Robust Notice program with hosted, independent website, toll-free helpline, Notice Campaign, and publication into newsrooms |
| Distributed $3.6 million in vouchers and only $25,000 in cash | Unlimited funds available for claimants with proof-of-purchase; $8,000,000 set aside for claimants without proof-of-purchase |
| Cash value only obtainable through call to P&G for approval | Cash value obtainable through a simple, singular claim form disseminated by Notice plan |

Moreover, the Settlement meets or exceeds the terms of a settlement in a near-identical case. *See In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.,* No. 0:21-md-03015, ECF No. 77 (S.D. Fla.) (where the District Court preliminarily approved a settlement involving sunscreen products allegedly contaminated with benzene for an estimated $4.85 million). Here, Class Members are eligible to receive unlimited monetary relief for claims with Proofs of Purchase and up to $8,000,000 is set aside for claimants for Class Members with No Proofs of Purchase, in addition to the significant injunctive relief that is afforded to the Class through P&G's agreements to establish corrective and preventative measures to further address benzene contamination.

Accordingly, this factor supports the Fee Request.

### 2. Society's Stake in Rewarding Attorneys

Class Counsel was able to make monetary relief available a significant number of consumers who purchased Defendant's aerosol antiperspirant, deodorant, body spray products, dry shampoo, dry conditioner products containing benzene. Without this lawsuit, the vast majority of these consumers would likely not have been aware that they were defective products, and in any

14

case would be unlikely to make an individual claim. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. This factor supports the Fee Request.

Class Counsel took this case on a contingency fee basis, and therefore "undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant recovery here." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *10 (S.D. Ohio Jan. 19, 2022) (citing *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012)); Wayne Decl., ¶ 14. Moreover, the risk was very real that Class Counsel could recover nothing for this case given that courts have dismissed cases with similar (though not identical) theories of liability. *See, e.g., See In re: Gerber Products Company Heavy Metals Baby Food Litigation*, No. 21-cv-269 (October 17, 2022, Memorandum Opinion and Order) (granting motion to dismiss a class action lawsuit in which Plaintiffs had alleged that Gerber deceptively led consumers to believe their baby food products were "healthy" and "safe" despite allegedly containing unsafe levels of toxic metals). This factor supports the Fee Request.

### 3. The Lodestar Cross-Check

When using the percentage method, a lodestar cross-check is optional. *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019). Were the Court to apply a cross-check, however, it also supports the requested fee. To date, Class Counsel has a current lodestar of $2,038,553.68 and expenses totaling $96,922.40 and will supplement this filing at the time of their final approval motion with the additional time incurred

by Settlement Class Counsel after the claims deadline, and with Declarations of Settlement Class Counsel detailing the lodestar incurred. *See* Wayne Decl., ¶ 14. Class Counsel will continue to spend time on this matter: responding to objections, if any; addressing appeal issues, if any; and overseeing settlement administration, including responding as necessary to Class Member inquiries. Wayne Decl., ¶ 16. *See Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (recognizing that Class Counsel's work does not end at final approval).

Because of the inherent risks of litigation, courts in this district award multipliers of "between approximately 2.0 and 5.0." *See Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2012 WL 12926023, at *10 (S.D. Ohio Jan. 10, 2012) (Watson, J.) (citing *In re Broadwing, Inc. ERISA Litg.*, 252 F.R.D. 369, 381 (S.D. Ohio 2016)); *see also Dillow*, 2018 WL 4776977, at *7 (citing *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5)); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approving multiplier of 5.9). The multiplier of 1.17 here falls well within the reasonable range. Moreover, this multiplier will only decrease as Class Counsel continues to oversee the settlement and prepare for the final approval hearing. Class Counsels' hours were reasonably expended, and their hourly rates are in the ranges previously approved by courts, including this District, for complex class action litigation. *See Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4159682, at *16-17 (S.D. Ohio Aug. 5, 2016) (approving hourly rates up to $850 per hour), adopted by District Judge George C. Smith in total: 2016 WL 4449709 (S.D. Ohio Aug. 24, 2016); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-02086, 2019 WL 1316953 (noting that "the approved rates are as follows: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15-

24 years of experience, $900 per hour; for attorneys with 5-14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour."); *Dillow*, 2018 WL 4776977, at *7 (concluding that $675 for a senior attorney and between $250 and $400 for additional attorneys was reasonable). This factor supports the Fee Request.

### 4. The Complexity of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ganci*, 2019 WL 6485159, at *3 (quoting *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quotation omitted)). This case is no exception. In fact, typical class action complexity is amplified by the nature of the case. Plaintiff brings a difficult product contamination case, where liability will depend upon competing views (supported by experts), and where damages will depend upon analysis of a price premium using a complex conjoint analysis (again supported by experts) also likely to be the subject of dispute. *See, e.g.*, *Hawes v. Macy's Stores W., Inc.*, No. 1:17-CV-754, 2022 WL 194407 (S.D. Ohio Jan. 22, 2022) (including extensive discussion of multiple attacks by defendant regarding plaintiff's price premium theory). This factor supports the Fee Request.

### 5. Skill and Standing of Counsel

Class Counsel are knowledgeable in the applicable law and highly experienced in litigating class actions and other complex matters. *Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462, 486 (S.D. Ohio 2021). This is true of all Class Counsel. The supplemental filing will include Declarations of Settlement Class Counsel which will include their experience in litigating class

actions. The skill and standing of counsel "on both sides" of the litigation supports the requested fee. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 538 (E.D. Mich. 2003).

### C.     The Court Should Approve the Requested Service Awards

Finally, Class Counsel also request that the Court approve a Service Award to Settlement Class Representatives in the requested amount of $250.00. (Doc. 23-1 at Page ID 170). The Parties have agreed as part of the Settlement and Class Members have been put on notice that this amount would be requested. To date there are no objections. *Id*. "Service 'awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *Bartell*, 2020 WL 7062834, at *7 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

Class Representatives take an active part in the litigation, including involvement in a final Settlement. The modest service award requested here reflects compensation for their time and effort in prosecuting the claims asserted in this action. It is extremely reasonable and well within the range of awards approved by this Court. *See, e.g., Bartell*, 2020 WL 7062834, at *11 ("[T]he Court hereby awards to Class Representative Laurence Bartell $20,000 for service and assistance to the Class."); *Wright v. Premier Courier, Inc.*, Nos. 2:16-cv-420, 2:27-cv-654, 2018 WL 3966253, at *8 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (approving service awards of $5,000 each to two named plaintiffs from a $600,000 settlement); *Koenig*, 2012 WL 12926023, at *9 (approving "modest enhancement awards" of $3,000.00 and $2,000.00). In comparison, the individual awards here are eminently reasonable.

## **CONCLUSION**

For all of the foregoing reasons, Class Counsel respectfully requests that the Court enter an Order granting Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Award.

Dated: January 12, 2022

Respectfully submitted,

/s/ Richard S. Wayne
Richard S. Wayne (Ohio Bar No. 0022390)
**STRAUSS TROY CO., LPA**
150 East 4th Street, 4th Floor
Cincinnati, OH 45202
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
E-mail: rswayne@strausstroy.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Terence R. Coates (Ohio Bar No. 0085579)
**MARKOVITS STOCK & DEMARCO,
LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 665-0204
Facsimile: (513) 665-0219
Email: tcoates@msdlegal.com

Rick Paul*
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, MO 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email: rick@paulllp.com

Jonathan M. Jagher*
**FREED KANNER LONDON &
MILLEN LLC**
923 Fayette St.
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
Email: jjagher@fklmlaw.com

Jonathan Shub*
**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Email: jshub@shublawyers.com

Steven L. Bloch*
**SILVER GOLUB & TEITELL, LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
E-mail: sbloch@sgtlaw.com

Mark S. Reich*
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: mreich@zlk.com

Paul Doolittle*
**POULIN|WILLEY|ANASTOPOULO,
LLC**
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: pauld@akimlawfirm.com

Robert C. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: rschubert@sjk.law

20

Michael R. Reese*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: mreese@reesellp.com

Kiley Grombacher*
**BRADLEY GROMBACHER**
31365 Park Crest Dr., Suite 240
Westlake Village, CA 91361
Telephone: (888) 418-7094
Email:
kgrombacher@bradleygrombacher.com

Bryan F. Aylstock*
Jason Richards*
**AYLSTOCK WITKIN KREIS
OVERHOLTZ**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (844) 794-7402
Email: jrichards@awkolaw.com
        baylstock@awkolaw.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ, LLC**
111 W. Jackson St., # 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Email: malmstrom@whafh.com

*Subject to Pro Hac Vice admission*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served via the Court's CM/ECF system on January 12, 2022, and has thus been served automatically on all counsel of record that have entered an appearance in Case No. 2:22-md-3025.

/s/ Richard S. Wayne
Richard S. Wayne (Ohio Bar No. 0022390)

16155478.1