### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **In re Procter & Gamble Aerosol** | : | Case No. 2:22-md-3025 |
| | : | |
| **Products Marketing & Sales** | : | Judge Michael H. Watson |
| | : | |
| **Practices Litigation** | : | Magistrate Judge Chelsey Vascura |
| | : | |

### DECLARATION OF RICHARD S. WAYNE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD

I, RICHARD S. WAYNE, declare as follows:

1.      I am a partner in the law firm of Strauss Troy Co., LPA ("ST") co-counsel for plaintiffs Patricia Kelley, Jeremy Wilson, Dante Melendez and Darrell Stewart and one of Settlement Class Counsel in the above-captioned action (the "Action").

2.      I submit this Declaration in support of Plaintiffs' Motion For Attorneys' Fees, Expenses and Class Representative Service Award in the Action.

3.      In December 2021 and in early 2022, I worked with other members of Plaintiffs' counsel to try to informally coordinate the benzene cases pending The Procter & Gamble Company ("P&G").

4.      In March 2022, I participated in a mediation with mediator Robert Meyer on behalf of the Settling Plaintiffs along with Gary M. Klinger, Kevin Laukaitis, Steven Bloch, Mark S. Reich, Rick Paul, Terence R. Coates, Paul Doolittle, Bryan F. Aylstock, R. Jason Richards, Kiley Grombacher, Jonathan Jagher, and Richard S. Wayne ("Plaintiffs' Mediation Counsel"). Mr. Meyers is a nationally recognized mediator. Andrew Soukup represented P&G at the mediation. Before the mediation session, Plaintiffs' Mediation Counsel sent a comprehensive list of document

and data requests to P&G seeking to have that information produced before the mediation with the intention of using that information to participate in a fully informed mediation. The Parties negotiated a Confidentiality Agreement on March 14, 2022, after which P&G produced responses to Plaintiffs' settlement requests in advance of the mediation.

5.      The data and information P&G produced to Plaintiffs' Mediation Counsel in advance of the mediation detailed nationwide sales data and testing information as to the P&G Aerosol Products. Defendant's production included information regarding P&G's notice of benzene contamination; communications between P&G and its affiliates concerning benzene contamination; information regarding studies and analysis performed by P&G with respect to the benzene contamination; P&G's communications with the FDA regarding the contamination; information about P&G's Aerosol manufacturers and raw material suppliers; and information on P&G's Recall Program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications.

6.      Furthermore, in preparation for the mediation, Plaintiffs' Mediation Counsel retained Colin B. Weir, Vice President of Economics and Technology, Inc.-a highly-regarded firm that specializes in conducting economic, statistical, regulatory, and other analysis—to conduct a conjoint analysis This analysis included a test survey to determine price premium percentages. Informed by the information from P&G, from our investigation into the case, and the information from Mr. Wier, Plaintiffs' Mediation Counsel and our clients were informed about the case leading into the mediation.

7.      Before the mediation, we attempted to coordinate with the Non-Settling Plaintiffs' Counsel, whose cases were pending mainly in the Southern District of Florida, to determine

whether they would participate in the mediation. The Non-Settling Plaintiffs' Counsel refused to participate in the mediation because they thought it was too early for mediation and that any leadership structure should be appointed before any settlement discussions could occur.

8.      Plaintiffs' Mediation Counsel communicated with other plaintiffs' counsel for the purpose permitting them to review the relevant mediation documents and proposed settlement terms. After consulting with their clients with that information at their disposal, the other plaintiff's counsel agreed to the terms of the Settlement.

9.      Before the mediation, the Parties submitted mediation statements to Robert Meyer that identified the relevant facts, weighed the strengths and weaknesses of Plaintiffs' claims and potential class certification, and addressed damages.

10.     The mediation occurred on March 28, 2022, during which the Parties evaluated the case including discussion the merits of the claims and defenses, damages, and Plaintiffs' allegations. Even with a full day of mediation, the Parties were unable to reach a settlement in principle on March 28, 2022.

11.     Following the mediation, the Parties remained engaged with the mediator about the case. After a month of additional negotiations reached an impasse, Robert Meyer submitted a mediator's proposal to the Parties that both sides accepted. The Parties, with the assistance of Robert Meyer, negotiated the attorneys' fees provision of the Settlement Agreement.

12.     On May 2, 2022, the parties entered a Memorandum of Settlement, and on May 3, 2022, filed a notification of Settlement with the Court.

13.     As one of Settlement Class Counsel I have knowledge regarding the facts and procedural history in the Action, including settlement negotiations and settlement administration.

3

14.     This Action was taken on a contingency fee basis. Plaintiffs' Counsel will supplement this Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards with the additional time incurred by Settlement Class Counsel after the claims deadline, and Declarations of each Settlement Class Counsel.

15.     Through December 31, 2022, Settlement Class Counsel in the aggregate have a total lodestar of $2,038,553.68 and total expenses of $96,922.40.

16.     Settlement Class Counsel will continue to spend time on this Action, including communications with the Settlement Administrator; inquiries from Class Members; responding to objections (if any); and the preparation and attending the final approval hearing.

17.     As of January 6, 2023, the Settlement Administrator reported that 632,081 claims have been filed for 632,081 monetary payments or vouchers, and the value of the claims totals approximately $2,282,073.

18.     As of January 6, 2023, the Settlement Administrator reported that of the claims submitted, more than 97% of class members have requested a monetary payment.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 12th day of January, 2023 at Cincinnati, Ohio.


By: /s/Richard S. Wayne
    Richard S. Wayne


16157325.1

4