# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **In re: Procter & Gamble Aerosol** | : | Case No. 2:22-md-3025 |
| **Products Marketing and Sales** | : | |
| **Practices Litigation** | : | Judge Michael H. Watson |
| | : | |
| | : | Magistrate Judge Chelsey Vascura |
| | : | |

**This document relates to: <u>ALL CASES</u>**

---

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS AND APPOINTING CO-LEAD SETTLEMENT CLASS COUNSEL

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Norma Bernsee, Marianna Campbell, Abby Nelson, Shirley Thiele, Lindsey LaBella, Erica Esquivel, Joshua Wallace, Tyler Baker, Brian Stanfield, Eileen Aviles, Shelby Cooper, Tanya Cooper, Jacob Cooper, Patricia Donadio, Gregory Pickens, Ryan Rinz, Patricia Kelley, Jeremy Wilson, Dante Melendez, Darrel Stewart, Beth Blake, Angela Hernandez, Lynn Balser Mills, Matthew Lopez, Erik Velasques, Frank Ortega, Nancy Martinez, Evan Clarke, Lagregory Bonner, Haley Canaday, Cheri Casolari, Dan Lewis, Berenice Bernier, Chaka Theus, Marianna Campbell, and Sondra Trent (collectively "Plaintiffs" or "Settlement Class Representatives"), move the Court for the entry of a Final Order: (1) approving the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "Settlement"); (2) certifying a nationwide Settlement Class (the "Settlement Class") and affirming the appointment of Plaintiffs as Settlement Class Representatives and their counsel as Settlement Class Counsel; and (3) appointing Richard S. Wayne and Gary M. Klinger as Co-Lead Settlement Class Counsel.[1]

---

[1] Capitalized terms have the same meaning as in the Class Action Settlement Agreement and Release. (Dkt. No. 23-1).

This Motion is supported by the accompanying memorandum.

Before the filing of this Motion, Plaintiffs' counsel conferred with counsel for Defendant The Procter & Gamble Company ("Defendant" or "P&G") under Local Rule 7.3(b) regarding the filing of this Motion and the relief they seek, and Defendant stated it does not oppose this Motion (Plaintiffs and P&G are sometimes referred to collectively as the "Parties").

## MEMORANDUM IN SUPPORT

## I.      INTRODUCTION

On October 28, 2022, this Court preliminarily certified the proposed Settlement Class under Rule 23 of the Federal Rules of Civil Procedure, preliminarily approved the terms of the Settlement, directed that notice be given to the Settlement Class, and scheduled a Final Approval Hearing for May 30, 2023. (Dkt. No. 45). Notice has been provided to the Settlement Class and the Parties now seek final approval of the terms of the Settlement Agreement, a copy of which is attached to the Motion for Preliminary Approval of the Class Action Settlement as Exhibit 1 (Dkt. No. 23-1). As discussed herein, and consistent with the Court's initial determination, the Settlement is fair, adequate and reasonable, represents a substantial recovery for the Settlement Class, provides meaningful injunctive relief and the reaction of the Settlement Class has been overwhelmingly positive. Indeed, there have been only two (2) requests to opt-out and *zero* objections to the Settlement. The claims and resolution of the Action is very similar to the settlement in *In re Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation*, No. 21-md-3015, 2023 WL 2284684 (S.D. Fla. Feb. 28, 2023).

## II.    BACKGROUND

### A.    Factual Background

Plaintiffs brought this lawsuit on behalf of themselves and consumers who purchased Defendant's aerosol antiperspirant, deodorant, body spray products and dry shampoo, and dry conditioner products (collectively the "P&G Aerosol Products") that are alleged to contain benzene, a known human carcinogen. The list of P&G Aerosol Products included in the Settlement are identified in ¶1.27 of the Settlement Agreement (Dkt. No. 23-1).

Discovery confirmed that P&G first became aware of the benzene contamination in some of the P&G Aerosol Products through the filing of Valisure's Citizen Petition with the Food & Drug Administration (the "FDA") on November 3, 2021. Immediately thereafter, P&G initiated an investigation of the P&G Aerosol Products and concluded that the benzene identified in some product samples stemmed from the isobutane used as a propellant in those aerosol product lines.

### B.    The Litigation and MDL Proceeding

On November 19, 2021, Plaintiffs Velasques, Ortega and Lopez filed the first complaint in this District regarding the alleged contamination of the P&G Aerosol Products for bodily-use. On December 23, 2021, Plaintiff Beth Blake filed the first case in this District regarding the P&G Aerosol Products for hair-use, captioned *Blake v. The Procter & Gamble Company*, No. 21-cv-00794. The first case arising out of the presence of benzene in the P&G Aerosol Products, captioned *Bryski v. Procter & Gamble*, Case No. 21-cv-62285, was filed in the Southern District of Florida on November 4, 2021. On December 13, 2021, Defendant filed a Motion for Transfer of Action for Centralized Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation (the "Panel").

On November 23, 2021, P&G announced a nationwide voluntary recall of some of the P&G Aerosol Products for bodily-use due to the presence of benzene and established a process for claimants to obtain a refund (the "Recall Program").[2]  On December 17, 2021, P&G also announced a nationwide voluntary recall of some of the P&G Aerosol Products for hair-use due to the presence of benzene detected in some products and included those products in the Recall Program.

On March 31, 2022, a hearing was held before the Panel in New Orleans to determine which court the cases would be transferred to for consolidated pretrial proceedings.  On April 7, 2022, the Panel issued a Consent of Transferee Order which transferred and consolidated the cases involving P&G Aerosol Products to the Southern District of Ohio and assigned them to this Court. There are twenty-eight (28) cases now pending before this Court (collectively the "Action"). P&G terminated the Recall Program in April 2022.

### C.     Negotiations of the Proposed Settlement

Prior to the hearing before the Panel counsel for P&G, and Counsel for certain Plaintiffs' Counsel ("Plaintiffs' Mediation Counsel"), led by Messrs. Wayne and Klinger, engaged in settlement discussions.  In connection with those discussions, Plaintiffs' Mediation Counsel contacted attorneys representing plaintiffs in other similarly-pending cases against P&G inviting them to participate in a mediation, but they refused to participate in the mediation.

In March 2022, the Plaintiffs' Mediation Counsel and Defendant's Counsel agreed to jointly retain Robert Meyer, a nationally recognized mediator, to serve as the mediator in an

---

[2]  https://wwwfda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.

attempt to reach a nationwide resolution. Before the mediation session, Plaintiffs' Mediation Counsel received documents and information so they could evaluate the proposed settlement.

The data and information P&G produced to Plaintiffs' Mediation Counsel included nationwide sales data and testing information as to the P&G Aerosol Products. Additionally, before the mediation, Plaintiffs retained Colin B. Weir, Vice President of Economics and Technology, Inc., a highly-regarded firm that specializes in conducting economic, statistical, regulatory and other analysis – to conduct a conjoint analysis, which included a test survey from which price premium percentages were derived. The information and documents produced by P&G and Mr. Weir's conjoint analysis provided Plaintiffs' Mediation Counsel with the information they needed to proceed with mediation and negotiate a potential settlement.

A full day mediation was held on March 28, 2022, and no settlement was reached on that date. However, over the weeks that followed the mediation, the Parties continued to engage in arms-length negotiations involving the mediator, and after an additional month of negotiations the Parties reached an impasse. In an effort to resolve the deadlock, Mr. Meyer made a mediator's proposal that was accepted by P&G and Plaintiffs' Mediation Counsel on May 2, 2022. On May 3, 2022, before the Court's Case Management Conference No. 1, notification of the Settlement was filed with the Court (Dkt. No. 13). *See* Declaration of Gary M. Klinger in Support of Plaintiffs' Motion for Preliminary Approval, summarizing the negotiations leading to the proposed Settlement (Dkt. No. 23-2), the Declaration of Robert Meyer, Esq., the mediator, in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Meyer Declaration") (Dkt. No. 38-1) and the Amended Declaration of Richard S. Wayne in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (Dkt. No. 48-1).

On July 1, 2022, the Parties entered into a Stipulation of Settlement, and filed a Motion for Preliminary Approval of Class Action Settlement, Certification of a Settlement Class, Approval of the Plan of Notice and Forms of Notice and Setting Dates and Procedures for Final Fairness Hearing (Dkt. No. 23). Certain Plaintiffs filed an opposition to the Preliminary Approval (Dkt. No. 32) and Counsel for Settling Plaintiffs filed a reply brief (Dkt. No. 39). A preliminary fairness hearing was conducted on September 28, 2022 (Dk. No. 44), and on October 28, 2022, the Court entered an Order preliminarily approving the Settlement, Certification of a Settlement Class, the Notice Plan, and setting dates, deadlines and scheduling the Final Approval Hearing for May 30, 2023 (Dkt. No. 45).

## III.     THE TERMS OF THE SETTLEMENT

The Settlement resolves all claims of Plaintiffs and the Settlement Class against P&G alleged in the Action. The details are contained in the Settlement Agreement (Dkt. No. 23-1).

### A.     The Proposed Class

The proposed Settlement Class includes all consumers who purchased the P&G Aerosol Products at issue in the Action, and is defined as:

> All persons residing in the United States who purchased P&G Aerosol Products during the period beginning November 4, 2015 and ending December 31, 2021 (the "Class Period"). The following individuals are excluded from the Settlement Class; officers and directors of P&G and its parents, subsidiaries, affiliates, and any entity in which P&G has a controlling interest; any person who never used a P&G Aerosol Product but instead only purchased a P&G Aerosol Product exclusively for the purpose of reselling the P&G Aerosol Product to a consumer; all judges assigned to hear any aspect of the Actions, as well as their staff and immediate family; and Settlement Class Counsel, their staff members, and their immediate family.

*See* (Dkt. No. 23-1).

**B.** **Relief Provisions**

The Settlement provides for a cash payment or vouchers (whatever Settlement Class Members choose) to Settlement Class Members with and without Proof of Purchase of the P&G Aerosol Products. The Settlement also provides for significant injunctive relief, including material and product testing, product sampling and testing protocols in the supply chain, and sale restrictions. ***There is no limit on monetary relief for claims of Settlement Class Members who have Proofs of Purchase***, and the Settlement's maximum value of relief for Settlement Class Members with No Proofs of Purchase is $8,000,000.

**1.** **Monetary and Voucher Relief**

**a.** **With Proof of Purchase**

Settlement Class Members with a valid Proof of Purchase, as described in Paragraph 1.31 of the Settlement Agreement, have the option to select either a cash payment or voucher, whichever they prefer, for each Proof of Purchase provided. If the Settlement Class Member chooses a cash payment, the Settlement Class Member will receive a payment of $3.50 for each unit with a valid Proof of Purchase. This cash refund is approximately 70 percent of the average manufacturer's suggested retail price of $5.02. If the Settlement Class Member chooses to receive a voucher, the Settlement Class Member will receive a voucher redeemable for one product of the same brand reflected on the Proof of Purchase not to exceed the retail price of the product (Dkt. No. 23-1 at ¶1.17). The voucher will be fully transferable and may be used in combination with other promotions. ***There is no limit on the number of separate claims that Settlement Class Members with a Proof of Purchase may file.***

### b.     <u>Without Proof of Purchase</u>

Settlement Class Members without Proof of Purchase, but who submit a timely and valid claim form, attesting under penalty of perjury that they purchased during the Class Period one or more P&G Aerosol Products shall have the option to elect either No Proof of Purchase Payment or No Proof of Purchase Voucher.  A Settlement Class Member without Proof of Purchase may elect to receive a No Proof of Purchase Payment of $3.50 for each unit purchased.  The total number of No Proof of Purchase Payments claimed by Settlement Class Members may not exceed three (3) total payments (or $10.50) per household.  In the alternative, a Settlement Class Member without Proof of Purchase may elect to receive a No Proof of Purchase Voucher.  Each voucher will be redeemable for one P&G Aerosol Product of the same brand indicated on the Claim Form, which will be fully transferable and may be used in combination with other promotions.  The value of the voucher is not to exceed the retail price of the product (Dkt. No. 23-1 at ¶1.17).  The total number of No Proof of Purchase Vouchers claimed by Settlement Class Members may not exceed three (3) vouchers per household. Settlement Class Members without Proof of Purchase who received three (3) vouchers under the Recall Program can still file a claim for one (1) additional No Proof of Purchase Payment or No Proof of Purchase Voucher.

### 2.     <u>Injunctive/Non-Monetary Relief</u>

The Settlement also provides robust injunctive/non-monetary relief which is designed to establish corrective and preventive measures to further address the benzene contamination at issue in this Action (Dkt. No. 23-1 at ¶3.5).  Specifically, the Settlement provides the following injunctive/non-monetary relief:

a.     <u>Non-Sale of Recalled Products</u>: P&G shall not in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of the P&G Aerosol Products subject to the Recall Program.

b.     <u>Isobutane Raw Material Supply</u>:  P&G shall undertake the following

corrective and preventive actions prior to manufacturing any additional units of the P&G Products:

i.      <u>Raw Material Specification</u>:  P&G shall adopt a new specification applicable to any supplier of isobutane raw material for use in the P&G Aerosol Products that requires such raw material to contain not more than 1 part per million (ppm) benzene.  Such specification shall be subject to review by Settlement Class Counsel and shall remain in effect for two (2) years from the date of execution of this Settlement.

ii.      <u>Testing by Raw Material Supplier</u>:  P&G shall direct its contract manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in the P&G Aerosol Products, the raw material supplier test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from shipping such raw material to P&G's contract manufacturer if the test result indicates the presence of benzene at 1 ppm or more.  This requirement shall remain in effect for two (2) years from the date of execution of this Settlement.

iii.      <u>Testing of Raw Material by Contract Manufacturer</u>:  P&G shall require that, upon receipt of any shipment of isobutane raw material intended for use in the P&G Aerosol Products, P&G's contract manufacturer test for the presence of benzene at 1 ppm or more in such raw material, and to refrain from use of such raw material if the test result indicates the presence of benzene at 1 ppm or more.  This requirement shall remain in effect for two (2) years from the date of execution of this Settlement.

iv.      <u>Maintenance of Testing Records</u>.  P&G shall require its contract manufacturer to preserve, or P&G shall direct its contract manufacturer to require its isobutane raw material suppliers to preserve, certificates of analysis for any tests conducted pursuant to Paragraphs 5(b)(ii)-(iii) for at least two (2) years and will provide Plaintiffs' Counsel, upon request, with confirmation that it complied with the testing required under this Settlement.

c.      <u>Finished Product Testing</u>:  P&G shall undertake the following corrective and preventive actions following the manufacturing of any P&G Aerosol Products:

i.      <u>Sampling of Batches</u>.  P&G shall engage an independent, ISO-certified and FDA-registered laboratory to test at least one finished unit from each batch of the P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more.  The Parties agree that such testing shall be conducted using gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation. This requirement shall remain in effect until at least July 1, 2022.

ii.      <u>Subsequent Sampling of Batches</u>.  From July 1, 2022 until August 1, 2022, P&G instructed the independent laboratory to test at least one finished unit from at least 50% of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more.  From August 1, 2022 until September 1, 2022, P&G instructed the independent laboratory engaged to test at least one finished unit from at least 25% of all batches of P&G Aerosol Products for the presence of benzene at 1 ppm or more, and shall withhold release of the batch if the test results indicate the presence of benzene at 1 ppm or more.

     d.    <u>On-Site Inspections</u>. P&G shall conduct on-site quality inspections of its contract manufacturer's facilities used to manufacture the P&G Aerosol Products at least annually. The inspections shall include a review of the contract manufacturer's compliance with the FDA's Current Good Manufacturing Practice Regulations. This requirement shall remain in effect for two (2) years from the date of execution of this Settlement.

### 3.     Notice and Settlement Administration

The Parties agreed, with the Court's approval, to appoint Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator and to provide notice to the proposed Class. The costs of distributing notice and for Settlement administration are to be paid separately by P&G, outside of, and in addition to, the cash refund and voucher programs being offered to the Settlement Class Members. *Id.* at ¶ 2.4(a). For additional details regarding the Notice Program *see* the Declarations of Scott M. Fenwick ("Fenwick Declaration") (Dkt. No. 54-1) and Jeanne C. Finegan ("Finegan Declaration") (Dkt. No. 54-2), both of Kroll Settlement Administration.

### 4.     Class Representatives Service Awards

Under the terms of the Settlement, Plaintiffs have reserved the right to Service Awards for each Plaintiff listed in the Settlement Agreement, in an amount of $250.00 (for a maximum total class representative award of $8,750). *Id.* at ¶ 3.3(a). The Service Awards would be paid separately by P&G from the relief being offered to the Settlement Class Members and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs. *Id.*

### 5.     Attorneys' Fees and Costs

The Settlement also provides that Plaintiffs' Counsel may apply to the Court for an attorneys' fee award inclusive of costs not to exceed $2,400,000. (Dkt. No. 23-1 at ¶3.4(a). The attorneys' fees and costs provision was separately and independently negotiated by the Parties only after the Class relief was agreed upon, with the assistance of the mediator, in an arm's-length negotiation. The amount of attorneys' fees and costs agreed to by the Parties was also the subject

of a mediator's proposal. Attorneys' fees and costs that are awarded in these Actions will be paid by P&G separate and apart from, and in addition to, the relief being offered to the Settlement Class Members.

## IV.    SETTLEMENT RELIEF

After the initial complaint was filed in this Action, P&G initiated a refund program through which 483,717 claims were processed (482,758 for vouches and 959 for cash payments) with a total payout of $3,620,031.84 ($3,594,951 in vouchers and $25,080.84 in cash payments). *See* Declaration of Janos Josephson dated August 8, 2022 (Dkt. No. 38-3). In addition, since the Court entered its Preliminary Approval Order, Kroll has processed approximately 641,131 claims and determined that 279,893 are valid claims. Of the valid claims, 16,700 have been validated for vouchers (total voucher value of $355,840) and the remaining 263,193 claims have been validated for a monetary payment (total monetary payments of $2,738,911), for a combined total of $3,094,751. *See* Fenwick Declaration (Dkt. No.54-1). In total P&G received 763,610 claims from Settlement Class Members and paid $6,714,782.84 in combined payments of vouchers and cash as a result of the Recall Program and Settlement

P&G has indicated that it has and will continue to comply with the injunctive, non-monetary relief provided under the Settlement Agreement.

## V.    FINAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court in the Preliminary Approval Order, (Dkt. No. 45), preliminarily certified the Settlement Class and appointed Plaintiff's Counsel as Settlement Class Counsel. All of the circumstances that warranted class certification at the preliminary approval stage remain. Therefore, for the reasons identified in the Court's Preliminary Approval Order and in Plaintiffs' Motion for Settlement for Preliminary Approval of Class Action Settlement, Certification of a

Settlement Class, Approval of the Plan of Notice and Forms of Notice and Setting Dates and Procedures for Final Fairness Hearing (Dkt. No. 23), the Settlement Class satisfies the requirements of Rule 23 and the Court should finally certify the proposed Settlement Class.

## VI.    **THE NOTICE PROGRAM APPROVED BY THE COURT WAS SUCCESSFUL**

The Court approved Notice was designed to reach the greatest practicable number of Class Members. The Court approved Kroll to carry out the Plan. *See* Fenwick Declaration for additional details of the Notice Plan. As discussed below, Kroll has successfully implemented the Court-approved Notice Program.

As provided in the Notice Plan, Kroll established a website, www.aerosolspraysettlement.com (the "Website") that "went live" on November 27, 2022 and contained a summary of the Settlement, frequently asked questions, the Settlement Agreement and its exhibits, Preliminary Approval Order and the Class Action Complaints. The Website also contained the Long Form Notice, and Claim Form.

Kroll also established a toll-free number on November 7, 2022, for Settlement Class Members to call and obtain additional information through an Interactive Voice Response system and by being connected to a live agent, receiving 428 calls. On November 4, 2022, a U.S. Mail Post Office Box ("P.O. Box") was established to receive requests for exclusion, Claim Forms, Objections, and correspondence from Settlement Class Members with 608 Claim Forms being sent to the P.O. Box.

Kroll also crafted a highly targeted plan for the Online Notice, which employed best-in-class tools and technology. The Online Notice reached an estimated 76.5% of the target audience with an average frequency of 3.5 times by utilizing, among other tools, online display ads, search engine ads, and social media ads. For additional detail, *see* Finegan Declaration (Dkt. No. 54-2).

This comprehensive notice plan was determined by the Court to meet the requirements of due process. (Dkt. No. 45 at 952). As the Fenwick and Finegan Declarations demonstrate, the Settlement Administrator has taken the steps necessary to implement and complete the Notice Plan. The Notice Plan satisfies the requirements of Rule 23 and due process and should be approved by the Court.

## VII.    <u>FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED</u>

Under Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval of the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). Applying these factors here demonstrates that this Settlement is fair, adequate and reasonable.

### 1.    <u>The Proposed Settlement is the Result of Arm's Length Negotiations</u>

The absence of collusion is a factor weighing heavily in favor of settlement approval and "[c]ourts presume the absence of fraud or collusion, unless there is evidence to the contrary." *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) (quotation marks and citation omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own

judgment for that of counsel"); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

Here, the Settlement was the result of vigorous, arm's-length negotiations between highly experienced counsel who were well informed about the strengths and weaknesses of each claim and defense. Additionally, counsel for the Parties received guidance and assistance from a highly experienced mediator. The Parties are represented by law firms with substantial experience litigating complex litigation. The fact that counsel for both Plaintiffs and Defendant support the proposed Settlement favors final approval. Indeed, "[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement: 'It is . . . well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.'" *UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (citations omitted).

### 2. The Complexity, Expense, and Likely Duration of the Litigation Warrant Final Approval of the Settlement

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id*. (quoting 4 Herbert B. Newberg & Alba Conte,

Newberg on Class Actions § 11.50 (4th ed. 2002)).[3] This Action is no different in that it is a consumer class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

Absent the Settlement, this Action would have certainly continued to be contested by Defendant and subject to further time-consuming and costly expert-intensive litigation. Even if this Action survived summary judgment, trial and appeal, it could take many years and involve substantial expense for all parties. "[Settlement] secures a substantial benefit . . . in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009). Therefore, the Settlement provides Settlement Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

### 3. Necessary Discovery Was Conducted

In determining whether to approve the Settlement, the Court considers the amount of discovery produced during the action "[t]o insure that Plaintiff[] ha[s] had access to sufficient information to evaluate [his] case and to assess the adequacy of the proposed Settlement." *Nationwide*, 2009 WL 8747486, at *5. Here, "although the parties were able to negotiate the

---

[3] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

Settlement at a relatively early stage of the proceedings, all of the parties had a 'clear view of the strengths and weaknesses of their cases.'" *Id.*, at *5-6 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)); *Bailey*, 2008 WL 495539, at *3; *Gascho*, 2014 WL 1350509, at *17. The Settlement was achieved after Plaintiff's Settlement Counsel requested and P&G provided documents and data including nationwide sales data and testing information as to the P&G Aerosol Products. Defendant's production included information regarding P&G's notice of benzene contamination; communications between P&G and its affiliates concerning benzene contamination; information regarding studies and analysis performed by P&G with respect to the benzene contamination; P&G's communications with the FDA regarding the contamination; information about P&G's Aerosol manufacturers and raw material suppliers; and information on P&G's Recall and refund program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications.

As such, prior to and during the Action, Settlement Class Counsel had access to the necessary information to assist in the evaluation of all claims and defenses, as well as the ability to determine that the Settlement is fair, adequate, and reasonable. The decision to enter into the Stipulation was premised upon the assessment of fully informed, experienced counsel that the Settlement confers substantial benefits upon Settlement Class Members and that Settlement was the best course of action.

### 4. The Likelihood of Success on the Merits Favor Final Approval

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir.

2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Plaintiffs remain confident and believe in their claims against Defendant, however, they recognize the substantial risks involved in establishing liability and damages in this case. From the outset of this litigation, Defendant has consistently maintained that the allegations in this action are meritless. There is also a risk that a jury might award little or nothing in the way of damages. Furthermore, even if Plaintiffs prevailed through summary judgment and trial, Plaintiffs would still face the potential for prolonged appeals to the Sixth Circuit.

By comparison, the Settlement provides immediate, significant, and substantial monetary relief to Settlement Class Members as well injunctive relief designed to establish corrective and preventive measures to further address the benzene contamination at issue in this Action. The Settlement delivers real value to Settlement Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 5. <u>Counsel for the Parties, as well as Plaintiffs, Recommend Approval of the Settlement</u>

"'Generally, courts will give deference to plaintiffs counsel's determination to settle a case.'" *Bailey*, 2008 WL 495539, at *4 (quoting *Berry v. School Dist.*, 184 F.R.D. 93, 104 (W.D. Mich. 1998)); *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) (highly experienced

litigator's "opinion that the proposed settlement is fair, reasonable, and adequate is entitled to considerable weight."). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who, like Plaintiffs here, were involved in the litigation and support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Settlement Class Counsel and Plaintiffs support this Settlement because it provides Settlement Class Members with immediate and substantial benefits. Defendant is also supportive of the Settlement. As the result of discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective positions and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

6.  **The Reaction of Class Members to Date Supports the Settlement**

Absent significant objections, final approval is appropriate. *See, e.g., Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (79 objections in class of nearly 11,000 members "tends to support a finding that the settlement is fair"); *see also Hainey*, 617 F. Supp. 2d at 675 ("Generally, however, a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate."). The deadline for Settlement Class Members to object or opt-out of the Settlement was January 27, 2023 and to date the Settlement Administrator has received only two (2) requests to opt-out of the Settlement and no objectors to the Settlement. The near "unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in the court's evaluation of the proposed settlements." *In re Art*

-18-

*Materials Antitrust Litig.,* MDL No. 436, 100 F.R.D. 367, 372 N.D. Ohio 1983). The fact that the Settlement has received only two opt-outs and no objections is very strong evidence that the Settlement merits final approval.

### 7. This Settlement Serves the Public Interest

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[4] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

In view of the immediate benefits that the Settlement provides and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement. In total, all of the factors to be considerable when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

---

[4] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

**VIII.  THE COURT SHOULD APPOINT RICHARD S. WAYNE AND GARY M. KLINGER AS CO-LEAD SETTLEMENT CLASS COUNSEL**

Plaintiffs also request that Richard S. Wayne, of Strauss Troy Co., CPA and Gary M. Klinger of the Milberg Coleman Bryson Phillips Grossman LLC be appointed as Co-Lead Settlement Class Counsel to work with the Settlement Administrator to resolve any disputed claims of Class Members and to determine how the Court award of attorneys' fees are divided among Settlement Class Counsel. As demonstrated in the Declarations of Messrs. Wayne and Klinger (Dkt. Nos. 52-1 and 52-2), they possess the necessary background and experience to this Settlement and in fact have worked collaboratively with all counsel in this Action to achieve the proposed Settlement.  At all times, they coordinated and structured the Settlement among Settlement Class Counsel, have been conferring with the Settlement Administrator regarding the claims process and will work with other Settlement Class Counsel to fairly apportion the attorneys' fees awarded.  Plaintiffs also request that the Court affirm the appointment of Settlement Class Counsel, include Kiley Grombacher as one of Settlement Class Counsel, and substitute Jonathan Shub for Keven Laukaitis, of the Shub Law Firm, who withdrew as one of Settlement Class Counsel (Dkt. No. 46).

**IX.  CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a Final Order: (1) certifying a nationwide Settlement Class and affirming the appointment of Plaintiffs and their Counsel as the representatives of and counsel for the Settlement Class; (2) approving the Class Action Settlement Agreement and Release, including all exhibits thereto; and (3) appointing Richard S. Wayne and Gary M. Klinger as Co-Lead Settlement Class Counsel.

Dated: April 11, 2023

Respectfully submitted,

/s/ Richard S. Wayne
Richard S. Wayne (Ohio Bar No. 0022390)
**STRAUSS TROY CO., LPA**
150 East 4th Street, 4th Floor
Cincinnati, OH 45202
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
E-mail: rswayne@strausstroy.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Terence R. Coates (Ohio Bar No. 0085579)
**MARKOVITS STOCK & DEMARCO,
LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 665-0204
Facsimile: (513) 665-0219
Email: tcoates@msdlegal.com

Rick Paul*
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, MO 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email: rick@paulllp.com

Jonathan M. Jagher*
**FREED KANNER LONDON &
MILLEN LLC**
923 Fayette St.
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
Email: jjagher@fklmlaw.com

Jonathan Shub*

**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Email: jshub@shublawyers.com


Steven L. Bloch*
**SILVER GOLUB & TEITELL, LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
E-mail: sbloch@sgtlaw.com

Mark S. Reich*
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: mreich@zlk.com

Paul Doolittle*
**POULIN|WILLEY|ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: pauld@akimlawfirm.com

Robert C. Schubert*
Dustin L. Schubert
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: rschubert@sjk.law
         dlschubert@sjk.law

Michael R. Reese*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Facsimile: (212) 253-4272
Email: mreese@reesellp.com

Kiley Grombacher*
**BRADLEY GROMBACHER**
31365 Park Crest Dr., Suite 240
Westlake Village, CA 91361
Telephone: (888) 418-7094
Email: grombacher@bradleygrombacher.com

Bryan F. Aylstock*
Jason Richards*
**AYLSTOCK WITKIN KREIS**
**OVERHOLTZ**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (844) 794-7402
Email: jrichards@awkolaw.com
           baylstock@awkolaw.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ, LLC**
111 W. Jackson St., # 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Email: malmstrom@whafh.com

*Subject to Pro Hac Vice admission*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing document was served via the Court's CM/ECF system on April 11, 2023, and has thus been served automatically on all counsel of record that have entered an appearance in Case No. 2:22-md-3025.

/s/ Richard S. Wayne
Richard S. Wayne (Ohio Bar No. 0022390)

16235577.2